**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

A & E AUTO BODY, INC., AMERICAN PAINT &
BODY, INC., AUTO & COACH WORKS OF
CENTRAL FL, INC., AUTO BODY CONCEPTS,
INC., COLLISION CONCEPTS OF DELRAY, LLC,
ELITE EURO CARS COLLISION SERVICES, INC.,
EXPRESS PAINT & BODY, GUNDER'S AUTO
CENTER, INC., JUSTICE COLLISION, LLC,
LONG WHOLESALE CONSULTANTS,
MARSHALLS BODY MASTERS, OLD DIXIE
PAINT AND BODY LLC, ORLANDO AUTO
BODY, INC., QUALITY COLLISION REPAIR,
INC., REGAL PONTIAC, INC., SPS BUSINESS
INVESTMENTS, INC., STEWART AGENCY, INC.,
STEWART AUTO REPAIR, INC. and STEWART
COLLISION GROUP, LLC,

**Case No. 6:14-CV-00310-GAP-TBS**

**DEFENDANT GEICO GENERAL**
**INSURANCE COMPANY'S**
**MOTION AND SUPPORTING**
**MEMORANDUM TO DISMISS**

                                                        *Plaintiffs,*

            v.

21ST CENTURY CENTENNIAL INSURANCE
COMPANY, 21ST CENTURY NORTH AMERICAN
INSURANCE COMPANY,  ACCEPTANCE
INDEMNITY INSURANCE COMPANY,
ALLSTATE FIRE AND CASUALTY INSURANCE
COMPANY, ALLSTATE INSURANCE
COMPANY, BRISTOL WEST INSURANCE
COMPANY, DIRECT GENERAL INSURANCE
COMPANY, ENCOMPASS  INDEMNITY
COMPANY, ESURANCE PROPERTY &
CASUALTY INSURANCE COMPANY, FIRST
ACCEPTANCE INSURANCE COMPANY, INC.,
FLORIDA FARM BUREAU GENERAL
INSURANCE COMPANY,  FOREMOST
INSURANCE COMPANY, GEICO GENERAL
INSURANCE COMPANY, HARTFORD
ACCIDENT AND INDEMNITY COMPANY,
HARTFORD UNDERWRITERS INSURANCE
COMPANY, HORACE MANN INSURANCE
COMPANY, INFINITY AUTO INSURANCE
COMPANY, LIBERTY MUTUAL INSURANCE
COMPANY, MERCURY  INSURANCE
COMPANY OF FLORIDA, MGA INSURANCE
COMPANY, INC., NATIONAL GENERAL
INSURANCE ONLINE, INC., NATIONWIDE
INSURANCE COMPANY OF FLORIDA,

NATIONWIDE MUTUAL INSURANCE
COMPANY, OCEAN HARBOR CASUALTY
INSURANCE COMPANY, OLD REPUBLIC
INSURANCE COMPANY, PROGRESSIVE
CASUALTY INSURANCE COMPANY, SAFECO
INSURANCE COMPANY OF AMERICA,
SECURITY NATIONAL INSURANCE COMPANY,
SENTRY  INSURANCE A MUTUAL COMPANY,
STATE AUTOMOBILE MUTUAL INSURANCE
COMPANY, STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY, THE
CINCINNATI INSURANCE COMPANY, THE
TRAVELERS INDEMNITY COMPANY, USAA
CASUALTY INSURANCE COMPANY,
WESTFIELD INSURANCE COMPANY,
WINDHAVEN INSURANCE COMPANY and
ZURICH AMERICAN INSURANCE COMPANY,
                                   *Defendants.*
                                                    /

## DEFENDANT GEICO GENERAL INSURANCE COMPANY'S
## MOTION AND SUPPORTING MEMORANDUM TO DISMISS

Defendant, GEICO General Insurance Company ("GEICO"), moves to dismiss Plaintiffs'

Complaint and Demand for Jury Trial (Dkt. 1) ("Complaint") for failure to state a claim upon

which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The grounds and authority for this motion are set forth in the following supporting

memorandum.  The memorandum is incorporated as part of this motion.

## MEMORANDUM

GEICO respectfully submits the following memorandum in support of its Motion to

Dismiss.

## I.   SUMMARY

Plaintiffs' 166 paragraph Complaint makes only one reference to GEICO.  Paragraph 32

pleads that "Defendant, GEICO General Insurance Company, was and is a Florida Corporation

authorized and doing business in Florida."[1]   There is no other mention of GEICO anywhere in the Complaint.

Plaintiffs' Complaint fails to state a claim upon which relief can be granted against GEICO and should therefore be dismissed because:

1.      *Plaintiffs' "shotgun" pleading and nonspecific references to "Defendants" are improper.*   The Eleventh Circuit does not allow the exact type of "shotgun" pleading that Plaintiffs are attempting in this case.   Nor does it allow the repeated nonspecific references to "Defendants" that Plaintiffs attempt.

2.      *Plaintiffs' attempted antitrust claims do not satisfy the Twombly/Iqbal requirements.* The U.S. Supreme Court has made clear that antitrust conspiracy allegations must contain facts that create a plausible theory of an actual conspiracy and that the defendant joined that conspiracy.   *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); and their progeny.   Plaintiffs fail to meet their obligations under *Twombly/Iqbal* because there are:

- No allegations of face-to-face meetings involving GEICO.
- No allegations of phone calls involving GEICO.
- No allegations of emails, texts or letters involving GEICO.
- No allegations of trade association meetings involving GEICO.
- No allegations that pricing information was shared with or by GEICO.
- No allegations of even a "wink and a nod" towards or by GEICO.

*See id.* Plaintiffs have not alleged a single fact – plausible or otherwise – that GEICO did anything whatsoever that could support a Sherman Act conspiracy claim against it.

---

[1]      This allegation is incorrect.  GEICO is a Maryland corporation.

Plaintiffs further fail to state the substantive elements of their purported antitrust claims. The rule of reason applies to Plaintiffs' antitrust claims, and they fail to state a rule of reason violation because:

- Plaintiffs fail to allege a product/service market that is relevant for antitrust purposes.

- Plaintiffs fail to allege a geographic market that is relevant for antitrust purposes.

- Plaintiffs fail to allege market power in a relevant product/service and geographic market.

- Plaintiffs fail to allege barriers to entry.

- Plaintiffs fail to allege how the purported restraints result in anticompetitive effects.

- Plaintiffs fail to allege how purported anticompetitive effects outweigh the purported restraints' procompetitive benefits, particularly since Plaintiffs allege that the purported restraints lower prices.

- Plaintiffs fail to allege that they suffered antitrust injury from anticompetitive effects.

3. *Plaintiffs' attempted state law claims do not allege necessary elements or satisfy the Twombly/Iqbal requirements.* Plaintiffs fail to allege one or more required substantive elements for each of their purported state law claims. And each of their attempted state law claims further fail to satisfy the *Twombly/Iqbal* plausibility requirement.

## II.    ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (*quoting Twombly*, 550 U.S. at 570). The Supreme Court explained in *Twombly* that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Twombly*, 550 U.S. at 555 (internal citations omitted);  *Simpson v. Sanderson Farms, Inc.,* No. 13-10624, 2014 WL 888498, at \*4 (11th Cir. Mar. 7, 2014) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 555) (holding that "[a] plaintiff cannot rely on 'naked assertion[s] devoid of further factual enhancement;' rather, a complaint must present sufficient factual matter, accepted as true, to 'raise a right to relief above the speculative level.'")

"A complaint is insufficient if it offers only 'labels and conclusions.'" *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678); *see Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1340 (11th Cir. 2010) ("bare legal conclusions" are insufficient).  The Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.  Conclusory allegations are "not entitled to the assumption of truth" on a motion to dismiss. *Iqbal*, 556 U.S. at 679; *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (same principle).

### A.   Plaintiffs' Shotgun Pleading and Nonspecific References to "Defendants" are Improper.

A shotgun pleading is one which "begin[s] with a long list of general allegations, most of which are immaterial to most of the claims for relief." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998). It then "incorporate[s] every antecedent allegation by reference into each subsequent claim for relief." *Liebman v. Deutsche Bank Nat. Trust Co.*, 462 Fed. Appx. 876, 879 (11th Cir. 2012) (quoting *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006)). "The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). The Eleventh Circuit has frequently criticized this manner of pleading:

> Shotgun pleadings impede the administration of the . . . courts' civil dockets in countless ways. The . . . court, faced with a crowded docket and whose time is constrained by the press of other business, is unable to squeeze the case down to its essentials. It is therefore left to this court to sort out on appeal the meritorious issues from the unmeritorious ones, resulting in a massive waste of judicial and private resources; moreover, the litigants suffer, and society loses confidence in the courts' ability to administer justice.

*Peavy v. Black*, 476 Fed. Appx. 697, 699 (11th Cir. 2012) (alteration, citation, and quotation marks omitted) (quoting *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 806 n.4 (11th Cir. 2010)); *see also Serpentfoot v. Rome City Comm'n*, 426 Fed. Appx. 884, 885 n.1 (11th Cir. 2011) (calling shotgun pleadings a "ubiquitous problem"); *Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001) (stating that "shotgun pleadings wreak havoc on the judicial system"), abrogated on other grounds by *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146 (11th Cir. 2011).

Moreover, both this Court and the Eleventh Circuit hold that "group pleading" where allegations are not differentiated among individual Defendants is improper. *See Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1273-74 (M.D. Fla. 2009) *aff'd*, 451 F. App'x 862 (11th Cir. 2012) (holding that lumping together or "the grouping of Defendants … does not afford these Defendants fair notice of the basis for the claims against them," particularly in situations where the role of each Defendant in the conduct at issue is not described.); *Synergy Real Estate of SW Florida, Inc. v. Premier Prop. Mgmt. of SW Florida*, LLC, No. 2:11-CV-707-FTM-29, 2012 WL 4009534, at *2 (M.D. Fla. Sept. 12, 2012) (holding that "indiscriminately lumping 'defendants' together" fails to comply with Federal Rule of Civil Procedure 8."); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (noting that a fifty-eight page complaint with fourteen defendants, with all defendants charged without any differentiation in each count, was "a quintessential 'shotgun' pleading we have condemned repeatedly.")

Plaintiffs' entire Complaint is a textbook example of a "shotgun pleading." It contains 166 paragraphs, and each of the seven claims incorporates and restates the allegations set forth in all of the prior paragraphs. And Plaintiffs' nonspecific use of the word Defendants, when there are 39 separate Defendants, make it impossible for both the parties and the Court to determine which allegations are intended to support which claims for relief against which Defendants. Indeed, other than the identifying allegation in paragraph 32, there is not one allegation that specifically alleges GEICO did anything in the 166 paragraphs and 7 claims. Plaintiffs' Complaint as to GEICO should therefore be dismissed.

**B.      Plaintiffs' Attempted Antitrust Claims Fail to Satisfy the *Twombly/Iqbal* Requirements.**

Plaintiffs' antitrust allegations, like those in *Twombly*, attempt to allege a conspiracy, and turn on the adequacy (or, better stated, the inadequacy) of their generalized conspiracy allegations. 550 U.S. at 555. Specifically, the *Twombly* plaintiffs generally alleged that the defendants in that case acted similarly, or "in parallel," with each other and that, as a result, they must have been "conspiring" together to violate Section 1 of the Sherman Act. *Id.* But the Supreme Court made it clear that generalized allegations, without express allegations of any plausible facts tending to prove an actual conspiracy, fail to state a claim. *Id.*

As the Eleventh Circuit explained in *Kivisto v. Miller, Canfield, Paddock & Stone, PLC,* 413 Fed.Appx. 136 (11th Cir. 2011), in determining the adequacy of a complaint, the District Court should first disregard all conclusory allegations and then test the adequacy of the Complaint based solely on the allegations of fact:

> In applying the Supreme Court's directives in *Twombly* and *Iqbal*
> to a motion to dismiss, the Eleventh Circuit has instructed that a
> court should 1) eliminate any allegations in the complaint that are
> merely legal conclusions; and 2) where there are well-pleaded
> factual allegations, assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief. Further,

> courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.

*Id.* at 138 (brackets, internal citations, and quotation marks omitted).

*Twombly* recognized that "[i]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive." *Id.* at 546. To prevent prolonged and costly discovery in antitrust cases, the Court limited the range of inferences that can be drawn at the pleading stage from bare allegations of parallel conduct, requiring courts to scrutinize the complaint before allowing conspiracy claims to proceed. *See id.* at 559-60 (holding that "it is only by taking care to require allegations that reach the level suggesting a conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence to support a § 1 claim" (citations and internal quotation marks omitted)). This Court is faced with the same situation in this case. GEICO should not be required to defend itself in a long and protracted litigation when Plaintiffs have not even cited a single fact implicating GEICO in any alleged conspiracy.

The *Twombly* Supreme Court therefore held that all antitrust plaintiffs must allege plausible facts and details tending to prove (a) how the defendants conspired together and (b) how a particular defendant joined the illegal conspiracy. *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938 (5th Cir. 2011); *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 319-321 (3d Cir. 2010). This has to be done for GEICO (and each Defendant) separately; lumping GEICO together with the other Defendants is not permissible. *Pierson v. Orlando Regional Healthcare Systems, Inc.*, 619 F. Supp. 2d 1260, 1273-74 (M.D. Fla. 2009); *see, e.g., Riehle v. Bank of America, N.A.*, No. CV–13–00251–PHX–NVW, 2013 WL 1694442,

at *2 (D. Ariz. April 18, 2013) ("A plaintiff may not collectively accuse multiple defendants of committing misdeeds through the expedience of the title 'Defendants.' Such group pleading is not allowed.").

Conspiracy under Eleventh Circuit law requires (1) an agreement in restraint of trade (2) deliberately entered into (3) which has an unlawful objective[2] and (4) at least one overt act in furtherance of the conspiracy. *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1078 (11th Cir. 2004); *see also Am. Dental Ass'n v. CIGNA Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (plaintiff must show that the defendant agreed with the overall unlawful objective of the conspiracy). Plaintiffs must allege plausible facts that demonstrate there was a joint meeting of the minds *and* that meeting of the minds incorporates the *unlawful* restraint to demonstrate a conspiracy. *See, e.g., Gulf States Reorganization Grp. Inc. v. Nucor Corp.*, 822 F.Supp.2d 1201, 1224 (N.D. Ala. 2011). In order to do so as to GEICO, Plaintiffs must not only allege plausible facts tending to prove a conspiracy existed, but they must also allege facts showing that:

1.   GEICO knew about the alleged conspiracy and its unlawful objective;

2.   GEICO intended to join the alleged conspiracy; and

3.   GEICO acted in a manner that was interdependent with – and not independent of – the other Defendants in that GEICO's conspiratorial benefits depended on the success of the overall conspiracy.

*See United States v. Tarantino*, 846 F.2d 1384, 1392 (D.C. Cir. 1988): *In re Vitamins*, 320 F.Supp.2d 1, 16 (DDC 2004); *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1078.

### 1.   Plaintiffs' Conspiracy Allegations in Counts 6 and 7 Fail to State a Claim Against GEICO.

Plaintiffs fail to state a conspiracy claim in Counts Six and Seven because they fail to allege any plausible facts tending to prove that the Defendants agreed or conspired to engage in

---

[2]     In an antitrust conspiracy, the unlawful objective is the conspiracy's intended anticompetitive purpose and effect. *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1078.

vertical maximum price fixing (Count 6) or engage in a boycott (Count 7) in *violation* of Section 1 of the Sherman Act. *Gulf States*, 822 F.Supp.2d at 1224. To state a claim, Plaintiffs must allege plausible facts to determine "whether the challenged anticompetitive conduct 'stem[s] from . . . an agreement, tacit or express'" with competitors and not from independent decisions. *Twombly*, 550 U.S. at 553 (internal citations omitted); *see also Walker v. U-Haul Co. of Miss.*, 734 F.2d 1068, 1071 (5th Cir. 1984) (stating that, "an *individual* seller may *unilaterally* select those with whom it will deal") (emphasis added); *Corr Wireless Commc'ns, L.L.C. v. AT&T, Inc.*, 893 F. Supp. 2d 789, 801 (N.D. Miss. 2012) ("Independent parallel conduct, or even conduct among competitors that is consciously parallel, does not alone establish the contract, combination, or conspiracy required by § 1.").

The Sherman Act requires plaintiffs to plead more than the existence of an agreement – they must plead that the agreement amounts to a conscious commitment to an unlawful objective: "[T]he joint meeting of the minds *must incorporate* the *illegal* restraint and, thus, those elements are inextricably intertwined." *Nucor*, 822 F.Supp.2d at 1224 (emphasis added). The "assertion that any 'concerted activity' can be deemed a Section 1 violation without evidence of a conscious commitment to an unlawful objective is, quite simply, not just off the mark[, it's] not the law." *Id.* "A naked allegation of conspiracy or agreement, without more specific factual allegations, ***is not to be accepted as sufficient to state a claim under Section 1 of the Sherman Act***." *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (emphasis added); *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1079 (same principle); *Duty Free Americas*, 946 F.Supp.2d at 1328-29 (quoting *Todorov v. DCH Healthcare Authority*, 921 F.2d 1438, 1460, n. 35 (11th Cir. 1991) ("Both § 1 and § 2 conspiracy claims 'require the same threshold showing –

the existence of an agreement to restrain trade.'")).  That is what Plaintiffs attempt in this case.
There is not a single allegation of plausible facts tending to prove an illegal conspiracy.

Plaintiffs also fail to allege a single fact – plausible or conclusory – that GEICO *joined*
the alleged conspiracy.  They do not allege that GEICO agreed or conspired with any of the 38
Defendants that Plaintiffs allege provide private passenger automobile insurance in Florida.  *See
Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) (noting that "if
the factual context renders the claim implausible [because, in part, of the number of
competitors]—if the claim is one that simply makes no economic sense—[antitrust claimants]
must come forward with more persuasive evidence to support their claim than would otherwise
be necessary"); *Spanish Broad. Sys. of Fla.,* 376 F.3d at 1078 (holding a Plaintiff must allege
plausible facts that defendant deliberately joined the conspiracy).  First, there are no allegations
that GEICO knew of the putative conspiracy's general scope or purpose.  *In re Vitamins*, 320
F.Supp.2d at 16.  According to Plaintiffs' own allegations (and what is absent from their
allegations), GEICO never even discussed or heard about the putative conspiracy, negating that
GEICO knew about the putative conspiracy.  Second, Plaintiffs fail to allege any facts tending to
prove GEICO's purported intent to advance the unlawful purpose of the putative conspiracy.  *Id.*;
*Nucor*, 822 F.Supp.2d at 1224.  Third, Plaintiffs do not allege that GEICO and any of the
Defendants took a single interdependent act for a common purpose.  *In re Vitamins*, 320
F.Supp.2d at 16; *Nucor*, 822 F.Supp.2d at 1224.  Indeed, the only fair reading of Plaintiffs'
complaint is that GEICO did nothing whatsoever or, if it acted, GEICO acted entirely
independent of the other Defendants.

In sum, Plaintiffs' allegations of a conspiracy are conclusory at best, and any allegations
GEICO joined a conspiracy are nonexistent.  Plaintiffs therefore fail to state a valid antitrust

conspiracy claim.

**2.    Plaintiffs Fail to State the Substantive Elements of Their Antitrust Claims Under *Twombly/Iqbal* and their Progeny.**

In *Twombly/Iqbal* and their progeny, the Supreme Court held that the plausibility standard applies to all substantive elements of a plaintiff's claim. This includes the basic requirement that the facts plausibly establish each required element for each legal claim. *Am. Dental Ass'n*, 605 F.3d at 1291. The "plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Count 6 of Plaintiffs' Complaint attempts to state a vertical price fixing agreement and is therefore subject to the rule of reason. Complaint at ¶ 148; *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007); *State Oil Co. v. Khan*, 522 U.S. 3 (1997). Plaintiffs allege in Count 7 a boycott claim, which is also subject to the rule of reason when plausible justifications are present as is the case here.[3] *Northwest Wholesale Stationers, Inc. v. Pacific Stationary & Printing Co.*, 472 U.S. 284, 295 (1985);[4] *Leegin*, 551 U.S. at 881; *Am. Needle v. Nat'l Football League*, 1300 S.Ct. 2201, 2216-17(2010).

Under the rule of reason and *Twombly/Iqbal*, with respect to these two antitrust claims, Plaintiffs have to allege plausible facts that tend to prove:

    1.    A product or service market that is relevant for antitrust purposes;

---

[3]    Plaintiffs allege both a rule of reason and *per se* illegal violation in the alternative, at least for Count 6. Complaint at ¶ 147. (What test Plaintiffs believe applies to Count 7 is unidentified.) Plaintiffs provide, however, no allegations explaining why Count 6 or 7 is subject to the *per se* illegal test and any such *per se* illegal allegations fail as a matter of law. *Iqbal*, 556 U.S. 679; *see Polk Bros., Inc. v. Forest City Enterprs., Inc.*, 776 F.2d 185, 189 (7th Cir. 1985) (whether the *per se* illegal rule applies depended on the circumstances at the time the alleged restraint was adopted); *see also Cha-Car, Inc. v. Calder Race Course, Inc.*, 752 F.2d 609, 613 (11th Cir. 1985) ("The per se doctrine should not be extended to restraints of trade that are of ambiguous effect; any departure from the rule of reason standard must be based upon demonstrable anticompetitive economic effect, rather than formalistic line drawing.").

[4]    The Supreme Court in *Northwest Wholesale* applied the rule of reason to a group boycott because it "would seem to be designed to increase economic efficiency and render markets more, rather than less, competitive" by, among other things, reducing costs. 472 U.S. at 295. The same is true here. Plaintiffs allege that the purpose of the alleged group boycott is to reduce costs. Complaint at ¶ 146.

2.      A geographic market that is relevant for antitrust purposes;
3.      Market power in the relevant product/service and geographic markets;
4.      Barriers to entry;
5.      Wrongful conduct resulting in anticompetitive effect (i.e., conduct that raises prices above competitive levels, suppresses payments below competitive levels, or suppresses output below competitive levels);
6.      The anticompetitive effects outweigh the pro-competitive benefits;
7.      Antitrust injury or standing (i.e., plaintiff has suffered injury caused by the anticompetitive conduct); and
8.      Damages.

*See, e.g., Image Technical Services, Inc. v. Eastman Kodak, Inc.*, 125 F.3d 1195, 1202 (9th Cir. 1997) ("*Kodak*"); *see Lakeland Reg'l Med. Ctr., Inc. v. Astellas US LLC,* No. 8:10-CV-2008-T-33TGW, 2011 WL 303522, at *9 (M.D. Fla. July 25, 2011) (stating the rule of reason test more generally); *Levine v. Cent. Florida Med. Affiliates, Inc.*, 72 F.3d 1538, 1552-54 (11th Cir. 1996) (same); *Spanish Broad. Sys. of Fla.,* 376 F.3d at 1071 (same).

        a.      *No Plausible Allegations of Product/Service Relevant Market.*

In a rule of reason case, an antitrust claimant must allege plausible facts that tend to prove a product or service market that is relevant for antitrust purposes. *See, e.g., Spanish Broad. Sys. of Fla.,* 376 F.3d at 1071-72; *Levine,* 72 F.3d at 1551; *see PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 418 (5th Cir. 2010) (affirming dismissal under Rule 12(b)(6) based on conclusory and implausible relevant market allegations).  Antitrust plaintiffs "must present enough information in their complaint to plausibly suggest the contours of the relevant geographic and product markets." *Jacobs,* 626 F.3d at 1336; *see also Simpson,* 2014 WL 888498 at *6-7 (in determining the effect on a market, plaintiffs must allege what the relevant market).[5]  A market is defined in terms of product or service that is relevant for antitrust

---

[5]      Albeit a RICO case, *Simpson* is particularly salient to the instant antitrust allegations because the Eleventh Circuit held that to prove that conduct had adverse price effects a claimant must allege a plausible relevant market. In fact, the *Simpson* Court expressly acknowledged the connection, in the market definition pleading context, between RICO and antitrust claims. *Simpson,* 2014 WL 888498, at *7.

purposes, amounts to a "group of sellers or producers who have the 'actual or potential ability to deprive each other of significant levels of business.'" *Kodak*, 125 F.3d at 1202 (quoting *Rebel Oil Co. v. Atlantic Richfield Co*, 51 F.3d 1421, 1434 (9th Cir. 1995)); *PSKS, Inc. v. Leegin Creative Leather Products, Inc.*, 615 F.3d 412, 417 (5th Cir. 2010 (stating that a "proposed market must include 'all commodities reasonably interchangeable by consumers for the same purposes.'" *U.S. v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956).).

To define a relevant market is to identify producers that provide customers of a defendant firm (or firms) with alternative sources for the defendant's product or services. *Levine*, 72 F.3d at 1552; *see U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 995 (11th Cir. 1993) (holding that "a relevant product market is primarily a process of describing those groups of producers which, because of the similarity of their products, have the ability – actual or potential – to take significant amounts of business away from each other"). A relevant market includes all existing firms that would compete in the event of a significant, non-transitory price increase. *Id.*; *see Pinder v. Hudgins Fish Co.*, 570 F.2d 1209, n. 17 (5th Cir. 1978) (listing factors, including "responsiveness of the sales of one product to the price changes of [another]," in determining relevant market); *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264, 1271 (9th Cir. 1975). "Without a proper definition of the relevant market, it is impossible to determine a party's influence over that market." *Twin City Sportservice*, 512 F.2d at 1271; *In re Municipal Bond Reporting Antitrust Litigation*, 672 F.2d 436 (5th Cir. 1982) ("[t]he relevant market establishes the backdrop against which to measure economic power").

Plaintiffs allege no facts tending to prove any relevant product or service market. They do not even make conclusory allegations of a relevant product or service market. *See, e.g., Spanish Broad. Sys. of Fla.*, 376 F.3d at 1071-72; *Levine*, 72 F.3d at 1551.

      b.     *Plaintiffs Fail to Allege Plausible Facts of a Relevant Geographic Market.*

Similarly, an antitrust claimant must plausibly allege facts that tend to prove a geographic market that is relevant for antitrust purposes. *Jacobs*, 626 F.3d at 1336; *Simpson,* 2014 WL 888498 at *6-7. A relevant geographic market is the geographic area of effective competition, including firms that would enter in the event of a price increase. *See, e.g., Standard Oil Co. v. United States*, 337 U.S. 293, 299 n.5 (1949). Again, Plaintiffs allege no facts tending to prove a relevant geographic market, and dismissal for failing to state an antitrust claim is required. *See, e.g., Spanish Broad. Sys. of Fla.,* 376 F.3d at 1071-72; *Levine*, 72 F.3d at 1551.

The Complaint arguably attempts to suggest that the market at issue is the entire State of Florida. But simply taking an arbitrary state line or company marketing area is not sufficient as a matter of law. *See Apani Sw., Inc. v. Coca-Cola Enters., Inc.,* 300 F.3d 620, 626-27 (5th Cir. 2002) ("the economic significance of a geographic area does not depend upon singular elements such as population, income, ***political boundaries***, or geographic extent, but rather upon the relationship between these elements and the characteristics of competition in the relevant product market within a particular area") (emphasis added). There are reasons that the relevant geographic market might be smaller (e.g., Miami v. Tallahassee), overlap two states (e.g., variable actuarial standards and analyses may include Jacksonville, Florida and Savannah, Georgia), or might be nationwide (e.g., marketing and advertising). Establishing a relevant geographic market is entirely Plaintiffs' burden, and Plaintiffs fail to allege any facts that rule in a relevant geographic market or rule out other markets. *See, e.g., Spanish Broad. Sys. of Fla.,* 376 F.3d at 1071-72; *see Apani,* 300 F.3d at 630-33 (affirming dismissal under Rule 12(b)(6) for failure to plead a plausible relevant geographic market). Again, their claims fail as a matter of law. *See, e.g., Spanish Broad. Sys. of Fla.,* 376 F.3d at 1071-72; *Levine*, 72 F.3d at 1551.

      c.    *Plaintiffs' Market Share Allegations are Immaterial under Twombly.*

Under the rule of reason, Plaintiffs must allege that the putatively conspiring Defendants have market power in a properly-alleged relevant market. *See, e.g., Spanish Broad. Sys. of Fla.,* 376 F.3d at 1071-72; *Levine,* 72 F.3d at 1538, 1551. High market share – absent proper market definition – does not tend to prove market power and is inconsequential. Fed. R. Evid. 104(b), 401; *see Cont'l Airlines v. United Airlines,* 277 F.3d 499, 509 (4th Cir. 2002) (absent market power in a relevant market, any purported restraint of trade does not implicate Section 1 of the Sherman Act). Again, Plaintiffs allege no facts tending to prove market power.

      d.    *No Allegations of Barriers to Entry.*

Even if the market share were meaningful because Plaintiffs had alleged relevant product/service and geographic markets or otherwise, Plaintiffs' failure to allege barriers to entry in the relevant market is yet another reason that Counts 6 and 7 fail to state a Sherman Act claim. *See, e.g., Spanish Broad. Sys. of Fla.,* 376 F.3d at 1071-72; *Levine,* 72 F.3d at 1551. To succeed under the rule of reason, Plaintiffs must also show that new competitors (or existing competitors with excess capacity) seeking to enter the relevant market face high market barriers to entry. *See, e.g., Kodak,* 125 F.3d at 1207-08; *Lockheed Martin Corp. v. Boeing Co.,* 390 F. Supp. 2d 1073, 1078, 1079, n.6 (M.D. Fla. 2005); *Moecker v. Honeywell Int'l Inc.,* 144 F.Supp.2d 1291, 1308 (M.D. Fla. 2001). "Even a 100% monopolist may not exploit its monopoly power in a market without entry barriers." *Kodak,* 125 F.3d at 1207-08 (citing *Los Angeles Land Co. v. Brunswick Corp.,* 6 F.3d 1422, 1427 (9th Cir. 1993)); *see also Pope v. Mississippi Real Estate Comm'n,* 872 F.2d 127 (5th Cir. 1992) (holding that membership fee to access real estate listings is not an unreasonable barrier to entry); *JT Gibbons, Inc. v. Crawford Fitting Co.,* 704 F.2d 787, 796 (5th Cir. 1983) (holding that patented products and products that are not compatible with

competitors' items are insufficient barriers to entry for purposes of rule of reason analysis).  A barrier to entry is any market feature capable of constraining the normal operation of a relevant market to the extent that the relevant market is unlikely to be self-correcting over time.  *Kodak*, 125 F.3d at 1208.  On the other hand, if the purported barrier to entry does not prevent self-correction over time, then the claimant's monopolization claim fails.  *Id.*

Plaintiffs' failure to allege barriers to entry is not curable in this instance – given the fact that Plaintiffs concede that there are more than 35 companies providing automobile insurance in Florida.[6]  Complaint at ¶¶ 20-59.  Where barriers to entry are low -- that is, where new firms could readily enter or existing firms could readily expand capacity – a large market share does not indicate market power.  *See Nat'l Bancard Corp. v. VISA USA Inc.*, 596 F.Supp. 1231, 1259 (S.D. Fla. 1984) (defendant would lack market power, even if it had a large market share, where there were no significant barriers to entry).  After all, if entry barriers were high, this many companies could not be providing insurance services in the state.

   e. *Plaintiffs Fail to Allege How the Purported Restraints, Even If True, Result in Anticompetitive Effects and that the Anticompetitive Effects Outweigh the Procompetitive Benefits.*

In Count 6, with respect to the element of anticompetitive effects, Plaintiffs allege "vertical conspiracy . . . to impose maximum price limits[.]"  Complaint at ¶¶ 135, 136, 138, and 140.  What Plaintiffs fail to allege is how that particular vertical maximum price fixing (i.e., ensuring lower prices) might be anticompetitive.  *See, e.g., Aspen Skiing v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602 (1985); *see Levine*, 72 F.3d at 1551 ("Rule of reason analysis

---

[6] Entry barriers to the insurance market are generally considered to be quite low because the "productive assets" are money, the ability to spread risk, actuarial skills, and marketing – all of which are quite ephemeral unlike mining, airlines, or automobile manufacturing, for example.  *See Hood v. Tenneco Tex. Life Ins. Co.*, 739 F.2d 1012, 1019 (5th Cir. 1984 (noting that the insurance industry is marked by the ease of entry); *Ball Memorial Hospital v. Mutual Hospital Insurance*, 784 F.2d 1325, 1335 (7th Cir. 1986) (insurers typically cannot block entry).  It should be noted the State Insurance Regulator states that more than 500 insurers provide automobile insurance in Florida.

requires the plaintiff to prove . . . an anticompetitive effect of the defendant's conduct on the relevant market"). Putting aside the fact that allegations of this purported conspiracy and GEICO joining utterly fail, *supra*, it is not enough to allege a restraint for the anticompetitive effects element – particularly when that restraint is merely lower prices. Plaintiffs must allege how this purported restraint is anticompetitive, and they have not.

Because vertical maximum price fixing generally results in lower prices and increased consumer welfare, the Supreme Court has expressly noted that vertical maximum price fixing is procompetitive and beneficial and can rarely be anticompetitive – particularly when there are many other competitors in the marketplace ensuring interbrand competition. *State Oil Co. v. Khan*, 522 U.S. 3, 14-15 (1997). Low prices do not generally raise antitrust concerns and are precisely the type of conduct the antitrust laws are designed to promote. *See, e.g., Matsushita Electric Industrial Co. v. Zenith Radio Corp*, 475 U.S. 574, 594 (1986). Moreover, low prices typically indicate competition and not the lack of competition. *See, e.g., id.* Indeed, according to Plaintiffs' own allegations, there are more than 35 other competitors engaging in interbrand competition and prepared to capitalize on any anticompetitive conduct by GEICO. Complaint at ¶¶ 20-59. Plaintiffs have only alleged a purported restraint, and they have not alleged plausible facts tending to prove why that restraint – a vertical maximum price fixing agreement – is anticompetitive. *See, e.g., Spanish Broad. Sys. of Fla.*, 376 F.3d at 1071-72; *Levine*, 72 F.3d at 1551; *see also Jacobs*, 626 F.3d at 1340 (allegation that price-fixing agreements "have unreasonably restrained, do unreasonably restrain, and will continue to unreasonably restrain trade and commerce . . . by eliminating price competition" is not more than a "bare legal conclusion" insufficient to plausibly allege a violation of the Sherman Act). This is particularly troubling when the Supreme Court noted more than 25 years ago that vertical maximum price

fixing is generally procompetive and not an antitrust violation under the Sherman Act. *State Oil*, 522 U.S. at 14-15.

In Count 7, with respect to the anticompetitive effects element, Plaintiffs allege a horizontal boycott of them – a supplier and not a competitor of the Defendants. In *Northwest Wholesale Stationers*, 472 U.S. at 295, the Supreme Court held that a decision by a group of competitors to expel a member of their cooperative "does not necessarily imply anticompetitive animus and thereby raise a probability of anticompetitive effect."  Since that decision, courts closely scrutinize group boycott allegations for whether anticompetitive effects are adequately alleged.

Plaintiffs' Complaint repeatedly alleges a very strong procompetitive benefit, lower prices, and that the purpose of the alleged boycott was to ensure these lower prices.  Complaint at ¶ 159.  Because Plaintiffs do not allege any cognizable anticompetitive effects whatsoever, Plaintiffs have not adequately alleged that the procompetitive benefits are outweighed by anticompetitive effects and do not violate the antitrust laws. *Northwest Wholesale Stationers*, 472 U.S. at 295.

  f.  *Plaintiffs have not Adequately Alleged Antitrust Injury.*

Finally, Plaintiffs have not made sufficient allegations of antitrust injury.  A claimant must show an antitrust injury to have antitrust standing to bring a Sherman Act claim. *See, e.g. Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 540-42 (1983); *Levine*, 72 F.3d at 1544-45.  Because the antitrust laws protect competition and not competitors, many injuries – including direct injuries – suffered by plaintiffs are not cognizable under the antitrust laws. *See, e.g., Associated General Contractors of California*, 459 U.S. at 540-42.  As a result, Plaintiffs must allege facts that they suffered injuries

from the anticompetitive effects of purported restraints and not simply injuries from Defendants' alleged goal of paying lower prices. *See, e.g., id.*; *see also Simpson*, 2014 WL 888498 at \*7-8 (to meet the *Twombly/Iqbal* pleading standards, claimant must allege plausible facts that the unlawful conduct, and not lawful conduct, caused the purported harm). Plaintiffs fail to do so.

### C.   Plaintiffs' State Law Claims Fail as a Matter of Law.

Plaintiffs' five state law claims also fail as a matter of law. They fail to both state cognizable claims for relief under Florida law and satisfy the *Twombly/Iqbal* requirements.

### 1.   Quantum Meruit (Count One)

"Under Florida law, to satisfy the elements of quantum meruit, a plaintiff must show that the plaintiff provided, and the defendant assented to and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it." *White Holding Co., LLC v. Martin Marietta Materials, Inc.*, 423 Fed. Appx. 943, 947 (11th Cir. 2011). In situations involving an insurance agreement, where a third-party conveys a benefit on an insured, and not an insurer, it is implausible to allege that a benefit has been conveyed on the insurer. *Hialeah Physicians Care, LLC v. Connecticut General Life Ins. Co.*, No. 13–21895–CIV, 2013 WL 3810617, at \*3 (S.D. Fla. 2013) ("HPC can hardly be said to have conferred any benefit, even an attenuated one, upon the Plan's insurer by providing Plan beneficiaries with health care services."); *Adventist Health System / Sunbelt Inc. v. Medical Savings Ins. Co.*, No. 6:03-cv-1121-Orl-19KRS, 2004 WL 6225293, at \*6 ("[A] third-party providing services to an insured confers nothing on the insurer except, a ripe claim for reimbursement, which is hardly a benefit.").

Plaintiffs' quantum meruit claim further fails as a matter of law because the alleged "direct repair program agreements" are central to Plaintiffs' allegations. *See, e.g.,* Complaint at ¶¶ 65-66, 70, and 72. It is settled Florida law, however, that a cause of action based on quantum meruit cannot exist when there is a valid contract between the parties. *White Holding*, 423 Fed. Appx. at 947 ("The equitable relief of quantum meruit is founded upon the legal fiction of an implied contract, and cannot be maintained . . . when the rights of the parties are described in a written contract.") (internal quotation marks and citation omitted); *Five for Entertainment S.A. v. Rodriguez*, No. 11–24142–CIV, 2013 WL 3975671, at *7 (S.D. Fla. July 31, 2013) ("Florida law is clear that quantum meruit damages cannot be awarded when an enforceable contract exists.").[7]

## 2.    Unjust Enrichment (Count Two)

Plaintiffs have not and cannot plausibly allege under *Twombly* that they have conferred a benefit on GEICO – a required element of an unjust enrichment claim under Florida law. *Peoples Nat. Bank of Commerce v. First Union Nat. Bank of Florida*, N.A., 667 So.2d 876, 879 (Fla. 3d DCA 1996). This is because Plaintiffs service the insured's car. *Hialeah Physicians Care,* 2013 WL 3810617, at *3; *Adventist Health System / Sunbelt Inc.*, 2004 WL 6225293, at *6.

Moreover, a claim for unjust enrichment, much like a claim of quantum meruit, fails when a plaintiff also alleges an express contract concerning the subject matter. *Allyn v. CNL Lifestyle Properties, Inc.*, No. 6:13–cv–132–Orl–36GJK, 2013 WL 6439383, at *6 (M.D. Fla. Nov. 27, 2013) ("However, a plaintiff cannot pursue a claim for unjust enrichment if an express contract exists concerning the same subject matter."). "Florida courts have held that a plaintiff

---

[7]      GEICO denies that it had written direct repair program agreements with any of the Plaintiffs, and not a single Plaintiff specifically identifies any such agreement that it allegedly had with GEICO. But nevertheless, Plaintiffs attempt to base their claims upon the existence of these unidentified agreements.

cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008); *see Ocean Commc'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. 4th DCA 2007) ("Defendants correctly state that a plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists . . . A contract implied in law, or 'quasi contract,' operates when there is no contract 'to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving compensation.'" (citation omitted)).

### 3.  Quasi-Estoppel (Count Three)

Quasi-estoppel is not a cognizable claim under Florida law.  The Supreme Court of Florida has defined quasi-estoppel as the principle that "a party cannot, either in the court of litigation or in dealings in pais, occupy inconsistent positions." *Hodkin v. Perry*, 88 So. 2d 139, 140 (Fla. 1956).  Florida law has also considered the similar doctrine of equitable estoppel, which is defined as:

> the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which perhaps have otherwise existed, either of property or of contract, or of remedy, as against another person, who has in good faith relied upon such conduct and has been led thereby to change his position for the worse . . . The doctrine of estoppel is applicable in all cases where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury.

*Major League Baseball v. Morsani*, 790 So. 2d 1071, 1076-77 (Fla. 2001) (punctuation and citation omitted) ("Equitable estoppel is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position[.]").

Equitable estoppel, and by analogy, Plaintiffs' purported quasi-estoppel claim, "functions as a shield, not a sword[.]" *Id.*; *see also Am. Color Graphics, Inc. v. Brooks Pharmacy, Inc.*, 2006 WL 539543, *5 (M.D. Fla. Mar. 6, 2006) (internal citations omitted) ("In Florida, equitable estoppel is an affirmative defense, not a cause of action.  Accordingly, American cannot assert the doctrine of equitable estoppel as a claim for relief.").

And even if quasi-estoppel was a valid claim under Florida law, Plaintiffs have alleged no facts concerning positions GEICO took at one time and how GEICO has changed its position to the detriment of Plaintiffs. *Hodkin*, 88 So. 2d at 140.  Likewise, Plaintiffs have alleged no facts concerning how Plaintiffs have in good faith relied upon such conduct and has been led thereby to change their position for the worse. *Id.*

### 4.     Tortious Interference with Business Relations (Count Four)

Plaintiffs do not even try to meet their *Twombly/Iqbal* burden with respect to their tortious interference claim against GEICO.  The elements of a tortious interference claim are: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009) (internal citations omitted).  There are no allegations with respect to GEICO as to any of these elements.

And again, because Plaintiffs' base their claims on alleged agreements between them and the Defendants, they cannot assert a cognizable claim for tortious interference. *See Cox v. CSX Intermodal, Inc.*, 732 So.2d 1092, 1099 (Fla. 1st DCA 1999) ("Generally, a tortious interference claim 'exists only against persons who are not parties to the contractual relationship.'"); *Bortell*

*v. White Mountains Ins. Group, Ltd.*, 2 So. 3d 1041, 1049 (Fla. 4th DCA 2009) ("A tortious interference claim exists only against persons or entities who are not parties to the contractual relationship.").

Moreover, Plaintiffs have not identified a single existing relationship that GEICO allegedly wrongfully interfered with.

### 5.    Conversion  (Count Five)

"In order to establish a claim for conversion of money under Florida law, a plaintiff must demonstrate, by a preponderance of the evidence: (1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so." *IberiaBank v. Coconut 41*, LLC, No. 2:11–cv–321–FTM–29DNF, 2013 WL 6061883, at \*19 (M.D. Fla. Nov. 18, 2013); *see also Deutsche Bank Nat. Trust Co. v. Foxx*, No. 8:13–cv–115–T– 35TBM, 2013 WL 5291128, at \*9 (M.D. Fla. Sept. 19, 2013) ("Conversion is an unauthorized act that deprives a person of his property permanently or for an indefinite time.").

Plaintiffs have not identified any specific and identifiable money at issue.  Instead they generally allege that they have not been paid enough by the Defendants.  "The identification requirement ensures that a fund of money actually exists to pay a specific debt owed and the claimant is not merely transforming a contract dispute into a conversion claim." *U.S. v. Mystic Equestrian LLC*, No. 11–81130–CIV, 2013 WL 616938, at \*3 (S.D. Fla. Feb. 19, 2013).  *see also Belford Trucking*, 243 So.2d at 648 ("A mere obligation to pay money may not be enforced by a conversion action."); *Rosen v. Marlin*, 486 So.2d 623, 625 (Fla. 3d DCA 1986) ("A debt which may be discharged by the payment of money in general cannot form the basis of a claim for conversion.").

### III.   CONCLUSION

GEICO requests that Plaintiffs' Complaint be dismissed for the reasons set forth above, together with such further relief as the Court deems proper.

Respectfully submitted,

*/s/ John P. Marino*
John P. Marino (FBN 814539), Trial Counsel
EMAIL:  jmarino@sgrlaw.com
Lindsey R. Trowell  (FNB 678783)
EMAIL:  ltrowell@sgrlaw.com
SMITH, GAMBRELL & RUSSELL, LLP
50 N. Laura Street, Suite 2600
Jacksonville, FL  32202
Telephone:   (904) 598-6100
Facsimile:   (904) 598-6300

and

Dan W. Goldfine *(pro hac vice admission pending)*
SNELL & WILMER, LLP
One Arizona Center
400 East Van Buren Street, Suite 1900
Phoenix, AZ 85004-2202
Telephone:   (602) 382-6000
Facsimile:   (602) 382-6070

*Attorneys for Defendant GEICO General Insurance Company*

### CERTIFICATE OF SERVICE

I certify that on March 25, 2014, the foregoing document is being served on the counsel of record as indicated below, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing via the CM/ECF system to: Alan Brent Geohagan, A. Brent Geohagan, P.A., 3001 Bartow Rd., Lakeland, FL 33803, abrent@geohaganlaw.com.

*/s/ John P. Marino*
Attorney