UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

A & E AUTO BODY, INC., et al.

*Plaintiffs,*                                    **Case No. 6:14-CV-00310-GAP-TBS**

v.

21ST CENTURY CENTENNIAL INSURANCE
COMPANY, et al.,

*Defendants.*

_____/

**DEFENDANT GEICO GENERAL INSURANCE COMPANY'S
MOTION AND SUPPORTING MEMORANDUM TO
DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendant, GEICO General Insurance Company ("GEICO"), moves to dismiss Plaintiffs' amended Complaint[1] and Demand for Jury Trial (Doc. 167) ("Amended Compliant") for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The grounds and authority for this motion are set forth in the following supporting memorandum. The memorandum is incorporated as part of this motion.

**MEMORANDUM**

GEICO respectfully submits the following memorandum in support of its Motion to Dismiss Plaintiffs' Amended Complaint.[2]

**I.   SUMMARY**

Plaintiff's Amended Complaint should be dismissed as it fails to comply with all but one of the directives of the Court's June 11, 2014 Order (Doc. 110) (hereinafter cited as "Order"):

_____

[1] Plaintiffs titled their amended Complaint as "Complaint."

[2] Plaintiffs filed their Amended Complaint late, and this is not the first time Plaintiffs have chosen to disregard this Court's Orders or Local Rules on filing. *See* Chronology of Pls.' Belated Filings attached as Ex. A.

1.      In dismissing the original Complaint, the Court admonished Plaintiffs for their "shotgun pleading," which incorporated every preceding allegation of the Complaint into each count.  *See* Order ¶ 1.  The Amended Complaint is even worse.  It contains all the same lengthy introductory paragraphs, but the separate counts do not specify which paragraphs support which causes of actions (if any).  The Court and the parties are therefore now left guessing even more so than with Plaintiffs' first shotgun pleading.

2.      The Court directed Plaintiffs to "identify which Plaintiffs have DRP agreements with which (if any) Defendants."  *See* Order ¶ 3.  Exhibit 4 to the Amended Complaint—titled "Plaintiffs' Direct Repair Program Affiliations"—appears to be Plaintiffs' attempt to comply.  But GEICO is not listed on Exhibit 4.  And no other allegation identifies any agreement between any of Plaintiffs and GEICO.[3]

3.      The Court admonished Plaintiffs for attributing wrongdoing "collectively, to every Defendant" and alleging that the acts "have been perpetrated upon every Plaintiff."  *See* Order ¶ 4.  Plaintiffs ignore the Court's directive.  Rather than plead individualized allegations as directed by the Court, Plaintiffs simply added the following to the end of numerous paragraphs:

> The individual Defendants specifically included within the use of the term "the Defendants" in this paragraph include 21st Century Centennial Insurance Company, 21st Century Indemnity Insurance Company, Acceptance Indemnity Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Insurance Company, Bristol West Insurance Company, Direct General Insurance Company, Encompass Indemnity Company, Esurance Property & Casualty Insurance Company, Esurance Insurance Company, First Acceptance Insurance Company, Inc., Florida Farm Bureau General Insurance, Florida Farm Bureau Casualty Insurance Company, Foremost Insurance Company, GEICO General Insurance Company, Hartford Accident and Indemnity Company, Hartford Underwriters Insurance Company, Horace Mann Insurance Company, Infinity Auto Insurance Company, Liberty Mutual Insurance Company, Mercury Insurance Company of Florida, MGA Insurance Company, Inc., National General Insurance Online, Inc., Nationwide Insurance Company of Florida, Inc., Nationwide Mutual Insurance Company, Ocean Harbor Casualty Insurance Company, Old Republic Insurance Company, Progressive American Insurance

---

[3] Moreover, although Exhibit 4 was filed with the Amended Complaint, it is not referenced anywhere in the Amended Complaint and is therefore not properly part of the pleading.

Company, Progressive Select Insurance Company, Safeco Insurance Company of America, Security National Insurance Company, Sentry Insurance A Mutual Company, State Farm Mutual Automobile Insurance Company, The Cincinnati Insurance Company, Travelers Indemnity Company, USAA Casualty Insurance Company, United Services Automobile Association, Westfield Insurance Company, Windhaven Insurance Company, and Zurich American Insurance Company.

Adding a boiler plate list of all Defendants to the end of numerous paragraphs continues to attribute every allegation "collectively" to every Defendant. *See* Order ¶ 4. This is not what the Court directed Plaintiffs to do. *See id.* The Amended Complaint therefore should be dismissed because Plaintiffs failed to comply with the Court's Order.

The Amended Complaint should further be dismissed because it still fails to state a claim:

1.	*Plaintiffs' continued "shotgun" pleading and nonspecific references to "Defendants" are improper.* The Eleventh Circuit does not allow the exact type of "shotgun" pleading that Plaintiffs are attempting in this case. Nor does it allow the repeated nonspecific references to "Defendants" that Plaintiffs attempt.

2.	*Plaintiffs' attempted antitrust claims still do not satisfy the Twombly/Iqbal requirements.* The U.S. Supreme Court has made clear that antitrust conspiracy allegations must contain facts that create a plausible theory of an actual conspiracy and that the defendant joined that conspiracy. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and their progeny. Plaintiffs fail to meet their obligations under *Twombly/Iqbal* because there are: No allegations of face-to-face meetings involving GEICO; no allegations of phone calls involving GEICO; no allegations of emails, texts or letters involving GEICO; no allegations of trade association meetings involving GEICO; no allegations that pricing information was shared with or by GEICO; no allegations of even a "wink and a nod" towards or by GEICO. Plaintiffs have not alleged a single fact—plausible or otherwise—that GEICO did anything whatsoever that could support a Sherman Act conspiracy claim against it.

Plaintiffs further fail to state the substantive elements of their purported antitrust claims. The rule of reason applies to Plaintiffs' antitrust claims, and they fail to state a rule of reason

violation because:  Plaintiffs fail to allege a product/service market that is relevant for antitrust purposes; Plaintiffs fail to allege a geographic market that is relevant for antitrust purposes; Plaintiffs fail to allege market power in a relevant product/service and geographic market; Plaintiffs fail to allege barriers to entry; Plaintiffs fail to allege how the purported restraints result in anticompetitive effects; Plaintiffs fail to allege how purported anticompetitive effects outweigh the purported restraints' procompetitive benefits, particularly since Plaintiffs allege that the purported restraints lower prices; Plaintiffs fail to allege that they suffered antitrust injury from anticompetitive effects.

3.     *Plaintiffs' attempted state law claims still do not allege necessary elements or satisfy the Twombly/Iqbal requirements.*  Plaintiffs still fail to allege one or more required substantive elements for each of their purported state law claims.  And each of their attempted state law claims further fail to satisfy the *Twombly/Iqbal* plausibility requirement.

## II.     PLAINTIFFS DID NOT COMPLY WITH THIS COURT'S ORDER.

The Amended Complaint should be dismissed with prejudice because it fails to remedy the "most serious" problems identified in the Court's Order.

The initial Complaint (Doc. 1) contained 166 paragraphs.  The Amended Complaint has 169 almost identical paragraphs.[4]  The Court admonished Plaintiffs' "shotgun" practice of pleading omnibus factual allegations in the first 121 paragraphs of the Complaint, with no specific facts supporting each of the following counts.  Ignoring the Court's Order, Plaintiffs repeated this practice.  The Amended Complaint pleads 132 general allegations before introducing the first count.  The subsequent paragraphs for each count again fail to allege the specific facts required by Rule 8—and by this Court's Order—to support each Count.

Just one example is Plaintiffs' failure to follow the Court's specific directives as to the proper pleading of Count Two (Unjust Enrichment).  *See* Order ¶ 4.  The Court informed Plaintiffs of the problem caused by group pleadings and told Plaintiffs what was required:

---

[4] Plaintiffs failed to include a Paragraph 75.

> While there may be situations to which such collective descriptions are sufficient, at least some of claims asserted here require individualized allegations.  For example, if Plaintiffs' counsel were able to establish that Defendant A was unjustly enriched by shortchanging Plaintiff B, it would not entitle any other plaintiff to a judgment against Defendant A (or any other defendant).

*Id.*  Plaintiffs ignored the Court.  No specific Plaintiff is identified as having conferred benefit upon a specific Defendant.  Instead, Plaintiffs list every Defendant and use the term "Plaintiffs."[5]

This problem of vague group pleading continues throughout the Amended Complaint.  In response to the Court's admonishment for their attributing alleged wrongdoing "collectively, to every Defendant," Order ¶ 4, Plaintiffs simply substituted the word "Defendants" with the boilerplate list of each Defendant's name at the end of numerous paragraphs.  *See, e.g.*, Am. Compl. ¶¶ 66-71.  Plaintiffs repeat this practice at least forty-nine times.  That does nothing to inform each Defendant of what it did, or in what way a specific Defendant allegedly harmed which of the eighteen Plaintiffs.  And it is not what the Court prescribed when it ordered that Plaintiffs plead "individualized allegations."  *See* Order ¶ 4.

The Court informed Plaintiffs of some of their "most serious" pleading defects.  Nevertheless, and despite ample notice, Plaintiffs have filed a pleading that fails to correct these defects.[6]  Dismissal with prejudice is warranted.  *See Frantz v. Walled*, 513 Fed. Appx. 815, 821 (11th Cir. 2013) (affirming dismissal with prejudice of amended complaint for failure to comply with Rule 8); *Petrano v. Old Rep. Nat'l Title Ins. Co.*, 1:12cv86–SPM/GRJ, 2013 WL 1325030, at *2-3 (N.D. Fla. Mar. 27, 2013) (dismissing amended complaint with prejudice because it "did not comply with the court's directives"); *see also Brigliadora v. Wells Fargo Bank, N.A.*, 8:10–CV–01944–EAK–TGW, 2011 WL 2217485, at *5 (M.D. Fla. June 07, 2011).

---

[5] Plaintiffs' only changes to the Unjust Enrichment Count are:  (1) removal of a portion of the legal conclusion in paragraph 140; and (2) a boilerplate listing of each Defendant in paragraphs 140 and 141.

[6] Plaintiff's only responsive change was to correct the states of citizenship of Defendants.

## III.   THE AMENDED COMPLAINT SHOULD BE DISMISSED UNDER RULES 12(B)(6) AND 8(A).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). *Twombly* explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

550 U.S. at 555 (internal citations omitted); *Simpson v. Sanderson Farms, Inc.,* No. 13-10624, 2014 WL 888498, at *4 (11th Cir. Mar. 7, 2014) (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555) ("[a] plaintiff cannot rely on 'naked assertion[s] devoid of further factual enhancement;' rather, a complaint must present sufficient factual matter, accepted as true, to 'raise a right to relief above the speculative level'").

"A complaint is insufficient if it offers only 'labels and conclusions.'" *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678); *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1340 (11th Cir. 2010). The Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Conclusory allegations are "not entitled to the assumption of truth." *Id*. at 679; *see also Am. Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1293 (11th Cir. 2010).

### A.   Plaintiffs' Continued Shotgun Pleading Is Improper.

Like the initial Complaint, the Amended Complaint is a shotgun pleading, which "begin[s] with a long list of general allegations, most of which are immaterial to most of the claims for relief." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998). The Eleventh Circuit has frequently criticized this manner of pleading:

> Shotgun pleadings impede the administration of the . . . courts' civil dockets in countless ways. The . . . court, faced with a crowded docket and whose time is constrained by the press of other business, is unable to squeeze the case down to its essentials. It is therefore left to this court to sort out on appeal the meritorious

6

> issues from the unmeritorious ones, resulting in a massive waste of judicial and private resources; moreover, the litigants suffer, and society loses confidence in the courts' ability to administer justice.

*Peavy v. Black*, 476 Fed. Appx. 697, 699 (11th Cir. 2012) (alteration, citation and quotation marks omitted) (quoting *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 806 n.4 (11th Cir. 2010)); *see also Serpentfoot v. Rome City Comm'n*, 426 Fed. Appx. 884, 885 n.1 (11th Cir. 2011) (shotgun pleadings is "ubiquitous problem"); *Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001) ("shotgun pleadings wreak havoc on the judicial system"), *abrogated on other grounds by Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146 (11th Cir. 2011).

Moreover, both this Court and the Eleventh Circuit hold that "group pleading" where allegations are not differentiated among individual Defendants is improper. *See Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1273-74 (M.D. Fla. 2009), *aff'd*, 451 F. App'x. 862 (11th Cir. 2012) ("the grouping of Defendants … does not afford these Defendants fair notice of the basis for the claims against them," particularly where role of each Defendant is not described); *Synergy Real Estate of SW. Fla., Inc. v. Premier Prop. Mgmt. of SW. Fla., LLC*, No. 2:11-CV-707-FTM-29, 2012 WL 4009534, at *2 (M.D. Fla. Sept. 12, 2012); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (multiple claims against fourteen defendants without any specifics in each count, was "a quintessential 'shotgun' pleading we have condemned repeatedly").

The Amended Complaint is a textbook example of a "shotgun pleading." It contains 132 introductory paragraphs, but the counts do not specify which paragraphs are incorporated into which counts (if any). The Court and the parties are left guessing which allegations support which counts. The Amended Complaint also fails to plead individualized allegations as against each Defendant. *See* Order ¶ 4. Rather, Plaintiffs simply added the names of all Defendants to the end of multiple paragraphs, still attributing every allegation collectively to every Defendant. *See, e.g.*, Am. Compl. ¶¶ 66-71, 76, 86, 101-02, 103, 104, 108-11, 117, 122.

In *Atuahene v. City of Hartford*, 10 Fed. Appx. 33 (2d Cir. 2001), which was favorably cited by this Court in *Pierson*, *supra*, the Second Circuit affirmed a dismissal with prejudice of

an amended complaint on precisely this point:

> In the second complaint, Atuahene replaced the allegations against "the defendants" with the names of all of the defendants, still failing to identify which defendants were alleged to be responsible for which alleged violations. … By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, Atuahene's complaint failed to satisfy this minimum standard, even after the district court graciously accorded him several opportunities to correct its manifest flaws.

*Atuahene*, 10 Fed. Appx. at 34.  Other courts have come to the same conclusion, finding that Rule 8 is not satisfied where plaintiffs use either the general term "Defendants" or a list of all defendants. *See, e.g.*, *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."); *Carbajal v. City & Cnty. of Denver*, No. 11–cv–02826–BNB, 2012 WL 592871, at *2 (D. Colo. Feb. 23, 2012), *aff'd*, 502 Fed. Appx. 715 (10th Cir. 2012) ("Even when Plaintiffs' factual allegations are relevant, they routinely assert those factual allegations generally against various combinations of Defendants without differentiating among the Defendants and providing specific allegations that demonstrate how each named Defendant allegedly violated their rights."); *Pro Image Installers, Inc. v. Dillon*, No. 3:08cv273/MCR/MD, 2009 WL 112953, at *2 (N.D. Fla. Jan. 15, 2009) (similar). The Amended Complaint should be dismissed under Rule 8.

**B.     Plaintiffs' Attempted Antitrust Claims Fail to Satisfy the *Twombly/Iqbal* Requirements.**

Plaintiffs' antitrust allegations, like those in *Twombly*, attempt to allege a conspiracy, and turn on the adequacy (or, better stated, the inadequacy) of their generalized conspiracy allegations.  550 U.S. at 555.  The *Twombly* plaintiffs generally alleged that the defendants in that case acted similarly, or "in parallel," with each other and that, as a result, they must have been "conspiring" together to violate Section 1 of the Sherman Act.  *Id.*  But the Supreme Court made it clear that generalized allegations, without express allegations of any plausible facts

tending to prove an actual conspiracy, fail to state a claim.  *Id.*

As the Eleventh Circuit explained in *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 Fed. Appx. 136 (11th Cir. 2011), in determining the adequacy of a complaint, the District Court should first disregard all conclusory allegations and then test the adequacy of the Amended Complaint based solely on the allegations of fact:

> In applying the Supreme Court's directives in *Twombly* and *Iqbal* to a motion to dismiss, the Eleventh Circuit has instructed that a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Further, courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.

*Id*. at 138 (brackets, internal citations and quotation marks omitted).

*Twombly* also recognized that "[i]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive."  *Id.* at 546.  To prevent prolonged and costly discovery in antitrust cases, the Court limited the range of inferences that can be drawn at the pleading stage from bare allegations of parallel conduct, requiring courts to scrutinize the complaint before allowing conspiracy claims to proceed.  The *Twombly* Court ruled that "it is only by taking care to require allegations that reach the level suggesting a conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence to support a § 1 claim."  *Id*. at 559-60 (citations and internal quotation marks omitted).  This Court is faced with the same situation in this case. GEICO should not be required to defend itself in a long and protracted litigation when Plaintiffs have not even cited a single fact implicating GEICO in any alleged conspiracy.

*Twombly* therefore held that all antitrust plaintiffs must allege plausible facts and details tending to prove (a) how the defendants conspired together and (b) how a particular defendant joined the illegal conspiracy.  *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938 (5th

Cir. 2011); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 319-321 (3d Cir. 2010).  This has to be done for each Defendant separately; lumping GEICO together with the other Defendants is not permissible.  *Pierson*, 619 F. Supp. 2d at 1273-74; *Riehle v. Bank of Am., N.A.*, CV–13– 00251–NVW, 2013 WL 1694442, at *2 (D. Ariz. Apr. 18, 2013) ("A plaintiff may not collectively accuse multiple defendants of committing misdeeds through the expedience of the title 'Defendants.'  Such group pleading is not allowed.").

Conspiracy under Eleventh Circuit law requires (1) an agreement in restraint of trade (2) deliberately entered into (3) which has an unlawful objective[7] and (4) at least one overt act in furtherance of the conspiracy.  *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1078 (11th Cir. 2004); *see also Am. Dental Ass'n*, 605 F.3d at   1293 (plaintiff must show that defendant agreed with overall unlawful objective of conspiracy). Plaintiffs must allege plausible facts that show a joint meeting of the minds *and* that meeting of the minds incorporates the *unlawful* restraint to demonstrate a conspiracy.  *See, e.g.*, *Gulf States Reorganization Grp. Inc. v. Nucor Corp.*, 822 F. Supp. 2d 1201, 1224 (N.D. Ala. 2011).  In order to plead such allegations properly as to GEICO, Plaintiffs must not only allege plausible facts tending to prove a conspiracy existed, but they must also allege facts showing that:

1.   GEICO knew about the alleged conspiracy and its unlawful objective;

2.   GEICO intended to join the alleged conspiracy; and

3.   GEICO acted in a manner that was interdependent with – and not independent of – the other Defendants in that GEICO's conspiratorial benefits depended on the success of the overall conspiracy.

*See United States v. Tarantino*, 846 F.2d 1384, 1392 (D.C. Cir. 1988); *In re Vitamins*, 320 F. Supp. 2d 1, 16 (D.D.C. 2004); *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1078.  In the absence of any such allegations against GEICO, Plaintiff's Amended Complaint fails to state a claim.

---

[7] In an antitrust conspiracy, the unlawful objective is the conspiracy's intended anticompetitive purpose and effect.  *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1078.

1.      **Plaintiffs' Conspiracy Allegations in Counts 6 and 7 Fail to State a Claim Against GEICO.**

Plaintiffs fail to state a conspiracy claim in Counts Six and Seven because they fail to allege any plausible facts tending to prove that the Defendants agreed or conspired to engage in vertical maximum price fixing (Count 6) or engage in a boycott (Count 7) in *violation* of Section 1 of the Sherman Act.  *Gulf States*, 822 F. Supp. 2d at 1224.  To state a claim, Plaintiffs must allege plausible facts to determine "whether the challenged anticompetitive conduct 'stem[s] from  . . . an agreement, tacit or express'" with competitors and not from independent decisions. *Twombly*, 550 U.S. at 553 (internal citations omitted); *see also Walker v. U-Haul Co. of Miss.*, 734 F.2d 1068, 1071 (5th Cir. 1984) ("an individual seller may unilaterally select those with whom it will deal"); *Corr Wireless Commc'ns, L.L.C. v. AT&T, Inc.*, 893 F. Supp. 2d 789, 801 (N.D. Miss. 2012) ("Independent parallel conduct, or even conduct among competitors that is consciously parallel, does not alone establish the contract, combination, or conspiracy required by § 1."); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (holding insufficient "averments of agreements made at some unidentified place and time").

The Sherman Act requires plaintiffs to plead more than the existence of an agreement— they must plead that the agreement amounts to a conscious commitment to an unlawful objective:  "[T]he joint meeting of the minds *must incorporate* the *illegal* restraint and, thus, those elements are inextricably intertwined." *Nucor*, 822 F. Supp. 2d at 1224 (emphasis added). The "assertion that any 'concerted activity' can be deemed a Section 1 violation without evidence of a conscious commitment to an unlawful objective is, quite simply, not just off the mark[, it's] not the law." *Id.*  "A naked allegation of conspiracy or agreement, without more specific factual allegations, ***is not to be accepted as sufficient to state a claim under Section 1 of the Sherman Act***." *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (emphasis added); *Spanish Broad. Sys. of Fla.,* 376 F.3d at 1079 (same); *Duty Free Americas*, 946 F. Supp. 2d at 1328-29 (quoting *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1460, n. 35 (11th Cir. 1991) ("the existence of an agreement to restrain trade'" is a "threshold" requirement)).  "Hence,

when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557.  Here, there is not a single allegation of plausible facts tending to prove an illegal conspiracy.

Plaintiffs also fail to allege a single fact that GEICO *joined* the alleged conspiracy.  They do not allege that GEICO agreed or conspired with any of the thirty nine Defendants that Plaintiffs allege provide private passenger automobile insurance in Florida.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) ("if the factual context renders the claim implausible [because, in part, of the number of competitors]—if the claim is one that simply makes no economic sense—[antitrust claimants] must come forward with more persuasive evidence to support their claim than would otherwise be necessary"); *Spanish Broad. Sys. of Fla.,* 376 F.3d at 1078 (plaintiff must allege plausible facts that defendant deliberately joined the conspiracy).  First, there are no allegations that GEICO knew of the putative conspiracy's general scope or purpose.  *In re Vitamins*, 320 F. Supp. 2d at 16.  Plaintiffs fail to allege that GEICO ever discussed or heard about the putative conspiracy, negating that GEICO knew about the putative conspiracy.  Second, Plaintiffs fail to allege any facts tending to prove GEICO's purported intent to advance the unlawful purpose of the putative conspiracy.  *Id.*; *Nucor*, 822 F. Supp. 2d at 1224.  This is usually done by allegations of a defendant's actions in furtherance of the purported conspiracy—but, again, Plaintiffs fail to allege a single act GEICO may have undertaken in this regard.  Third, Plaintiffs do not allege that GEICO and any of the Defendants took a single interdependent act for a common purpose.  *Id.*; *In re Vitamins*, 320 F. Supp. 2d at 16.  Indeed, the only fair reading of the Amended Complaint is that GEICO acted entirely independent of the other Defendants.

In sum, Plaintiffs' allegations of a conspiracy are conclusory at best, and any allegations GEICO joined a conspiracy are nonexistent.  Plaintiffs fail to state an antitrust conspiracy claim.

**2.      Plaintiffs Fail to State the Substantive Elements of Their Antitrust Claims Under *Twombly/Iqbal* and Their Progeny.**

In *Twombly/Iqbal* and their progeny, the Supreme Court held that the plausibility standard applies to all substantive elements of a plaintiff's claim.  This includes the basic requirement that the facts plausibly establish each required element for each legal claim.  *Am. Dental Ass'n*, 605 F.3d at 1291.  The "plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

Count 6 attempts to state a vertical price fixing agreement and is therefore subject to the rule of reason.  Am. Compl. ¶¶ 154, 122; *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007); *State Oil Co. v. Khan*, 522 U.S. 3 (1997).  Count 7 alleges a boycott claim, which is also subject to the rule of reason when, as here, plausible justifications are present.[8] *Nw. Wholesale Stationers, Inc. v. Pac. Stationary & Printing Co.*, 472 U.S. 284, 295 (1985);[9] *Leegin*, 551 U.S. at 881; *Am. Needle v. Nat'l Football League*, 1300 S.Ct. 2201, 2216-17(2010).

Under the rule of reason and *Twombly/Iqbal*, with respect to these two antitrust claims, Plaintiffs have to allege plausible facts that tend to prove:

1.      A product or service market that is relevant for antitrust purposes;
2.      A geographic market that is relevant for antitrust purposes;
3.      Market power in the relevant product/service and geographic markets;

---

[8] Common sense and some courts assert that there is a presumption in favor of applying the rule of reason.  *See, e.g., Gregory v. Fort Bridger Rendezvous Ass'n*, 448 F.3d 1195, 1203 (10th Cir. 2006).  Plaintiffs allege both a rule of reason and *per se* illegal violation in the alternative, at least for Count 6.  Am. Compl. ¶ 153.  (What test Plaintiffs believe applies to Count 7 is unidentified.)  Plaintiffs provide, however,  no allegations explaining why Count 6 or 7 is subject to the *per se* illegal test and any such *per se* illegal allegations fail as a matter of law.  *Iqbal*, 556 U.S. 679; *see Polk Bros., Inc. v. Forest City Enterprs., Inc.*, 776 F.2d 185, 189 (7th Cir. 1985) (whether the *per se* illegal rule applies depended on the circumstances at the time the alleged restraint was adopted); *see also Cha-Car, Inc. v. Calder Race Course, Inc.*, 752 F.2d 609, 613 (11ᵗʰ Cir. 1985) ("The per se doctrine should not be extended to restraints of trade that are of ambiguous effect; any departure from the rule of reason standard must be based upon demonstrable anticompetitive economic effect, rather than formalistic line drawing.").

[9] *Northwest Wholesale* applied the rule of reason to a group boycott because it "would seem to be designed to increase economic efficiency and render markets more, rather than less, competitive" by, among other things, reducing costs.  472 U.S. at 295.  The same is true here.  Plaintiffs allege that the purpose of the alleged group boycott is to reduce costs.  Am. Compl. ¶¶ 154, 122.

4.      Barriers to entry;
5.      Wrongful conduct resulting in anticompetitive effect (i.e., conduct that raises prices above competitive levels, suppresses payments below competitive levels, or suppresses output below competitive levels);
6.      The anticompetitive effects outweigh the pro-competitive benefits;
7.      Antitrust injury or standing (i.e., plaintiff has suffered injury caused by the anticompetitive conduct); and
8.      Damages.

*See, e.g.*, *Image Technical Services, Inc. v. Eastman Kodak, Inc*., 125 F.3d 1195, 1202 (9th Cir. 1997) ("*Kodak*"); *Lakeland Reg'l Med. Ctr., Inc. v. Astellas US LLC,* No. 8:10-CV-2008-T-33TGW, 2011 WL 303522, at *9 (M.D. Fla. July 25, 2011) (stating the rule of reason test more generally); *Levine v. Cent. Fla. Med. Affiliates, Inc*., 72 F.3d 1538, 1552-54 (11th Cir. 1996) (same); *Spanish Broad. Sys. of Fla.,* 376 F.3d at 1071 (same).

a.      *No Plausible Allegations of Product/Service Relevant Market.*

In a rule of reason case, an antitrust claimant must allege plausible facts that tend to prove a product or service market that is relevant for antitrust purposes.  *See, e.g.*, *id.* at 1071-72; *Levine*, 72 F.3d at 1551; *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 418 (5th Cir. 2010) (affirming dismissal based on conclusory and implausible relevant market allegations).  Antitrust plaintiffs "must present enough information in their complaint to plausibly suggest the contours of the relevant geographic and product markets."  *Jacobs*, 626 F.3d at 1336; *see also Simpson,* 2014 WL 888498 at *6-7 (in determining the effect on a market, plaintiffs must allege the relevant market).[10]  A market is defined in terms of a product or service that is relevant for antitrust purposes, and amounts to a "group of sellers or producers who have the 'actual or potential ability to deprive each other of significant levels of business.'"  *Kodak*, 125 F.3d at 1202 (citation omitted); *PSKS, Inc.*, 615 F.3d at 417 (similar) (quoting *U.S. v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956)).

---

[10] Albeit a RICO case, *Simpson* is particularly salient to the instant antitrust allegations because the Eleventh Circuit held that to prove that conduct had adverse price effects a claimant must allege a plausible relevant market.  In fact, the *Simpson* Court expressly acknowledged the connection, in the market definition pleading context, between RICO and antitrust claims. *Simpson,* 2014 WL 888498, at *7.

To define a relevant market is to identify producers that provide customers of a defendant firm (or firms) with alternative sources for the defendant's product or services. *Levine*, 72 F.3d at 1552; *see also U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 995 (11th Cir. 1993) ("a relevant product market is primarily a process of describing those groups of producers which, because of the similarity of their products, have the ability – actual or potential – to take significant amounts of business away from each other"). A relevant market includes all existing firms that would compete in the event of a significant, non-transitory price increase. *Id.*; *see Pinder v. Hudgins Fish Co.*, 570 F.2d 1209, n. 17 (5th Cir. 1978) (listing factors, including "responsiveness of the sales of one product to the price changes of [another]," in determining relevant market); *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264, 1271 (9th Cir. 1975). "Without a proper definition of the relevant market, it is impossible to determine a party's influence over that market." *Id.* at 1271; *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436 (5th Cir. 1982) ("[t]he relevant market establishes the backdrop against which to measure economic power").

Plaintiffs allege no facts tending to prove any relevant product or service market. They do not even make conclusory allegations of a relevant product or service market. *See, e.g.*, *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1071-72; *Levine*, 72 F.3d at 1551.

      b.    *Plaintiffs Fail to Allege Plausible Facts of a Relevant Geographic Market.*

Similarly, an antitrust claimant must plausibly allege facts that tend to prove a geographic market that is relevant for antitrust purposes. *Jacobs*, 626 F.3d at 1336; *Simpson,* 2014 WL 888498 at *6-7. A relevant geographic market is the geographic area of effective competition, including firms that would enter in the event of a price increase. *See, e.g.*, *Standard Oil Co. v. United States*, 337 U.S. 293, 299 n.5 (1949). Again, Plaintiffs allege no facts tending to prove a relevant geographic market, and dismissal for failing to state an antitrust claim is required. *See, e.g.*, *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1071-72; *Levine*, 72 F.3d at 1551.

The Amended Complaint arguably attempts to suggest that the market at issue is the entire State of Florida. But simply taking an arbitrary state line or company marketing area is

not sufficient as a matter of law.  *See Apani Sw., Inc. v. Coca-Cola Enters., Inc.,* 300 F.3d 620, 626-27 (5th Cir. 2002) ("the economic significance of a geographic area does not depend upon singular elements such as population, income, ***political boundaries***, or geographic extent, but rather upon the relationship between these elements and the characteristics of competition in the relevant product market within a particular area") (emphasis added).  There are reasons that the relevant geographic market might be smaller (e.g., Miami v. Tallahassee), overlap two states (e.g., variable actuarial standards and analyses may include Jacksonville, Florida and Savannah, Georgia), or might be nationwide (e.g., marketing and advertising).  Establishing a relevant geographic market is entirely Plaintiffs' burden, and Plaintiffs fail to allege any facts that rule in a relevant geographic market or rule out other markets.  *See id.* at 630-33 (affirming dismissal for failure to plead a plausible relevant geographic market); *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1071-72.  Plaintiff's claims fail as a matter of law.  *See id.*; *Levine*, 72 F.3d at 1551.

       c.     *Plaintiffs' Market Share Allegations are Immaterial under Twombly.*

Under the rule of reason, Plaintiffs must allege that the putatively conspiring Defendants have market power in a properly alleged relevant market.  *See, e.g.*, *id.* at 1538, 1551; *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1071-72.  High market share – absent proper market definition – does not tend to prove market power and is inconsequential.  Fed. R. Evid. 104(b), 401; *Cont'l Airlines v. United Airlines*, 277 F.3d 499, 509 (4th Cir. 2002) (absent market power in a relevant market, any purported restraint of trade does not implicate Section 1 of the Sherman Act).  Again, Plaintiffs allege no facts tending to prove market power.

       d.     *No Allegations of Barriers to Entry.*

Even if market share were meaningful because Plaintiffs had alleged relevant product/service and geographic markets or otherwise, Plaintiffs' failure to allege barriers to entry in the relevant market is yet another reason that Counts 6 and 7 fail to state a Sherman Act claim.  *See, e.g.*, *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1071-72; *Levine*, 72 F.3d at 1551.  To succeed under the rule of reason, Plaintiffs must also show that new competitors (or existing competitors with excess capacity) seeking to enter the relevant market face high market barriers to entry.

*See, e.g., Kodak*, 125 F.3d at 1207-08; *Lockheed Martin Corp. v. Boeing Co.*, 390 F. Supp. 2d 1073, 1078, 1079, n.6 (M.D. Fla. 2005); *Moecker v. Honeywell Int'l Inc.*, 144 F. Supp. 2d 1291, 1308 (M.D. Fla. 2001).   "Even a 100% monopolist may not exploit its monopoly power in a market without entry barriers." *Kodak*, 125 F.3d at 1207-08 (citation omitted); *see also Pope v. Miss. Real Estate Comm'n*, 872 F.2d 127 (5th Cir. 1992) (membership fee to access real estate listings is not an unreasonable barrier to entry); *JT Gibbons, Inc. v. Crawford Fitting Co.*, 704 F.2d 787, 796 (5th Cir. 1983) (patented products and products that are not compatible with competitors' items are insufficient barriers to entry for purposes of rule of reason analysis).   A barrier to entry is any market feature capable of constraining the normal operation of a relevant market to the extent that the relevant market is unlikely to be self-correcting over time. *Kodak*, 125 F.3d. at 1208.   On the other hand, if the barrier to entry does not prevent self-correction over time, then the claimant's monopolization claim fails. *Id.*

Plaintiffs' failure to allege barriers to entry is not curable, particularly since Plaintiffs concede that there are at least forty companies providing automobile insurance in Florida.[11]   Am. Compl. ¶¶ 23-62.   Where barriers to entry are low – that is, where new firms could readily enter or existing firms could readily expand capacity – a large market share does not indicate market power.   *See Nat'l Bancard Corp. v. VISA USA Inc.*, 596 F. Supp. 1231, 1259 (S.D. Fla. 1984) (defendant would lack market power, even if it had a large market share, where there were no significant barriers to entry).   After all, if entry barriers were high, this many companies could not be providing insurance services in the state.

---

[11] Entry barriers to the insurance market are generally considered to be quite low because the "productive assets" are money, the ability to spread risk, actuarial skills, and marketing – all of which are quite ephemeral unlike mining, airlines, or automobile manufacturing, for example. *See Hood v. Tenneco Tex. Life Ins. Co.*, 739 F.2d 1012, 1019 (5th Cir. 1984) (noting that the insurance industry is marked by the ease of entry); *Ball Mem'l Hosp. v. Mut. Hosp. Ins.*, 784 F.2d 1325, 1335 (7th Cir. 1986) (insurers typically cannot block entry).   Of note, the State Insurance Regulator states that more than 500 insurers provide automobile insurance in Florida.

e.   *Plaintiffs Fail to Allege How the Purported Restraints, Even If True, Result in Anticompetitive Effects and That the Anticompetitive Effects Outweigh the Procompetitive Benefits.*

In Count 6, with respect to the element of anticompetitive effects, Plaintiffs allege "vertical conspiracy . . . to impose maximum price limits[.]"  Am. Compl. ¶¶ 153-54, 156-57 & 159.  What Plaintiffs fail to allege is how that particular vertical maximum price fixing (i.e., ensuring lower prices) might be anticompetitive.  *See, e.g.*, *Aspen Skiing v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602 (1985); *Levine*, 72 F.3d at 1551 ("Rule of reason analysis requires the plaintiff to prove . . . an anticompetitive effect of the defendant's conduct on the relevant market").  Putting aside the fact that allegations of this purported conspiracy and GEICO joining utterly fail, *supra*, it is not enough to allege a restraint for the anticompetitive effects element – particularly when that restraint is merely lower prices.  Plaintiffs must allege how this purported restraint is anticompetitive, and they have not.

Because vertical maximum price fixing generally results in lower prices and increased consumer welfare, the Supreme Court has expressly noted that vertical maximum price fixing is procompetitive and beneficial and can rarely be anticompetitive – particularly when there are many other competitors in the marketplace ensuring inter-brand competition.  *State Oil Co.*, 522 U.S. at 14-15.  Low prices do not generally raise antitrust concerns and are precisely the type of conduct the antitrust laws are designed to promote.  *See, e.g.*, *Matsushita Elec. Indus. Co.*, 475 U.S. at 594.  Moreover, low prices typically indicate competition and not the lack of competition. *See, e.g.*, *id.*  Indeed, according to Plaintiffs' own allegations, there are more than 35 other competitors engaging in inter-brand competition and prepared to capitalize on any anticompetitive conduct by GEICO.  Am. Compl. ¶¶ 23-62.  Plaintiffs have alleged only a purported restraint, and they have not alleged plausible facts tending to prove why that restraint – a vertical maximum price fixing agreement – is anticompetitive.  *See, e.g.*, *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1071-72; *Levine*, 72 F.3d at 1551; *see also Jacobs,* 626 F.3d at 1340 (allegation that price-fixing agreements "have unreasonably restrained, do unreasonably restrain, and will continue to unreasonably restrain trade and commerce . . . by eliminating price

competition" is a "bare legal conclusion").  This is particularly troubling when the Supreme Court noted more than 25 years ago that vertical maximum price fixing is generally procompetive and not an antitrust violation under the Sherman Act.  *State Oil*, 522 U.S. at 14-15.

In Count 7, with respect to the anticompetitive effects element, Plaintiffs allege a horizontal boycott of them—suppliers, and not competitors, of Defendants.  In *Northwest Wholesale Stationers*, the Supreme Court held that a decision by a group of competitors to expel a member of their cooperative "does not necessarily imply anticompetitive animus and thereby raise a probability of anticompetitive effect."  472 U.S. at 295.  Since that decision, courts closely scrutinize group boycott allegations for whether anticompetitive effects are adequately alleged.  Indeed, the Supreme Court later held that rule of reason, as opposed to per se, analysis applies to agreements by buyers "to purchase goods and services from one supplier rather than another," even when there is "no legitimate business reason for that purchasing decision." *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998).

The Amended Complaint repeatedly alleges a very strong procompetitive benefit, lower prices, and that the purpose of the alleged boycott was to ensure these lower prices.  Am. Compl. ¶¶ 159, 122.  Because Plaintiffs do not allege any cognizable anticompetitive effects, Plaintiffs have not adequately alleged that the procompetitive benefits are outweighed by anticompetitive effects and do not violate the antitrust laws.  *Nw. Wholesale Stationers*, 472 U.S. at 295.

      f.    *Plaintiffs Have Not Adequately Alleged Antitrust Injury.*

Finally, Plaintiffs have not made sufficient allegations of antitrust injury.  A claimant must show an antitrust injury to have antitrust standing to bring a Sherman Act claim.  *See, e.g.*, *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 540-42 (1983); *Levine*, 72 F.3d at 1544-45.  "[T]he antitrust injury requirement … ensures that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place, and it prevents losses that stem from competition from supporting suits by private plaintiffs for either damages or equitable relief."  *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 342 (1990); *see also Quality Auto Body, Inc. v. Allstate Ins. Co.*,

660 F.2d 1195, 1204, 1205 (7th Cir. 1981) ("[T]he insurer's refusal to pay more than the prevailing competitive rate is not illegal. . . . [A] principal purpose of the antitrust laws is to preserve and foster competition in the market place. [Body shop's] basic thrust that insurance companies must write estimates of repair costs so as to be within the prices sought by high-priced non-competitive shops clearly runs counter to these antitrust principles.") (internal quotation marks and citation omitted.). Because the antitrust laws protect competition and not competitors, many injuries— including direct injuries—suffered by plaintiffs are not cognizable under the antitrust laws. *See, e.g.*, *Associated Gen. Contractors of Cal.*, 459 U.S. at 540-42. As a result, Plaintiffs must allege facts that they suffered injuries from the anticompetitive effects of purported restraints and not simply injuries from Defendants' alleged goal of paying lower prices. *See, e.g.*, *id.*; *Simpson*, 2014 WL 888498 at *7-8 (to meet the *Twombly/Iqbal* pleading standards, claimant must allege plausible facts that the unlawful conduct, and not lawful conduct, caused the purported harm). Plaintiffs fail to do so.

### C.      Plaintiffs' State Law Claims Fail as a Matter of Law.

Plaintiffs' five state law claims also still fail as a matter of law. They still fail to both state cognizable claims for relief under Florida law and satisfy the *Twombly/Iqbal* requirements.

### 1.      Quantum Meruit (Count One)

"Under Florida law, to satisfy the elements of quantum meruit, a plaintiff must show that the plaintiff provided, and the defendant assented to and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it." *White Holding Co., LLC v. Martin Marietta Materials, Inc*., 423 Fed. Appx. 943, 947 (11th Cir. 2011).

In situations involving an insurance agreement, where a third party conveys a benefit on an insured, and not an insurer, it is implausible to allege that a benefit has been conveyed on the insurer. *Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*, No. 13–21895–CIV, 2013 WL 3810617, at *3 (S.D. Fla. 2013) ("HPC can hardly be said to have conferred any benefit, even an attenuated one, upon the Plan's insurer by providing Plan beneficiaries with health care

services."); *Adventist Health Sys. / Sunbelt Inc. v. Med. Savings Ins. Co.*, No. 6:03-cv-1121-Orl-19KRS, 2004 WL 6225293, at *6 (M.D. Fla. Mar. 8, 2004)(similar).

Plaintiffs' quantum meruit claim further fails as a matter of law because the alleged "direct repair program agreements" are central to Plaintiffs' allegations. *See, e.g.*, Am. Compl. ¶¶ 68-69, 77, 79 & Ex. 4. It is settled Florida law that a cause of action based on quantum meruit cannot exist when there is a valid contract between the parties. *White Holding*, 423 Fed. Appx. at 947 ("The equitable relief of quantum meruit is founded upon the legal fiction of an implied contract, and cannot be maintained . . . when the rights of the parties are described in a written contract.") (internal quotation marks and citation omitted); *Five for Entm't S.A. v. Rodriguez*, No. 11–24142–CIV, 2013 WL 3975671, at *7 (S.D. Fla. July 31, 2013) ("Florida law is clear that quantum meruit damages cannot be awarded when an enforceable contract exists.").[12]

### 2.    Unjust Enrichment (Count Two)

Plaintiffs have not and cannot plausibly allege under *Twombly* that they have conferred a benefit on GEICO – a required element of an unjust enrichment claim under Florida law. *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*, N.A., 667 So.2d 876, 879 (Fla. 3d DCA 1996). This is because Plaintiffs service the insured's car. *Hialeah Physicians Care*, 2013 WL 3810617, at *3; *Adventist Health Sys. / Sunbelt Inc.*, 2004 WL 6225293, at *6.

Moreover, a claim for unjust enrichment, much like a claim of quantum meruit, fails when a plaintiff also alleges an express contract concerning the subject matter. "Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. Dist. App. 2008); *see also Allyn v. CNL Lifestyle Props., Inc.*, No. 6:13–cv–132–Orl–36GJK, 2013 WL 6439383, at *6 (M.D. Fla. Nov. 27, 2013) (same);

---

[12] GEICO denies that it had written direct repair program agreements with any of the Plaintiffs, and not a single Plaintiff specifically identifies any such agreement that it allegedly had with GEICO. *See, e.g.*, Am. Compl. at Ex. 4. Nevertheless, Plaintiffs attempt to base their claims upon the existence of these unidentified agreements.

*Ocean Commc'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. Dist. App. 2007) ("a plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists.") (citation omitted).

### 3.    Quasi-Estoppel (Count Three)

Quasi-estoppel is not a cognizable claim under Florida law.  The Supreme Court of Florida has defined quasi-estoppel as the principle that "a party cannot, either in the court of litigation or in dealings in pais, occupy inconsistent positions." *Hodkin v. Perry*, 88 So. 2d 139, 140 (Fla. 1956).  The similar doctrine of equitable estoppel is defined as:

> the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which perhaps have otherwise existed, either of property or of contract, or of remedy, as against another person, who has in good faith relied upon such conduct and has been led thereby to change his position for the worse . . .  The doctrine of estoppel is applicable in all cases where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury.

*Major League Baseball v. Morsani*, 790 So. 2d 1071, 1076-77 (Fla. 2001) (punctuation and citation omitted) ("Equitable estoppel is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position[.]").

Equitable estoppel, and by analogy, Plaintiffs' purported quasi-estoppel claim, "functions as a shield, not a sword[.]" *Id.*; *see also Am. Color Graphics, Inc. v. Brooks Pharmacy, Inc.*, 2006 WL 539543, *5 (M.D. Fla. Mar. 6, 2006) (internal citations omitted) ("In Florida, equitable estoppel is an affirmative defense, not a cause of action.  Accordingly, American cannot assert the doctrine of equitable estoppel as a claim for relief.").

And even if quasi-estoppel was a valid claim under Florida law, Plaintiffs have alleged no facts concerning positions GEICO took at one time and how GEICO has changed its position to the detriment of Plaintiffs.  *Hodkin*, 88 So. 2d at 140.  Nor have Plaintiffs alleged how they have in good faith relied on such conduct and been led to change their position for the worse.  *Id.*

### 4.     Tortious Interference with Business Relations (Count Four)

Plaintiffs do not even try to meet their *Twombly/Iqbal* burden with respect to their tortious interference claim against GEICO.  The elements of a tortious interference claim are: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference."  *Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. Dist. App. 2009) (internal citations omitted).  However, "[t]he cause of action [for tortious interference with business relations] cannot be established by proof that the defendant interfered with a relationship between the plaintiff and the public at large."  *Id.*  In *Sarkis v. Pafford Oil, Inc.*, 697 So. 2d 524, 526-27 (Fla. Dist. App. 1997), the court dismissed the claim because the complaint did not identify specific customers, but instead just referred to the public at large:

> The amended complaint does not identify the customers who were the subject of the alleged interference. As the supreme court said in *Ethan Allen Inc., v. Georgetown Manor Inc.*, 647 So.2d 812 (Fla. 1994), an action for tortious interference with a business relationship generally requires "a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Id.* at 815. The court added in *Ferguson Transp[.] Inc. v. [.] Am[.] Van Lines*, 687 So.2d 821 (Fla. 1996), that a claim of tortious interference with a business relationship requires proof that the plaintiff had a business relationship with "identifiable customers." *Id.* The cause of action cannot be established by proof that the defendant interfered with a relationship between the plaintiff and the public at large, yet that is precisely the basis of the claim asserted in this case. The plaintiffs alleged that the conduct in question resulted in a general loss of business, but even if that could be proven, it would not amount to a tortious interference with a business relationship as defined in *Ethan Allen* and *Ferguson*. Because the interference alleged here is not specific, this claim must fail.

*Id.* at 526-27.  Here, Plaintiffs do not identify any specific customer.   Instead, they allege that "Defendants have repeatedly steered and attempted to steer ***customers*** away from the Plaintiffs' respective businesses" and that Defendants "failed to verify facts ... before conveying the same to members of the ***public*** ...."  Am. Compl. ¶ 147 (emphasis added); *see also id.* ¶ 126 ("both are

conveyed to the public as problems with the shop"). Such allegations are insufficient to allege a claim for tortious interference with business relations. *Med. Sav. Ins. Co. v. HCA, Inc.*, No. 2:04CV156FTM-29DNF, 2005 WL 1528666, at *9 (M.D. Fla. June 24, 2005).[13]

And again, because Plaintiffs' base their claims on alleged agreements between them and the Defendants, they cannot assert a cognizable claim for tortious interference. *See Cox v. CSX Intermodal, Inc.*, 732 So.2d 1092, 1099 (Fla. Dist. App. 1999) ("Generally, a tortious interference claim 'exists only against persons who are not parties to the contractual relationship.'"); *Bortell v. White Mountains Ins. Grp., Ltd.*, 2 So. 3d 1041, 1049 (Fla. Dist. App. 2009) (same). Moreover, Plaintiffs have not identified a single existing relationship that GEICO allegedly wrongfully interfered with.

The Amended Complaint states that "the vast majority of Plaintiffs' business is generated by customers for whom the Defendants are responsible to pay repair costs." Am. Compl. ¶ 76. Indeed, the Amended Complaint makes clear that the work is performed by shops for the benefit of insureds, and that insurers have the obligation to pay for the service provided to their insureds:

> Each individual Plaintiff has done business at various times over the course of years with the Defendants' policyholders and claimants by providing to these policyholders and claimants motor vehicle collision repair service. Each Defendant is individually responsible for payment for those repairs for their respective policyholders and claimants.

Am. Compl. ¶ 66. Therefore, any alleged "interference" with any business relationship between any of the Plaintiffs and any (unidentified) insureds would be justified or privileged *Id.*; *see Gunder's Auto Ctr., v. State Farm Mut. Auto. Ins. Co.*, 422 F. Appx. 819, 822 (11th Cir. 2011) (insurance companies are not strangers to the relationship between auto-body shop and insured, and therefore insurer's acts are privileged and it cannot be held liable for tortious interference).

---

[13] Plaintiffs' allegations of "steering" also fail to give rise to a tortious interference with business relations claim for the same reason that they do not give rise to any antitrust claim. *See Metzler v. Bear Auto. Serv. Equip. Co.*, 19 F. Supp. 2d 1345, 1364 (S.D. Fla. 1998) (dismissing tortious interference with business relations claim that was "grounded on precisely the same 'anticompetitive' behavior alleged in the failed antitrust claim" and, thus, it could not "as a matter of law constitute tortious interference with a business relationship").

### 5.      Conversion (Count Five)

To state a claim for conversion, a plaintiff must show "(1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so." *IberiaBank v. Coconut 41*, LLC, No. 2:11–cv–321–FTM–29DNF, 2013 WL 6061883, at *19 (M.D. Fla. Nov. 18, 2013); *see also Deutsche Bank Nat'l Trust Co. v. Foxx*, No. 8:13–cv–115–T–35TBM, 2013 WL 5291128, at *9 (M.D. Fla. Sept. 19, 2013).

Plaintiffs have not identified any specific and identifiable money at issue.  Instead they generally allege that they have not been paid enough by the Defendants.  "The identification requirement ensures that a fund of money actually exists to pay a specific debt owed and the claimant is not merely transforming a contract dispute into a conversion claim."  *U.S. v. Mystic Equestrian LLC*, No. 11–81130–CIV, 2013 WL 616938, at *3 (S.D. Fla. Feb. 19, 2013);  *see also Belford Trucking*, 243 So.2d at 648 ("A mere obligation to pay money may not be enforced by a conversion action."); *see also Rosen v. Marlin*, 486 So.2d 623, 625 (Fla. Dist. App. 1986).

Moreover, because Plaintiffs base their claims on alleged agreements between them and Defendants, they cannot assert a cognizable claim for conversion.  *Zaki Kulaibee Establishment v. McFlicker*, 788 F. Supp. 2d 1363, 1379 (S.D. Fla. 2011) ("Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort."); *Belford Trucking Co. v. Zagar*, 243 So.2d 646, 648 (Fla. Dist. App. 1970) (similar).

### IV.      **CONCLUSION**

GEICO requests that Plaintiffs' Amended Complaint be dismissed for the reasons set forth above, together with such further relief as the Court deems proper.

Respectfully submitted,

*/s/ John P. Marino*
John P. Marino (FBN 814539), Trial Counsel
EMAIL:  jmarino@sgrlaw.com
Lindsey R. Trowell  (FNB 678783)
EMAIL:  ltrowell@sgrlaw.com
SMITH, GAMBRELL & RUSSELL, LLP
50 N. Laura Street, Suite 2600
Jacksonville, FL  32202
Telephone:   (904) 598-6100
Facsimile:    (904) 598-6300

and

Dan W. Goldfine *(admitted pro hac vice)*
Josh Grabel *(admitted pro hac vice)*
SNELL & WILMER, LLP
One Arizona Center
400 East Van Buren Street, Suite 1900
Phoenix, AZ 85004-2202
Telephone:   (602) 382-6000
Facsimile:    (602) 382-6070

*Attorneys for Defendant GEICO General Insurance Company*

## CERTIFICATE OF SERVICE

I certify that on July 10, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record and other participants in the Court's ECF filing system. I further certify that I will mail a true and correct copy of the foregoing document to any non-ECF participant as identified by the ECF notification system.

*/s/ John P. Marino*
Attorney