## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

| | |
|---|---|
| A & E AUTO BODY, INC., *et al.*, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * Case No. 6:14-CV-310-ORL-31TBS |
| | * |
| 21ST CENTURY CENTENNIAL | * |
| INSURANCE COMPANY, *et al.*, | * |
| | * |
| DEFENDANTS. | * |

**MOTION TO DISMISS AMENDED COMPLAINT
WITH INCORPORATED MEMORANDUM IN SUPPORT
BY DEFENDANTS HARTFORD ACCIDENT AND INDEMNITY COMPANY;
HARTFORD UNDERWRITERS INSURANCE COMPANY; 21ST CENTURY
CENTENNIAL INSURANCE COMPANY; 21ST CENTURY INDEMNITY INSURANCE
COMPANY; ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY;
ALLSTATE INSURANCE COMPANY; BRISTOL WEST INSURANCE COMPANY;
ENCOMPASS INDEMNITY COMPANY; ESURANCE PROPERTY AND CASUALTY
INSURANCE COMPANY; FOREMOST INSURANCE COMPANY GRAND RAPIDS,
MICHIGAN; LIBERTY MUTUAL INSURANCE COMPANY; PROGRESSIVE
AMERICAN INSURANCE COMPANY; PROGRESSIVE SELECT INSURANCE
COMPANY; SAFECO INSURANCE COMPANY OF AMERICA; SECURITY
NATIONAL INSURANCE COMPANY; SENTRY INSURANCE A MUTUAL COMPANY;
THE CINCINNATI INSURANCE COMPANY; THE TRAVELERS INDEMNITY
COMPANY; USAA CASUALTY INSURANCE COMPANY; AND UNITED SERVICES
AUTOMOBILE ASSOCIATION**

## TABLE OF CONTENTS

ARGUMENT ............................................................................................................... 3

I.    THE AMENDED COMPLAINT FAILS TO COMPLY WITH THE COURT'S ORDER AND FAILS TO COMPLY WITH RULE 8 ..................................... 3

II.    EACH COUNT OF THE AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF UNDER RULE 12(B)(6) ...................... 9

A.    Plaintiffs Fail to Allege Conspiracy or Boycott Claims in Violation of Federal Antitrust Law –  Sherman Act § 1 (Counts Six and Seven) ................................................................................................... 10

B.    Plaintiffs Fail to Allege Plausible State Law Claims Because They Do Not Allege Facts Supporting Essential Elements of Those Claims ................................................................................................... 15

1.    Quantum Meruit (Count One) ............................................. 16
2.    Unjust Enrichment  (Count Two) ........................................ 18
3.    Quasi-Estoppel  (Count Three) ........................................... 19
4.    Tortious Interference with Business Relations  (Count Four) . ........................................................................................... 20
5.    Conversion  (Count Five) ..................................................... 22

CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

316, Inc. v. Maryland Cas. Co.,
  625 F.Supp.2d 1179 (N.D. Fla. 2008) ....................................................... 4

Absolute Marine Towing & Salvage, Inc. v. S/V Iniki,
  No. 6:09-CV-1712-ORL-31, 2010 WL 2652466 (M.D. Fla. June 22,
  2010).......................................................................................................... 18, 19

Allyn v. CNL Lifestyle Props., Inc.,
  No. 6:13–cv–132–Orl–36GJK, 2013 WL 6439383 (M.D. Fla. Nov. 27,
  2013).......................................................................................................... 18

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)......................................................................... 4, 5, 8

Atl. Richfield Co. v. USA Petroleum Co.,
  495 U.S. 328 (1990)......................................................................... 12

Atuahene v. City of Hartford,
  10 F. App'x 33 (2d Cir. 2001) ........................................................... 6, 7, 8

Belford Trucking Co. v. Zagar,
  243 So.2d 646 (Fla. Dist. Ct. App. 1970) ........................................ 23, 24

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007).........................................................................*passim*

Bonner Farms, Ltd. v. Fritz,
  355 F. App'x 10 (6th Cir. 2009) .......................................................... 20

Bortell v. White Mountains Ins. Group, Ltd.,
  2 So. 3d 1041 (Fla. Dist. Ct. App. 2009) ............................................ 22

Brigliadora v. Wells Fargo Bank, N.A.,
  No. 8:10–CV–01944–EAK–TGW, 2011 WL 2217485 (M.D. Fla. June
  07, 2011) aff'd 447 F. App'x 941 (11th Cir. 2011) ...................................... 9

Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,
  429 U.S. 477 (1977)......................................................................... 12

Carbajal v. City and County of Denver,
  No. 11–cv–02826–BNB, 2012 WL 592871 (D.Colo. Feb. 23, 2012)
  aff'd 502 F. App'x 715 (10th Cir. 2012) .................................................... 7

Cox v. CSX Intermodal, Inc.,
    732 So.2d 1092 (Fla. Dist. Ct. App. 1999) ................................................................ 21

Deutsche Bank Nat. Trust Co. v. Foxx,
    No. 8:13–cv–115–T–35TBM, 2013 WL 5291128 (M.D. Fla. Sept. 19,
    2013) ..................................................................................................................... 23

Duty Free Americas, Inc., v. The Estée Lauder Cos.,
    946 F.Supp.2d 1321 (S.D. Fla. 2013) ........................................................ 5, 11, 14

In re Elevator Antitrust Litig.,
    502 F.3d 47 (2d Cir. 2007) ...................................................................................... 13

Five for Entm't S.A. v. Rodriguez,
    No. 11–24142–CIV, 2013 WL 3975671 (S.D. Fla. July 31, 2013) ........................... 16

In re Florida Cement and Concrete Antitrust Litig.,
    746 F.Supp.2d 1291 (S.D. Fla. 2010) ...................................................................... 15

Frantz v. Walled,
    513 F. App'x 815 (11th Cir. 2013) ............................................................................. 9

Gulf States Reorganization Grp., Inc. v. Nucor Corp.,
    822 F. Supp. 2d 1201 (N.D. Ala. 2011) aff'd 721 F.3d 1281 (11th Cir.
    2013) ..................................................................................................................... 11

Gunder's Auto Center v. State Farm Mut. Auto. Ins. Co.,
    422 F. App'x 819 (11th Cir. 2011) ........................................................................... 22

Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.,
    No. 13–21895–CIV, 2013 WL 3810617 (S.D. Fla. 2013) .................................. 18, 19

Hodkin v. Perry,
    88 So.2d 139 (Fla. 1956) ........................................................................................ 20

IberiaBank v. Coconut 41, LLC,
    No. 2:11–cv–321–FtM–29DNF, 2013 WL 6061883 (M.D. Fla. Nov. 18,
    2013) ..................................................................................................................... 23

Jacobs v. Tempur-Pedic Int'l, Inc.,
    626 F.3d 1327 (11th Cir. 2010) ............................................................................... 13

Kee v. Nat'l Reserve Life Ins. Co.,
    918 F.2d 1538 (11th Cir. 1990) ............................................................................... 24

Kendall v. Visa U.S.A., Inc.,
    518 F.3d 1042 (9th Cir. 2008) ........................................................................... 13, 15

Kivisto v. Miller, Canfield, Paddock & Stone, PLC,
    413 F. App'x 136 (11th Cir. 2011) ......................................................... 4, 5

Levine v. Cent. Fla. Med. Affiliates, Inc.,
    72 F.3d 1538 (11th Cir. 1996) ................................................................. 11

Loren Data Corp. v. GXS, Inc.,
    501 F. App'x 275 (4th Cir. 2012) ............................................................. 14

Mayor & City Council of Balt., Md. v. Citigroup, Inc.,
    709 F.3d 129 (2d Cir. 2013) .................................................................... 14

Med. Sav. Ins. Co. v. HCA, Inc.,
    No. 2:04CV156FTM-29DNF, 2005 WL 1528666 (M.D. Fla. June 24,
    2005) ................................................................................................. 20, 21

Metzler v. Bear Auto. Serv. Equip. Co.,
    19 F. Supp. 2d 1345 (S.D. Fla. 1998) ...................................................... 21

Peoples Nat. Bank of Commerce v. First Union Nat. Bank of Fla., N.A.,
    667 So.2d 876 (Fla. Dist. App. Ct. 1996) ................................................ 19

Petrano v. Old Republic Nat. Title Ins. Co.,
    No. 1:12cv86–SPM/GRJ, 2013 WL 1325030 (N.D. Fla. Mar. 27, 2013) ................... 9

Pierson v. Orlando Regional Healthcare Systems, Inc.,
    619 F. Supp. 2d 1260 (M.D. Fla. 2009) ............................................. 6, 7, 8

Pro Image Installers, Inc. v. Dillon,
    No. 3:08cv273/MCR/MD, 2009 WL 112953 (N.D. Fla. Jan. 15, 2009) ................... 7

Quality Auto Body, Inc. v. Allstate Ins. Co.,
    660 F.2d 1195 (7th Cir. 1981) ................................................................. 12

Robbins v. Oklahoma,
    519 F.3d 1242 (10th Cir. 2008) ................................................................. 7

Rosen v. Marlin,
    486 So.2d 623 (Fla. Dist. App. Ct.1986) ................................................. 24

Sarkis v. Pafford Oil, Inc.,
    697 So. 2d 524 (Fla. Dist. Ct. App. 1997) .......................................... 20, 21

Stinnet v. Colo Interstate Gas Co.,
    227 F.3d 247 (5th Cir. 2000) ................................................................... 20

Sunbelt Inc. v. Med. Savings Ins. Co.,
   No. 6:03-cv-1121-Orl-19KRS, 2004 WL 6225293 (M.D. Fla. Mar. 8,
   2004).............................................................................................................. 18, 19

U.S. v. Mystic Equestrian LLC,
   No. 11–81130–CIV, 2013 WL 616938 (S.D. Fla. Feb. 19, 2013)............................ 24

White Holding Co., LLC v. Martin Marietta Materials, Inc.,
   423 F. App'x 943 (11th Cir. 2011) ....................................................................... 16, 17

Yturria v. Kerr-McGee Oil & Gas Onshore, LLC,
   291 F. App'x 626 (5th Cir. 2008) .............................................................................. 20

Zaki Kulaibee Establishment v. McFlicker,
   788 F.Supp.2d 1363 (S.D. Fla. 2011) ............................................................... 23, 24

**Statutes**

15 U.S.C. § 1 ............................................................................................. 10, 11, 12, 13

**Other Authorities**

Fed. R. Civ. P. 8 ................................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1, 9

**MOTION TO DISMISS**

Defendants Hartford Accident and Indemnity Company; Hartford Underwriters Insurance Company; 21st Century Centennial Insurance Company; 21st Century Indemnity Insurance Company; Allstate Fire And Casualty Insurance Company; Allstate Insurance Company; Bristol West Insurance Company; Encompass Indemnity Company; Esurance Property and Casualty Company; Foremost Insurance Company Grand Rapids, Michigan; Liberty Mutual Insurance Company; Progressive American Insurance Company; Progressive Select Insurance Company; Safeco Insurance Company of America; Security National Insurance Company; Sentry Insurance A Mutual Company; The Cincinnati Insurance Company; The Travelers Indemnity Company; USAA Casualty Insurance Company; and United Services Automobile Association (collectively, "Defendants"), bring this motion to dismiss the Amended Complaint. Other than Defendant State Farm Mutual Automobile Insurance Company, the Amended Complaint contains no factual allegations regarding any one of roughly forty Defendants. The defects in the original Complaint were brought to Plaintiffs' attention by previous motions and, more importantly, by an Order from this Court dated June 11, 2014. Nevertheless, the Amended Complaint fails to comply with the Court's Order; it fails to satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure; and it fails to allege a plausible cause of action under Rule 12(b)(6) for any of the Seven Counts of the Amended Complaint.

A comparison of the Original and Amended Complaints makes clear that (other than correcting the Defendants' states of incorporation and changing the basis of jurisdiction from diversity to federal question), Plaintiffs' cosmetic changes to their pleading do nothing to alter the "most serious" deficiencies identified in this Court's

1

Order or even address "the host of problems" that infected the original Complaint and were identified in Defendants' previous motions.  In a meaningless and almost cynical change, Plaintiffs responded to the Court's Order by omitting the paragraphs incorporating all prior allegations in each of the seven counts; but Plaintiffs still provided all of their factual allegations in the first 132 omnibus paragraphs, without tying any allegations to any specific Defendant or specifying which allegations apply to which cause of action.  That cosmetic adjustment does nothing to change the "shotgun" nature of the pleading.  Likewise, the Amended Complaint purports to cure the pleading deficiency of lumping together all Defendants as "Defendants," by dropping use of the defined term "Defendants" and instead repeatedly listing each and every Defendant by name.  That pointless modification may add to the length of plaintiffs' already prolix complaint, but it does nothing to inform each Defendant of who is accused of doing what to whom.  Thus, Plaintiffs' revisions – individually and collectively – fall far short of remedying the problems with their original pleading.

In sum, Plaintiffs were given a full and fair opportunity to cure these fundamental and fatal pleading deficiencies, and they failed to do so.  Ultimately, these failures reflect one fundamental problem – Plaintiffs do not have the facts necessary to support any of the causes of action they have sought to allege.  The Amended Complaint is legally infirm, and Plaintiffs' inability to comply fully with the Court's June 11 Order or to cure these most basic pleading deficiencies shows that any further amendment would be futile and unwarranted.  Accordingly, the Defendants respectfully request that the Amended Complaint be dismissed with prejudice now.

## MEMORANDUM IN SUPPORT

## ARGUMENT

## I.   THE AMENDED COMPLAINT FAILS TO COMPLY WITH THE COURT'S ORDER AND FAILS TO COMPLY WITH RULE 8

The Amended Complaint (Doc. 167) should be dismissed with prejudice.  Not only does this Amended Complaint fail to remedy the pleading defects identified in Defendants' Motion to Dismiss the initial Complaint (See Docs. 1 and 24), the Amended Complaint fails to remedy the "most serious" problems specifically identified in the Court's Order dated June 11, 2014 which dismissed the Complaint (Doc. 110) ("June 11 Order").[1]

The initial Complaint (Doc. 1) contained 166 paragraphs.  The Amended Complaint has 169 almost identical paragraphs.[2]  The June 11 Order disapproved of the "shotgun" practice of setting forth omnibus factual allegations in the first 121 paragraphs of the Complaint, with no specific facts supporting each of the following counts. Ignoring the Court's Order, Plaintiffs repeated the proscribed practice.  The Amended Complaint provides 132 omnibus allegations before introducing the first count.  The subsequent paragraphs for each Count again fail to provide the specific facts required by Rule 8 of the Federal Rules of Civil Procedure – and by this Court's Order – to support each Count.

For example, Count One (Quantum Meruit) of the Amended Complaint contains only four (4) paragraphs numbered 134-37 .  None of those paragraphs contains

---

[1] The Court Ordered any Amended Complaint to be filed by June 27, 2014: "Shall the Plaintiffs choose to re-plead, they must do so on or before June 27, 2014."  June 11 Order at 2.  The Amended Complaint was not filed until June 28, 2014; therefore, it is untimely. That transgression was the least of the problems with the Amended Complaint.  The Amended Complaint does not simply fail to obey the precise letter of the Court's Order; the Amended Complaint flouts that Order.

[2] While the numbering in the Amended Complaint reaches 170, Paragraph 75 is skipped.

specific allegations of fact – much less specific allegations informing each Defendant of what it has done.  Paragraphs 134 and 137 are not allegations of fact at all; they are conclusions of law and are to be disregarded under <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007).  So too, paragraphs 135 and 136 are nothing more than vague conclusory statements, not specific allegations of fact.  Therefore, they too should be disregarded under <u>Twombly</u>.  In short, Count One provides no factual allegations to support a claim.

As the Supreme Court announced in <u>Twombly</u>, "a plaintiff's obligation to provide 'the grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do ...."  <u>Id</u>. at 545.  If the Supreme Court's ruling in <u>Twombly</u> left any doubt as to the requirements for adequately pleading a cause of action under Rule 8, the Court's decision in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) firmly resolved any such doubts: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Iqbal</u> at 678, <u>citing</u> <u>Twombly;</u> <u>see also</u> <u>316, Inc. v. Maryland Cas. Co</u>., 625 F.Supp.2d 1179, 1184 (N.D. Fla. 2008) (finding allegations of general business practices "impermissibly formulaic and conclusory").

To determine the adequacy of a complaint , the Eleventh Circuit explained in <u>Kivisto v. Miller, Canfield, Paddock & Stone, PLC</u>, 413 F. App'x 136 (11th Cir. 2011) that, the District Court should first disregard all conclusory allegations and then test the adequacy of the complaint based solely on the allegations of fact:

> In applying the Supreme Court's directives in <u>Twombly</u> and <u>Iqbal</u> to a motion to dismiss, the Eleventh Circuit has instructed that a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2)

> where there are well-pleaded factual allegations, assume
> their veracity and then determine whether they plausibly give
> rise to an entitlement to relief. Further, courts may infer from
> the factual allegations in the complaint obvious alternative
> explanations, which suggest lawful conduct rather than the
> unlawful conduct the plaintiff would ask the court to infer.

Id. at 138 (brackets, internal citations, and quotation marks omitted); see also Duty Free

Americas, Inc., v. The Estée Lauder Cos., 946 F.Supp.2d 1321, 1328 (S.D. Fla. 2013).

The Amended Complaint's conclusory allegations with respect to each of the seven

counts fails to provide the requisite specificity required by Iqbal and Twombly.

Particularly telling is Plaintiffs' refusal to follow the Court's very specific

instructions as to the required amendment of Count Two (Unjust Enrichment).  In the

June 11 Order, the Court expressly informed the Plaintiffs of the problem caused by

group pleadings and expressly told Plaintiffs what was required:

> While there may be situations to which such collective
> descriptions are sufficient, at least some of claims asserted
> here require individualized allegations.  For example, if
> Plaintiffs' counsel were able to establish that Defendant A
> was unjustly enriched by shortchanging Plaintiff B, it would
> not entitle any other plaintiff to a judgment against Defendant
> A (or any other defendant).

June 11 Order at 2 (Doc. 110).  Plaintiffs ignored the Court's instructions.  No specific

Plaintiff is identified as having conferred any benefit upon any specific Defendant.

Instead of identifying "Defendant A", the Amended Complaint simply lists every

Defendant.  Instead of identifying "Plaintiff B", the Amended Complaint simply uses the

general term "Plaintiffs."  The only changes in the Amended Complaint to the Unjust

Enrichment Count are: (1) removal of a portion of the legal conclusion in paragraph 140

that said "Statute requires the Defendant pay for the proper and fair repair of those

5

vehicles"; and (2) a listing of every single defendant in the case in paragraphs 140 and

141.  Plaintiffs fail to provide the necessary allegations of fact because they do not exist.

This problem of vague group pleading is not confined to Counts One and Two.

To the contrary, this judicially-identified defect continues throughout the entire Amended

Complaint.  In a wholly ineffectual response to the June 11 Order, Plaintiffs simply

changed their pleading from allegations against "Defendants" to now listing the names

of all Defendants.  See, e.g., Amended Compl. ¶¶ 66, 67 (Doc. 167).  In all, Plaintiffs

repeat this practice forty-nine (49) times.  Obviously, despite doubling the number of

pages in the operative Complaint, that does absolutely nothing to inform each

Defendant of what specifically it did, or in what way a specific Defendant has

supposedly harmed which of the twenty-two Plaintiffs.  And it is clearly not what the

Court had in mind when it ordered that the pleading required "individualized allegations."

In Atuahene v. City of Hartford, 10 F. App'x 33 (2d Cir. 2001) – a case that has

been favorably cited by this Court in Pierson v. Orlando Regional Healthcare Systems,

Inc., 619 F. Supp. 2d 1260, 1273 (M.D. Fla. 2009) – the Court of Appeals affirmed a

dismissal with prejudice of an amended complaint on precisely this point:

> In the second complaint, Atuahene replaced the allegations
> against "the defendants" with the names of all of the
> defendants, still failing to identify which defendants were
> alleged to be responsible for which alleged violations.
>
> * * *
>
> By lumping all the defendants together in each claim and
> providing no factual basis to distinguish their conduct,
> Atuahene's complaint failed to satisfy this minimum
> standard, even after the district court graciously accorded
> him several opportunities to correct its manifest flaws.

<u>Atuahene</u>, 10 F. App'x at 34.  Other courts have come to the same conclusion, finding

Rule 8 not satisfied where plaintiffs use either the general term "Defendants," or simply

list all defendants.  <u>See, e.g.</u>, <u>Robbins v. Oklahoma</u>, 519 F.3d 1242, 1250 (10th Cir.

2008) ("Given the complaint's use of either the collective term "Defendants" or a list of

the defendants named individually but with no distinction as to what acts are attributable

to whom, it is impossible for any of these individuals to ascertain what particular

unconstitutional acts they are alleged to have committed."); <u>Carbajal v. City and County

of Denver</u>, No. 11–cv–02826–BNB, 2012 WL 592871, at *2 (D.Colo. Feb. 23, 2012)

<u>aff'd</u> 502 F. App'x 715 (10th Cir. 2012) ("Even when Plaintiffs' factual allegations are

relevant, they routinely assert those factual allegations generally against various

combinations of Defendants without differentiating among the Defendants and providing

specific allegations that demonstrate how each named Defendant allegedly violated

their rights."); <u>Pro Image Installers, Inc. v. Dillon</u>, No. 3:08cv273/MCR/MD, 2009 WL

112953, at *2 (N.D. Fla. Jan. 15, 2009) (finding Rule 8 violated because "the tort claims

in Counts IV, V, and VI are pleaded against all or almost all the defendants, but very

little in these counts distinguishes the eight defendants from each other except for

references to Dillon individually.").

    In <u>Pierson</u>, this Court held that a complaint cannot make undifferentiated

allegations against multiple defendants without specifying which defendant allegedly

made which statement or committed which act.  Generalized group pleadings against all

"Defendants" is grounds for dismissal:

> Because of Plaintiff's extensive reliance on the term "Peer
> Review Defendants" without differentiation among individual
> Defendants, some of these Defendants are mentioned by

name only two or three times in the entire Amended
Complaint.

\* \* \*

Everywhere else in the Amended Complaint, Plaintiff relies
on the label "Peer Review Defendants" in support of his
claims against Appleblatt.

\* \* \*

"Although [Rule 8] does not demand that a complaint be a
model of clarity or exhaustively present the facts alleged, it
requires, at a minimum, that a complaint give each
defendant 'fair notice of what the plaintiff's claim is and the
ground upon which it rests.' " Atuahene v. City of Hartford,
10 Fed.Appx. 33, 34 (2d Cir.2001) (quoting Ferro v. Ry.
Express Agency, 296 F.2d 847, 851 (2d Cir.1961)). In
Atuahene, the court held that "[b]y lumping all the
defendants together in each claim and providing no factual
basis to distinguish their conduct, [the plaintiff's] complaint
failed to satisfy this minimum standard." Id. The Amended
Complaint in the instant case suffers from these same flaws.
The grouping of Defendants as "Peer Review Defendants"
does not afford these Defendants fair notice of the basis for
the claims against them….

\* \* \*

As to most of the Peer Review Defendants, no role is
described at all beyond the bare labeling as a "Peer Review
Defendant." Because of the grouping together of these
Defendants without differentiation or some sort of description
of actions that could provide "fair notice" of the basis for the
claims against them, the claims against the "Peer Review
Defendants" are not sufficiently pled.

Pierson, 619 F. Supp. 2d at 1273-74. As with the Peer Review Defendants in Pierson

and the laundry list of defendants in Atuahene, the entire Amended Complaint is

improperly pled as to the Defendants and should be dismissed.

Cases such as Twombly, Iqbal, Atuahene, and Pierson were presented to

Plaintiffs in Defendants' first Motion to Dismiss (Doc. 24), but Plaintiffs have failed to

provide specific allegations of necessary facts.  Beyond the briefs, the Court specifically

informed Plaintiffs of some of the "most serious" pleading defects in its June 11 Order.

Nevertheless, and despite ample notice, Plaintiffs have filed a pleading that fails to

correct these fundamental defects.  Accordingly, dismissal with prejudice is warranted.

See Frantz v. Walled, 513 F. App'x 815, 821 (11th Cir. 2013) (affirming dismissal with

prejudice of a first amended complaint due to failure to comply with Rule 8); Petrano v.

Old Republic Nat. Title Ins. Co., No. 1:12cv86–SPM/GRJ, 2013 WL 1325030, at *2-3

(N.D. Fla. Mar. 27, 2013) (dismissing first amended complaint with prejudice because

"[t]he amended complaint . . . did not comply with the court's directives"); see also

Brigliadora v. Wells Fargo Bank, N.A., No. 8:10–CV–01944–EAK–TGW, 2011 WL

2217485, at *5 (M.D. Fla. June 07, 2011) (dismissing first amended complaint with

prejudice for failure to state a claim under Rule 12(b)(6)) aff'd 447 F. App'x 941 (11th

Cir. 2011).[3]

## II.   EACH COUNT OF THE AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF UNDER RULE 12(B)(6)

The Amended Complaint also continues to suffer from a "host of problems"

beyond Fed. R. Civ. P. 8 and should be dismissed because each of the seven Counts is

inadequately pled and fails to state a plausible claim for relief under Fed. R. Civ. P.

12(b)(6).[4]  June 11 Order at 1.  The pleading defects discussed above (supra at p. 3-8)

---

[3] The only responsive change Plaintiffs made was to correct the states of citizenship of the various Defendants.  The initial Complaint identified every Defendant as a Florida corporation – and then purported to rest jurisdiction on grounds of diversity.  The Amended Complaint now rests on federal question jurisdiction.  Amended Compl. ¶ 63 (Doc. 167).  The initial allegation of Florida incorporation reveals that not even the most perfunctory investigation occurred before the pleading was filed. Compounding that failure, Plaintiffs actually served that Complaint after it had been dismissed by the Court.

[4] As Plaintiffs have made only minimal additions to the Amended Complaint, none of which address the substantive legal arguments regarding the individual causes of action made in the original Joint Motion to Dismiss (see Motion to Dismiss p. 5-17) (Doc. 24), the arguments on the following pages are substantively the same as made previously.

doom each of the seven causes of action without any further analysis.  Nevertheless, each of the specific Counts will be addressed separately as to additional pleading defects.  The federal antitrust claims, which require the allegation of specific facts showing an agreement, will be addressed below in Section II.A.  The state tort claims will be addressed in Section II.B.

Plaintiffs' failures to allege necessary facts for the federal antitrust claims and the state tort claims are more than simply careless errors of pleading.  The inadequacies were expressly identified in Defendants' first Motion to Dismiss (Doc. 24).  Plaintiffs have failed to allege those necessary facts (such as facts showing the existence of an anticompetitive agreement among defendants) because those facts do not exist.  Plaintiffs cannot allege necessary facts for any one of the seven Counts; therefore, the Amended Complaint should be dismissed with prejudice.

### A.    Plaintiffs Fail to Allege Conspiracy or Boycott Claims in Violation of Federal Antitrust Law –  Sherman Act § 1 (Counts Six and Seven)

As the Supreme Court explained in Twombly, the requirement for alleging specific facts to support legal conclusions is particularly important in an antitrust case which will, almost by definition, require significant discovery and expense:

> Thus, it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive.
>
> ***
>
> [T]he threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings. Probably, then, it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery ....

Twombly, 550 U.S. at 558, 559 (citations omitted); see also id. at 558 ("As we indicated over 20 years ago . . . 'a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.'") (quoting Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 528 n.17 (1983)).. Here, the Amended Complaint includes two antitrust causes of action: price-fixing (Count Six) and group boycott (Count Seven). Both are pled under 15 U.S.C. § 1, which addresses contracts, combinations or conspiracies in restraint of trade. See Amended Compl. ¶ 153 (Doc. 167).

To state a claim under Section 1, a plaintiff must allege: (1) an agreement between two or more parties (2) that unreasonably restrains trade. Levine v. Cent. Fla. Med. Affiliates, Inc., 72 F.3d 1538, 1545 (11th Cir. 1996); see also Gulf States Reorganization Grp., Inc. v. Nucor Corp., 822 F. Supp. 2d 1201, 1224 (N.D. Ala. 2011) (requiring that plaintiffs allege a "conscious commitment to an unlawful objective") aff'd 721 F.3d 1281 (11th Cir. 2013); Duty Free Americas, 946 F. Supp. 2d at 1328-29. ("Both § 1 and § 2 conspiracy claims 'require the same threshold showing – the existence of an agreement to restrain trade.'") (quoting Todorov v. DCH Healthcare Authority, 921 F.2d 1438, 1460, n. 35 (11th Cir.1991)).[5] But as Twombly teaches, the existence of that agreement must be pled with facts – not mere legal conclusions.

---

[5] The Supreme Court has interpreted Section 4 of the Clayton Act, which authorizes private antitrust lawsuits like this one, to further require a plaintiff to allege "antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). "[T]he antitrust injury requirement . . . ensures that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place, and it prevents losses that stem from competition from supporting suits by private plaintiffs for either damages or equitable relief." Atl. Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 342 (1990); see also Quality Auto Body, Inc. v. Allstate Ins. Co., 660 F.2d 1195, 1204, 1205 (7th Cir. 1981) ("Other courts that have analyzed the antitrust implications of the damage claim procedures established by automobile insurance companies have similarly found that the insurer's refusal to pay more than the prevailing competitive rate is not illegal. . . . [a] principal purpose of the antitrust laws is to preserve and foster competition in the market place. Appellant [body shop's] basic

Broadly pled, the Amended Complaint alleges:  "The Defendants and co-conspirators have engaged in combination and conspiracy in unreasonable restraint of trade and commerce in the automobile damage repair industry."  See Amended Compl. ¶ 156 (Doc. 167).  But these allegations of some amorphous industry-wide, multi-year, conspiracy spanning thousands (if not millions) of different auto repair transactions among  numerous different insurance companies are nothing more than vague legal conclusions of an agreement.  Listing the names of the Defendants does nothing to put flesh on those bare bones.

As the Supreme Court has made clear, in evaluating claims under Section 1 of the Sherman Act, "'[t]he crucial question' is whether the challenged anticompetitive conduct 'stem[s] from independent decision or from an agreement, tacit or express.'" Twombly, 550 U.S. at 553 (quoting Theatre Enters. v. Paramount Film Distributing Corp., 346 U.S. 537, 540 (1953)).  Far from offering specific facts, the Amended Complaint alleges a "continuing agreement" (Amended Compl. ¶ 157 (Doc. 167)) without any statement of where, when, or how each Defendant supposedly entered into this "continuing agreement."  Without any such specifics, the Amended Complaint alleges that there were "explicit statements" "by Defendants," but never says who said what to whom or when.  As the Court stated in Twombly, "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." Id. at 557; see also Jacobs v. Tempur-Pedic Int'l, Inc., 626 F.3d 1327, 1340 (11th Cir. 2010) ("bare legal conclusion" insufficient);  Kendall v. Visa U.S.A., Inc., 518 F.3d 1042,

---

thrust that insurance companies must write estimates of repair costs so as to be within the prices sought by high-priced non-competitive shops clearly runs counter to these antitrust principles.") (internal quotation marks and citation omitted.).  The Amended Complaint here fails to allege antitrust injury, as it focuses only on the purported harm to plaintiffs from their alleged inability to charge higher prices, rather than alleging any harm to actual consumers.

1048 (9th Cir. 2008) (finding no agreement where "the Complaint does not answer the basic questions: who, did what, to whom (or with whom), where and when"); In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (holding insufficient "averments of agreements made at some unidentified place and time" without further support).

Nor can the Amended Complaint be saved by throwing in a conclusory allegation of "parallel actions, and/or explicit agreement…." Amended Compl. ¶ 154 (Doc. 167). Even if specific facts had been alleged – and they have not – parallel behavior alone is not a substitute for an agreement:  "Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action."  Twombly, 550 U.S. at 557.

The Amended Complaint offers no "plus factors" concerning parallel behavior that would suggest that any Defendant is doing anything more than making its own business decisions.  As the Court explained in Twombly, parallel conduct is not enough to suggest an anti-competitive agreement or purpose.  A plaintiff must plead specific facts which plausibly suggest that parallel action is more likely the manifestation of some anticompetitive agreement than simply the rational business decision of each competitor independently:

> The inadequacy of showing parallel conduct or interdependence, without more, mirrors the ambiguity of the behavior: consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market.

***

> Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.
>
> &ast;&ast;&ast;
>
> An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of "entitle[ment] to relief."

Twombly, 550 U.S. at 555, 556, 557; see also Duty Free Americas, 946 F.Supp.2d at 1329; Mayor & City Council of Balt., Md. v. Citigroup, Inc., 709 F.3d 129, 137-38 (2d Cir. 2013); Loren Data Corp. v. GXS, Inc., 501 F. App'x 275, 281 (4th Cir. 2012).

Here, it would be logical for each insurance company as a buyer of services not to want to pay more than others were paying for those same services.  Indeed, the Amended Complaint, in its defiantly imprecise, omnibus allegations, has alleged that "Defendants" have acted "independently and in concert," and have acted "selectively" "when doing so is to their respective financial advantage."  Amended Compl. ¶¶ 103, 109 (Doc. 167).  There are no facts alleged showing that any specific Defendant took a specific action that would suggest an agreement as opposed to independent self-interest absent any agreement, tacit or otherwise.

In rejecting the "parallel action" allegations of the complaint in Twombly, the Court could have been describing the facts alleged in the Complaint in the case at bar:

> We think that nothing contained in the complaint invests either the action or inaction alleged with a plausible suggestion of  conspiracy.
>
> &ast;&ast;&ast;
>
> nothing in the complaint intimates that the resistance to the upstarts was anything more than the natural, unilateral reaction of each [defendant]

***

> there is no reason to infer that the companies had agreed
> among themselves to do what was only natural anyway; so
> natural, in fact, that if alleging parallel decisions to resist
> competition were enough to imply an antitrust conspiracy,
> pleading a § 1 violation against almost any group of
> competing businesses would be a sure thing.

Twombly at 566; see also Kendall, 518 F.3d at 1048 (affirming dismissal of complaint because "[a]ppellants failed to plead any evidentiary facts beyond parallel conduct to prove their allegation of a conspiracy."); In re Florida Cement and Concrete Antitrust Litig., 746 F.Supp.2d 1291, 1310 (S.D. Fla. 2010) ("Because there is an obvious lawful alternative explanation for Defendants' coordinated price increases, no unlawful conspiracy to fix prices may be plausibly inferred from these allegations of interdependent parallel conduct.").  In the case at bar, it is more plausible that each insurance company, as a buyer of services, would seek the lowest price possible for goods or services.  That is more consistent with independent business decisions than any anti-competitive conspiracy.  Plaintiffs simply do not have the facts to support any claim of "conspiracy" or "agreement."  Therefore, the antitrust claims should be dismissed with prejudice.

**B.      Plaintiffs Fail to Allege Plausible State Law Claims Because They Do Not Allege Facts Supporting Essential Elements of Those Claims**

In addition to the two antitrust claims discussed above, the Amended Complaint sets forth generalized legal conclusions as to five other causes of action: Quantum Meruit (Count One); Unjust Enrichment (Count Two); Quasi-Estoppel (Count Three); Tortious Interference with Business Relations (Count Four); and Conversion (Count Five).  Beyond the same failure to allege specific facts for any of these claims, the legal theory for each claim is insupportable.

### 1.   Quantum Meruit (Count One)

Among the omnibus allegations not related to any specific Count, the Amended Complaint alleges that the Defendants enter into "direct repair program agreements" ("DRPs") with the individual Plaintiffs, and that those agreements contain "certain concessions of price, priority and similar matters" in exchange for the Plaintiffs being listed as preferred providers.  Amended Compl. ¶¶ 69-70 (Doc. 167).  Plaintiffs further allege that they have "done business … over the course of years with Defendants' policyholders and claimants by providing to these policyholders and claimants collision repair services." Id. ¶ 66.  Plaintiffs cannot plausibly contend that those services were provided to those policyholders and claimants "for years" without any underlying contract that covered the subject matter of the repair work.  And it is settled Florida law that a cause of action based on quantum meruit cannot exist when there is a valid contract.  White Holding Co., LLC v. Martin Marietta Materials, Inc., 423 F. App'x 943, 947 (11th Cir. 2011) ("The equitable relief of quantum meruit is founded upon the legal fiction of an implied contract, and cannot be maintained . . . when the rights of the parties are described in a written contract.") (internal quotation marks and citation omitted); Five for Entm't S.A. v. Rodriguez, No. 11–24142–CIV, 2013 WL 3975671, at *7 (S.D. Fla. July 31, 2013) ("Florida law is clear that quantum meruit damages cannot be awarded when an enforceable contract exists.").  The cause of action for quantum meruit must therefore be dismissed on this ground.

Further, even if it were assumed arguendo that there were no agreements between any shops and any carriers – and there are – the elements of a quantum meruit claim under Florida law are not properly alleged in the Complaint.  "Under Florida law, to satisfy the elements of quantum meruit, a plaintiff must show that the plaintiff

16

provided, and the defendant assented to and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it."  White Holding, 423 F. App'x at 947.  In the Amended Complaint, Plaintiffs do not identify an uncompensated benefit that any specific Plaintiff conferred upon any specific Defendant.  There are no allegations that Plaintiffs undertook unanticipated labor or performed work for which Defendants had not contracted.  The Amended Complaint alleges that all Defendants entered into DRP contracts.  Amended Compl. ¶ 68 (Doc. 167).[6]  The Amended Complaint does not allege that any specific body shop performed work for any specific Defendant outside of a contractual relationship.  To the contrary, the omnibus paragraphs make it clear that contract terms, such as price, were discussed in advance of performing any work, and that Plaintiffs repeatedly agreed, however reluctantly, to perform work pursuant to those terms.  Plaintiffs agreed to rates of payment in their contracts, and Defendants paid that rate for work all parties understood to be included in the contracts.

Moreover, in situations where a third-party conveys a benefit on an insured, and not an insurer, there is no benefit that has been conveyed on the insurer.  Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co., No. 13–21895–CIV, 2013 WL 3810617, at *3 (S.D. Fla. 2013) ("HPC can hardly be said to have conferred any benefit,

---

[6]  The problem of Plaintiffs' vague group pleadings is evident in the allegations about DRP shop agreements.  See Amended Compl., Ex. 4 (Doc. 167-4).  For example, Stewart Auto Repair, Inc. alleges that it had a DRP "Affiliation" with, among others, "Farmers."  Id.  However, "Farmers" is not a Defendant and does not even appear as so defined in the Amended Complaint once.  Here, too, where Plaintiffs have made such "Affiliations" the gravamen of their case (see Amended Compl. ¶ 68), Defendants should not have to guess as to which, if any, legal entity named as a Defendant had such an "Affiliation" with one or more of them.  Further, Plaintiffs' pleading tactic is an improper attempt to mask how any Defendant that is not alleged to have such an "Affiliation" could possibly have engaged in any alleged misconduct that is the subject of this lawsuit.  Plaintiffs are obligated to notify each Defendant of how they supposedly harmed them.

even an attenuated one, upon the Plan's insurer by providing Plan beneficiaries with health care services."); Absolute Marine Towing & Salvage, Inc. v. S/V Iniki, No. 6:09-CV-1712-ORL-31, 2010 WL 2652466, at *2 (M.D. Fla. June 22, 2010) ("[I]t is not clear that [plaintiff] conferred a benefit on [defendant], as there is nothing that 'flowed to' [defendant], under these facts.  Doing something that lets a person avoid having to pay money is somewhat different from, say, increasing the value of someone's building by painting it."); Adventist Health System / Sunbelt Inc. v. Med. Savings Ins. Co., No. 6:03-cv-1121-Orl-19KRS, 2004 WL 6225293, at *6 (M.D. Fla. Mar. 8, 2004) ("[A] third-party providing services to an insured confers nothing on the insurer except, a ripe claim for reimbursement, which is hardly a benefit.").  Here, any benefits attributable to Plaintiffs' repair work were conferred on Defendants' policyholders, not on Defendants. Accordingly, Plaintiffs' quantum meruit claim should be dismissed.

### 2.    Unjust Enrichment  (Count Two)

A claim for unjust enrichment, much like a claim of quantum meruit, must be dismissed when there is already an express contract concerning the subject matter. Allyn v. CNL Lifestyle Props., Inc., No. 6:13–cv–132–Orl–36GJK, 2013 WL 6439383, at *6 (M.D. Fla. Nov. 27, 2013) ("However, a plaintiff cannot pursue a claim for unjust enrichment if an express contract exists concerning the same subject matter.").  As described above in Section II.B.1., the Amended Complaint alleges that Plaintiffs entered into program agreements with the Defendants.  There is no allegation as to any specific Plaintiff performing any specific repair outside of their DRP contract.  Nor do Plaintiffs allege that they performed repair work on a voluntary basis "over the course of years with Defendants' policyholders and claimants" outside of some contract. Moreover, the Amended Complaint alleges that the benefit – –  the repair of damaged

vehicles – – was provided, not to Defendants, but to their insureds "by providing to these policyholders and claimants collision repair services."  Amended Compl. ¶ 66 (Doc. 167).  Therefore,  Plaintiffs' claim for unjust enrichment must be dismissed.

Further, the Amended Complaint fails to adequately allege the required elements for a claim of unjust enrichment under Florida law.  "The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff."  Peoples Nat. Bank of Commerce v. First Union Nat. Bank of Fla., N.A., 667 So.2d 876, 879 (Fla. Dist. App. Ct. 1996).  "Under Florida law, the elements of a claim for unjust enrichment are the same as those for a quantum meruit claim."  Absolute Marine, 2010 WL 2652466, at *3. Accordingly, as described above, there are no allegations that any specific Defendant had any benefit conferred upon it by any one of the Plaintiffs.  June 11 Order (Doc. 110);  Hialeah Physicians, 2013 WL 3810617, at * 3; Absolute Marine, 2010 WL 2652466, at *3; Adventist Health, 2004 WL 6225293, at *6.

### 3.     Quasi-Estoppel  (Count Three)

Quasi-estoppel is not a cause of action.  See e.g., Bonner Farms, Ltd. v. Fritz, 355 F. App'x 10, 12 (6th Cir. 2009) (describing quasi estoppel as an affirmative defense); Yturria v. Kerr-McGee Oil & Gas Onshore, LLC, 291 F. App'x 626, 635 (5th Cir. 2008) (same); Stinnet v. Colo Interstate Gas Co., 227 F.3d 247, 256 (5th Cir. 2000) (same).  The most substantive discussion of the principle under Florida law is Hodkin v. Perry, 88 So.2d 139 (Fla. 1956), which described quasi-estoppel as an affirmative

defense preventing a party "either in the course of litigation or in dealings in pais, [from] occupy[ing] inconsistent positions."  Accordingly, Count Three should be dismissed.

### 4.    Tortious Interference with Business Relations  (Count Four)

"Under Florida law, the elements of tortious interference with a business relationship are: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff."  Med. Sav. Ins. Co. v. HCA, Inc., No. 2:04CV156FTM-29DNF, 2005 WL 1528666, at *9 (M.D. Fla. June 24, 2005).  However, "[t]he cause of action [for tortious interference with business relations] cannot be established by proof that the defendant interfered with a relationship between the plaintiff and the public at large."  Id.  This principle is elucidated in Sarkis v. Pafford Oil, Inc., 697 So. 2d 524, 526-27 (Fla. Dist. Ct. App. 1997), where the court dismissed the claim because the complaint did not identify specific customers, but instead just referred to the public at large:

> The amended complaint does not identify the customers who were the subject of the alleged interference. As the supreme court said in Ethan Allen Inc., v. Georgetown Manor Inc., 647 So.2d 812 (Fla.1994), an action for tortious interference with a business relationship generally requires "a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." Id. at 815. The court added in Ferguson Transportation Inc. v. North American Van Lines, 687 So.2d 821 (Fla.1996), that a claim of tortious interference with a business relationship requires proof that the plaintiff had a business relationship with "identifiable customers." Id. The cause of action cannot be established by proof that the defendant interfered with a relationship between the plaintiff and the public at large, yet that is precisely the basis of the claim asserted in this case. The plaintiffs alleged that the conduct in question resulted in

> a general loss of business, but even if that could be proven,
> it would not amount to a tortious interference with a business
> relationship as defined in <u>Ethan Allen</u> and <u>Ferguson</u>.
> Because the interference alleged here is not specific, this
> claim must fail.

<u>Id.</u>  Here, the Amended Complaint does not identify any specific customer.  Instead, it merely alleges that "The Defendants have repeatedly steered and attempted to steer <u>customers</u> away from the Plaintiffs' respective businesses. . . " and that the defendants "failed to verify facts . . . before conveying the same to members of the <u>public</u> . . . ." Amended Compl. ¶ 147 (emphasis added); <u>see also id.</u> ¶ 126 ("Yet both are conveyed to the <u>public</u> as problems with the shop.") (emphasis added) (Doc. 167). These types of allegations are insufficient to allege a claim for tortious interference with business relations under Florida law.  <u>Med. Sav. Ins.</u>, 2005 WL 1528666, at *9.[7]

Nor can Plaintiffs assert a viable claim for tortious interference against a party to the contract.  <u>See</u> <u>Cox v. CSX Intermodal, Inc</u>., 732 So.2d 1092, 1099 (Fla. Dist. Ct. App. 1999) ("Generally, a tortious interference claim 'exists only against persons who are not parties to the contractual relationship.'"); <u>Bortell v. White Mountains Ins. Group, Ltd</u>., 2 So. 3d 1041, 1049 (Fla. Dist. Ct. App. 2009) ("A tortious interference claim exists only against persons or entities who are not parties to the contractual relationship.").  All Defendants have contracts with their insureds.  The Amended Complaint states that "the vast majority of Plaintiffs' business is generated by customers for whom the Defendants are responsible to pay repair costs."  Amended Compl. ¶ 76 (Doc. 167). Indeed, the Amended Complaint makes clear that the work is performed by shops for

---

[7] Plaintiffs' allegations of "steering" also fail to give rise to a tortious interference with business relations claim for the same reason that they do not give rise to any antitrust claim.  <u>See</u> <u>Metzler v. Bear Auto. Serv. Equip. Co.</u>, 19 F. Supp. 2d 1345, 1364 (S.D. Fla. 1998) (dismissing tortious interference with business relations claim that was "grounded on precisely the same 'anticompetitive' behavior alleged in the failed antitrust claim" and, thus, it could not "as a matter of law constitute tortious interference with a business relationship").

the benefit of insureds, and that insurers have the obligation to pay for the service

provided to their insureds:

> Each individual Plaintiff has done business at various times
> over the course of years with the Defendants' policyholders
> and claimants by providing to these policyholders and
> claimants motor vehicle collision repair service. Each
> Defendant is individually responsible for payment for those
> repairs for their respective policyholders and claimants.

Amended Compl. ¶ 66 (Doc. 167).  Therefore, any alleged "interference" with any

business relationship between any of the Plaintiffs and any (unidentified) insureds would

be justified or privileged since the Defendants are, by virtue of their insurance policies,

legally "responsible to pay repair costs."  Id.; Gunder's Auto Center v. State Farm Mut.

Auto. Ins. Co., 422 F. App'x 819, 822 (11th Cir. 2011) (holding that insurance

companies are not strangers to the relationship between an auto-body shop and an

insured, and therefore the insurer's acts are privileged and it cannot be held liable for

tortious interference).  Therefore, this Count should be dismissed.

### 5. <u>Conversion  (Count Five)</u>

The cause of action for conversion suffers from the same infirmity that dictates

the dismissal of the quantum meruit and unjust enrichment claims: the Complaint

alleges that Defendants maintained DRP Agreements with various Plaintiffs.

Conversion actions are inappropriate when such an agreement exists.  Zaki Kulaibee

Establishment v. McFlicker, 788 F.Supp.2d 1363, 1379 (S.D. Fla. 2011) ("Where

damages sought in tort are the same as those for breach of contract a plaintiff may not

circumvent the contractual relationship by bringing an action in tort."); Belford Trucking

Co. v. Zagar, 243 So.2d 646, 648 (Fla. Dist. Ct. App. 1970) ("[A]n action in tort is

inappropriate where the basis of the suit is a contract, either express or implied.").

Beyond the presence of agreements, whether written, oral, or DRP, by which shops agree to perform work for stated fees, "[i]n order to establish a claim for conversion of money under Florida law, a plaintiff must demonstrate, by a preponderance of the evidence: (1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so." IberiaBank v. Coconut 41, LLC, No. 2:11–cv–321–FtM–29DNF, 2013 WL 6061883, at *19 (M.D. Fla. Nov. 18, 2013); see also Deutsche Bank Nat. Trust Co. v. Foxx, No. 8:13–cv–115–T–35TBM, 2013 WL 5291128, at *9 (M.D. Fla. Sept. 19, 2013) ("Conversion is an unauthorized act that deprives a person of his property permanently or for an indefinite time."). In essence, the tort of conversion requires specificity. And the Amended Complaint is a monument to vagueness.

Plaintiffs allege only that "Defendants have refused to deliver payment and/or full payment . . ." for work and labor that Plaintiffs have allegedly performed and that Defendants are "wrongfully in possession of monies that should have been expended to pay repair bills . . . which rightfully belongs to Plaintiffs." Amended Compl. ¶¶ 150, 152 (Doc. 167). Importantly, Plaintiffs have not  identified any specific and identifiable money at issue; instead they generally allege that they have not been paid enough by the Defendants. "The identification requirement ensures that a fund of money actually exists to pay a specific debt owed and the claimant is not merely transforming a contract dispute into a conversion claim." U.S. v. Mystic Equestrian LLC, No. 11–81130–CIV, 2013 WL 616938, at *3 (S.D. Fla. Feb. 19, 2013). Again, the Court's June 11 Order illustrates the problem. It is impossible for the Amended Complaint to identify an

identifiable money – because the Amended Complaint never alleges that "Defendant A" withheld "$X" from "Plaintiff B" on a distinct transaction on a specific date.  This failure dictates dismissal of the claim for conversion.

Even if Defendants actually owed specific, identifiable monies to the Plaintiffs, the cause of action for conversion would still fail.  It is well settled under Florida law that "[n]either an obligation to pay money nor a breach of contract generally gives rise to a claim of conversion in tort."  Kee v. Nat'l Reserve Life Ins. Co., 918 F.2d 1538, 1541 (11th Cir. 1990); Zaki Kulaibee, 788 F.Supp.2d at 1379 (same); see also Belford Trucking, 243 So.2d at 648 ("A mere obligation to pay money may not be enforced by a conversion action."); Rosen v. Marlin, 486 So.2d 623, 625 (Fla. Dist. App. Ct.1986) ("A debt which may be discharged by the payment of money in general cannot form the basis of a claim for conversion.").

## CONCLUSION

For the reasons set forth herein it is requested that this Court issue an Order dismissing the Amended Complaint herein with prejudice and granting Defendants such other and further relief as this Court deems just and proper.

Dated: July 11, 2014

By: /s/ Thomas G. Rohback

J. Suzanne M. Lehner
Florida Bar No.: 002368
QUINTAIROS, PRIETO,
WOOD & BOYER P.A.
4905 West Laurel Street
Tampa, Florida 33607
Telephone: (813) 286-8818
Facsimile:  (813) 286-9998
Suzanne.lehner@qpwblaw.com

Thomas G. Rohback
(*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
Phone: (860) 275-8100
Facsimile: (860) 275-8101
trohback@axinn.com

Attorneys for Defendants Hartford
Accident and Indemnity Company and
Hartford Underwriters Insurance
Company

Respectfully submitted

/s/     David L. Yohai

David L. Yohai*
John P. Mastando III*
Eric Hochstadt*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Fax: (212) 310-8007
david.yohai@weil.com
john.mastando@weil.com
eric.hochstadt@weil.com

Brian J. D'Amico (Fla. Bar No. 076868)
WEIL, GOTSHAL & MANGES LLP
Miami, Florida 33131
Telephone:  (305) 577-3100
Fax:  (305) 374-7159
brian.damico@weil.com

*specially admitted to practice

Attorneys for Defendants 21st Century
Centennial Insurance Company, 21st
Century Indemnity Insurance Company,
Bristol West Insurance Company, Foremost
Insurance Company Grand Rapids,
Michigan, and Security National Insurance
Company

(Note: Plaintiffs' Amended Complaint
dropped 21st Century North America
Insurance Company as a Defendant.)

25

By: /s/ Michael E. Mumford

Michael S. Vitale
Florida Bar No. 17136
BAKER & HOSTETLER LLP
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0186
mvitale@bakerlaw.com

Ernest E. Vargo
Michael E. Mumford
BAKER & HOSTETLER LLP
PNC Center
1900 East Ninth Street, Suite 3200
Cleveland, OH 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-9740
evargo@bakerlaw.com
mmumford@bakerlaw.com

ATTORNEYS FOR DEFENDANTS
Liberty Mutual Insurance Company and
Safeco Insurance Company of America


/s/ Hal K. Litchford

Hal K. Litchford
Florida Bar No. 272485
hlitchford@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
SunTrust Center
200 South Orange Avenue
Post Office Box 1549
Orlando, Florida  32802
Telephone:  (407) 422-6600
Facsimile:  (407) 841-0325

Counsel for Defendants USAA Casualty
Insurance Company and United Services
Automobile Association


s/  Laura Besvinick

Laura Besvinick, Esq.
Florida Bar Number:  391158
HOGAN LOVELLS US LLP
600 Brickell Avenue, Suite 2700
Miami, FL 33131
Telephone: (305) 459-6500
Facsimile: (305) 459-6550
Laura.Besvinick@hoganlovells.com
Gladys.Cata@hoganlovells.com
Alicia.santiesteban@hoganlovells.com

*Attorneys for The Travelers Indemnity
Company*


s/ Lori J. Caldwell

Lori J. Caldwell
Florida Bar Number:  0268674
lcaldwell@rumberger.com
RUMBERGER KIRK & CALDWELL
Lincoln Plaza, Suite 1400
300 South Orange Avenue
Orlando, Florida 32801
Telephone:  (407) 839-4546
Facsimile:  (407) 841-2133

Richard L. Fenton*
Mark L. Hanover*
richard.fenton@dentons.com
mark.hanover@dentons.com

26

DENTONS US LLP
233 S. Wacker Drive, Suite 7800
Chicago, IL  60606
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934
(*specially admitted to practice)

Attorneys for Defendants Allstate Fire and
Casualty Company, Allstate Insurance
Company, Encompass Indemnity Company,
and Esurance Property & Casualty
Company


s/ Joseph T. Kissane

Joseph T. Kissane
Florida Bar No. 512966
COLE, SCOTT & KISSANE, P.A.
4686 Sunbeam Road
Jacksonville, Florida 32257
Phone:  (904) 672-4031
Facsimile:   (904) 672-4050
joe.kissane@csklegal.com

*Of Counsel:*

Jeffrey S. Cashdan
Christine A. Hopkinson
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309
Phone:  (404) 572-4600
Facsimile:  (404) 472-5139
jcashdan@kslaw.com
chopkinson@kslaw.com

Michael R. Nelson
Kymberly Kochis
NELSON LEVIN de LUCA & HAMILTON
17 State Street, 29th Floor
New York, New York 10004
Phone:  (212) 233-0130
Facsimile:  (212) 233-0172
mnelson@nldhlaw.com

/s/ Darryl M. Bloodworth

Darryl M. Bloodworth, Esquire
Florida Bar No. 141258
Tim W. Sobczak, Esquire
Florida Bar No. 084707
Dean, Mead, Egerton, Bloodworth,
   Capouano & Bozarth, P.A.
800 North Magnolia Avenue, Suite 1500
Orlando, Florida 32803
Phone: (407) 841-1200
Fax: (407) 423-1831
Email: dbloodworth@deanmead.com
tsobczak@deanmead.com

Attorneys for Defendant The Cincinnati
Insurance Company

kkochis@nldhlaw.com

Attorneys for Defendants Progressive
American Insurance Company and
Progressive Select Insurance Company


/s/ E.K. Cottrell
E.K. Cottrell (FBN: 0013579), Trial
Counsel
EMAIL: ecottrell@sgrlaw.com
SMITH, GAMBRELL & RUSSELL, LLP
50 N. Laura Street, Suite 2600
Jacksonville, FL  32202
Telephone:   (904) 598-6100
Facsimile:    (904) 598-6300

Attorneys for Defendant Sentry
Insurance A Mutual Company

## CERTIFICATE OF SERVICE

I CERTIFY that on the 11th of July, 2014, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system, which will send the notice of electronic filing to all counsel of record.

/s/ Thomas G. Rohback
Thomas G. Rohback
(*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
Phone: (860) 275-8100
Facsimile: (860) 275-8101
trohback@axinn.com