# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

A & E AUTO BODY, INC., *et al.*,

      Plaintiffs,                       Case No. 6:14-CV-310-ORL-31TBS
                                              **DISPOSITIVE MOTION**

v.

21ST CENTURY CENTENNIAL INSURANCE COMPANY, *et al.*,

      Defendants.

_____/

## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

State Farm Mutual Automobile Insurance Company ("State Farm") hereby moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiffs' Amended Complaint. The Amended Complaint fails to remedy the pleading defects that caused this Court *sua sponte* to dismiss Plaintiffs' original Complaint. The defects identified in the Court's Order [Dkt. 110] are part and parcel of the reasons Plaintiffs' antitrust and state law claims are grossly insufficient as a matter of law, as State Farm and the other defendants urged in their initial motions. Plaintiffs have had ample opportunity to allege facts to comply with the Court's Order and to seek to remedy the legal shortcomings of their claims, and no further opportunity to amend is warranted. State Farm respectfully submits that the Court should dismiss all of Plaintiffs' claims with prejudice, both for failure to comply with the Court's Order and for the legal deficiencies in their causes of action.

## MEMORANDUM OF LAW

### I.    INTRODUCTION.

The 22 Plaintiffs in this case are auto body shops whose customers include persons

with auto insurance policies issued by the 40 insurance company Defendants.  Plaintiffs allege generally that they have entered into "direct repair program [DRP] agreements" with Defendants.  (Am. Compl. [Dkt. 167] ¶ 68.)  In conclusory terms, Plaintiffs complain about Defendants' practices and procedures under those agreements, alleging that the "market rates" determined by Defendants for their insureds' auto repairs are too low, that Plaintiffs are not adequately compensated for repair parts and materials, and that Defendants "steer" customers away from Plaintiffs' businesses.  In their Amended Complaint, Plaintiffs have added allegations that Defendants also engage in such practices against body shops that do not have direct repair program agreements with Defendants.  In addition to their state law claims, Plaintiffs also allege in conclusory terms that Defendants engaged in conspiracies violative of the Sherman Act to depress prices and to boycott Plaintiffs.

The Amended Complaint fails to correct defects that caused this Court to dismiss the original Complaint.  (*See* [110] ¶¶ 1, 4.)  Plaintiffs have attempted to fix their "shotgun" pleading by simply deleting the paragraphs that improperly incorporated all previous allegations into each count.  However, they still fail to identify the specific allegations that are relevant to each count.  This Court also required Plaintiffs to identify which Plaintiffs had DRP agreements with which Defendants.  (*Id.* ¶ 3.)  But although Plaintiffs now include a purported list of such agreements, 3 Plaintiffs are listed as "unknown," and 11 turn out to have no such agreements, despite the fact that the Defendants' DRP programs were the purported basis of Plaintiffs' claims.  ([167-4].)  Plaintiffs also still fail to plead specifically which Plaintiffs are complaining about what specific actions by which Defendant(s).  Instead, Plaintiffs have included the same boilerplate list of all Defendants in various paragraphs of

the Amended Complaint, asserting that these are the Defendants referred to in those paragraphs.  (*See, e.g.*, Am. Compl. ¶¶ 71, 123, 124.)  As in their original Complaint, the "allegations of wrongdoing" are still impermissibly "attributed, collectively, to every Defendant and alleged to have been perpetrated upon every Plaintiff."  ([110] ¶ 4.)

Plaintiffs' state law and federal antitrust claims are all deficient as a matter of law because Plaintiffs' allegations do not support essential elements of those claims.

***Counts One and Two*** -- Plaintiffs' claims for quantum meruit and unjust enrichment fail as a matter of law because Plaintiffs have not conferred a benefit on Defendants by repairing the cars of Defendants' insureds.  *See Adventist Health Sys./Sunbelt Inc. v. Med. Sav. Ins. Co.*, 2004 WL 6225293, at *6 (M.D. Fla. Mar. 8, 2004) ("a third-party providing services to an insured confers nothing on the insurer except a ripe claim for reimbursement, which is hardly a benefit").  Moreover, to the extent Plaintiffs have contractual agreements with Defendants (as they allege), they may not resort to equitable claims for quantum meruit and unjust enrichment.  Plaintiffs' quantum meruit claim also fails because Plaintiffs had no reasonable expectation of higher payments from State Farm than they received.

***Count Three*** -- Plaintiffs' claim for quasi-estoppel fails because Florida law does not provide an independent cause of action for quasi-estoppel, which is simply a doctrine that precludes a party from occupying inconsistent positions during the course of litigation.

**Count Four** -- Plaintiffs' claim for tortious interference with business relations rests upon conclusory, vague and generalized allegations that unspecified Defendants made unidentified misrepresentations to "members of the public" regarding unspecified Plaintiffs.  (*See, e.g.*, Am. Compl. ¶ 147.)  Plaintiffs still do not allege any actual and identifiable understanding or

agreement with any identified customer which would have been completed absent the Defendants' purported interference.  Moreover, Defendants cannot be deemed "strangers" to the business relations at issue, as required for a claim of tortious interference.  As courts have recognized, State Farm and other auto insurers have a legitimate interest and involvement in their insureds' repair transactions, and programs such as those at issue here serve lawful purposes that benefit insureds.  As the Eleventh Circuit held in affirming the dismissal under Florida law of a nearly identical tortious interference claim brought against State Farm by one of the Plaintiffs in this case, "State Farm is no stranger to the business relationship between [a body shop] and customers who are insured by State Farm" and has a "protectible interest" regarding that relationship.  *Gunder's Auto Ctr. v. State Farm Mut. Auto. Ins. Co.*, 422 F. App'x 819, 822 (11th Cir. 2011).

**Count Five** -- Plaintiffs' assertion that Defendants should have paid them more for their insureds' auto repairs does not support a claim for conversion.  Florida law is clear that a mere alleged obligation to pay money cannot be enforced by an action for conversion.

**Counts Six and Seven** -- Plaintiffs have also failed to state cognizable claims of price fixing and boycott under the Sherman Act, 15 U.S.C. § 1.  Plaintiffs' generalized and conclusory allegations of agreement and conspiracy do not meet the pleading standards established by Supreme Court and Eleventh Circuit precedent.  As shown below, Plaintiffs have made no plausible, factually specific allegations that State Farm or the other Defendants engaged in concerted action, with a conscious commitment to a common scheme designed to achieve an unlawful objective.  Indeed, Plaintiffs explicitly rely on allegations of conscious parallelism (*e.g.*, Am. Compl. ¶¶ 101, 123), which, as a matter of law, are not sufficient to plead a

conspiracy under the Sherman Act.

Plaintiffs' allegations of boycott are insufficient for the further reason that Plaintiffs do not allege a concerted refusal to deal by Defendants, as required for a group boycott claim under the Sherman Act.  Plaintiffs do not allege that any Defendant cut off business from any Plaintiff or refused to pay any Plaintiff for repairs to its insureds' cars that were performed at any Plaintiff's shop.  Plaintiffs allege, in vague and conclusory terms, only that Defendants "steer[ed]" customers away to other preferred body shops with "intimations" of poor quality work, overcharging, and so on.  (Am. Compl. ¶ 163.)  Defendants' alleged encouraging of their insureds to seek automobile repair services from less expensive providers that agreed to the prices Defendants requested does not constitute a boycott under the Sherman Act.

For these reasons and the reasons set forth below, this Court should dismiss as a matter of law all of Plaintiffs' claims against State Farm with prejudice.

## II.     STANDARDS FOR DISMISSAL UNDER RULE 12(B)(6).

To avoid dismissal, "'the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff's complaint should be dismissed.'"  *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plausibility "requires pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1264-65 (11th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The complaint "must plausibly establish each element of the cause of action" alleged.  *Hogan v. Provident Life & Acc. Ins. Co.*, 665 F. Supp. 2d

1273, 1286 (M.D. Fla. 2009).  If a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

"'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  Moreover, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## III.   PLAINTIFFS' CLAIM FOR QUANTUM MERUIT SHOULD BE DISMISSED.

Count One of the Amended Complaint purports to assert a claim for quantum meruit. Quantum meruit is a "'legal doctrine which, in the absence of an express agreement, imposes legal liability on a contract that the law implies from facts where one receives goods or services from another under circumstances where in the normal course of common affairs a reasonable person receiving such benefit would ordinarily expect to pay for it.'" *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 305 (Fla. 1st DCA 1999) (citation omitted).  The elements of quantum meruit are: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Absolute Marine Towing & Salvage, Inc. v. S/V Iniki*, 2010 WL 2652466, at *2 (M.D. Fla. June 22, 2010) (Presnell, J.).  A contract will be implied if "the parties have in fact entered into an agreement but without 'sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement.'" *Tooltrend,*

*Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 806 (11th Cir. 1999) (citation omitted).

Quantum meruit applies only "'in the absence of an express agreement'" between the parties. *W.R. Townsend*, 728 So. 2d at 305 (citation omitted).  Here, as with their original Complaint, Plaintiffs' allegations focus on their contractual DRP relationships with insurers.  However, Plaintiffs now no longer allege that they all have DRP relationships, and many do not claim to have DRP relationships with State Farm.  (*See* [167-4].)  Plaintiffs attempt to address this problem by adding allegations that Defendants treat DRPs and non-DRPs the same.  (Am. Compl. ¶¶ 102, 122.)  However, DRP shops have made contractual price "concessions" (*id.* ¶¶ 69, 77), by which non-DRP shops are, obviously, not contractually bound.  Thus, non-DRP shops are "not obligated to perform work at the price set in the [insurance] company's estimate," and "'the only consequence of a refusal to perform work at that price is that the customer will have to pay the additional charge himself . . . .'"  *Quality Auto Body, Inc. v. Allstate Ins. Co.*, 660 F.2d 1195, 1204 (7th Cir. 1981) (citation omitted).  Accordingly, to the extent that Plaintiffs allege they have DRP agreements with State Farm (Am. Compl. ¶ 68; [167-4]), which govern the amounts to be paid for repairs, including labor, materials and parts (Am. Compl. ¶¶ 69-71, 77-99, 119-21), Plaintiffs' quantum meruit claims fail as a matter of law.  To the extent that any Plaintiff does not allege a contractual relationship with State Farm, its recourse is to charge its customers for any amounts not paid by State Farm.  Such Plaintiffs' quantum meruit claims fail because they have no reasonable expectation of, or equitable entitlement to, higher payments from State Farm.

Indeed, regardless of the existence of a contractual relationship, all of the Plaintiffs' quantum meruit claims fail because Plaintiffs had no reasonable expectation of additional

payments and State Farm and the other Defendants had no expectation of making additional payments. *See Absolute Marine*, 2010 WL 2652466, at *2 (element of quantum meruit is that a reasonable person would expect to pay for benefit received). State Farm made clear to autobody shops the amounts it was willing to pay for the services to be rendered. (*See* Am. Compl. ¶¶ 71, 95-100, 102.) Indeed, Plaintiffs' allegations make clear that the same or similar program agreements and pricing practices have existed for many years and have been well known to body shops, such that there can be no plausible claim that they expected higher payments than they received. (*See* Am. Compl. ¶¶ 129-33.) Plaintiffs do not allege any factual circumstances that would have notified State Farm that Plaintiffs reasonably expected higher payments, rendering their quantum meruit claim deficient as a matter of law. *See Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1195 (11th Cir. 2009) (quantum meruit "'requires that plaintiffs demonstrate an expectation of compensation'" (citation omitted)).

 Plaintiffs also cannot show the required element that they "conferred a benefit" on Defendants. *See Absolute Marine*, 2010 WL 2652466, at *2; *Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*, 2013 WL 3810617, at *3-4 (S.D. Fla. July 22, 1013). "[A] third-party providing services to an insured confers nothing on the insurer except a ripe claim for reimbursement, which is hardly a benefit." *Adventist*, 2004 WL 6225293, at *6; *see also Hialeah Physicians*, 2013 WL 3810617, at *4 (a third-party provider of benefits to insureds "can hardly be said to have conferred any benefit, even an attenuated one, upon the Plan's insurer by providing Plan beneficiaries with health care services"). Just as the medical services in *Adventist* "flow[ed] to patients, not insurance companies," 2004 WL 6225293, at *6, the car repairs at issue here were for the benefit of the car owners. Accordingly,

Plaintiffs' claim for quantum meruit should be dismissed.

## IV.   PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT SHOULD BE DISMISSED.

Plaintiffs' claim for unjust enrichment (Count Two) fails under established Florida law.  The elements of a claim for unjust enrichment are "'(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit;  (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would inequitable for the defendant to retain the benefit without paying fair value for it.'" *Adventist*, 2004 WL 6225293, at *5 (citation omitted).

The "equitable remedy of unjust enrichment is not available 'to prove entitlement to relief if an express contract exists.'"  *White Holding Co., LLC v. Martin Marietta Materials, Inc.*, 423 F. App'x 943, 946 (11th Cir. 2011) (citation omitted); *accord State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*, 2011 WL 6450769, at *5 (M.D. Fla. Dec. 21, 2011) (Presnell, J.).  Thus, to the extent that Plaintiffs have alleged DRP agreements with State Farm (Am. Compl. ¶ 68; [167-4]), the remedy of unjust enrichment is not available because there is an express contract.

Moreover, regardless of whether a particular Plaintiff has a contractual agreement with a particular Defendant, Plaintiffs' unjust enrichment claim fails for lack of the essential elements that "the plaintiff has conferred a benefit on the defendant" and that it would be inequitable for Defendants not to make additional payments to Plaintiffs.[1]  As discussed above, in *Adventist*, the court dismissed both quantum meruit and unjust enrichment claims,

---

[1]  As with Plaintiffs' quantum meruit claim, those Plaintiffs that do not allege DRP agreements with State Farm are free to charge the insured for any additional costs above the amounts reimbursed by State Farm pursuant to its insurance policies.  *See* Point III *supra*.

holding that "a third-party providing services to an insured confers nothing on the insurer except a ripe claim for reimbursement, which is hardly a benefit."  2004 WL 6225293, at *6. The court in *Hialeah* followed the decision in *Adventist*, also dismissing both unjust enrichment and quantum meruit claims.  *See* 2013 WL 3810617, at *4.  Moreover, given that Plaintiffs had no reasonable expectation of further payment, *see* Point III *supra*, there is no inequity in rejecting their unjust enrichment claim.  *Cf. Tooltrend*, 198 F.3d at 806-07 (expectation of compensation "relevant to the question of whether it would be unjust to retain a benefit").  Plaintiffs' unjust enrichment claim should be dismissed as a matter of law.

## V.   PLAINTIFFS' CLAIM FOR QUASI-ESTOPPEL SHOULD BE DISMISSED.

Count Three of the Amended Complaint purports to assert a claim for quasi-estoppel. Quasi-estoppel, however, is simply a doctrine "applicable to a litigant who attempts to occupy inconsistent positions during the course of litigation."  *Savino v. Luciano*, 92 So. 2d 817, 819 (Fla. 1957).  State Farm has not found a single case in which a Florida court has recognized an independent cause of action for "quasi-estoppel."  Indeed, courts around the country have rejected such a cause of action.[2]  Therefore, Plaintiffs' claim for quasi-estoppel should be dismissed as completely unsupported under Florida law.  *Cf., e.g.*, *Adventist*, 2004 WL 6225293, at *5 ("it is not the place of a federal court to pioneer new common law causes of action under state law").

Moreover, even if an independent claim for quasi-estoppel existed, Plaintiffs could

---

[2]   *See, e.g.*, *T.C.B. Constr. Co. v. W.C. Fore Trucking, Inc.*, 134 So. 3d 752, 764 (Miss. Ct. App. 2012) (quasi-estoppel "is not an independent claim"), *aff'd in part, rev'd in part on other grounds*, 134 So. 3d 701 (Miss. 2013); *De Gochicoa v. Keystone Tex. Prop. Holding Corp.*, 2002 WL 31272370, at *3 (Tex. App. Sept. 30, 2002) (dismissing claims for equitable estoppel and quasi-estoppel; "appellant cannot maintain these doctrines as independent causes of action"); *Bubbel v. Wien Air Alaska, Inc.*, 682 P.2d 374, 380 n.7 (Alaska 1984) (the doctrine of quasi-estoppel is not a "basis for an independent claim for relief" but "operate[s] only defensively").

not prevail on such a claim.  Plaintiffs' purported claim for quasi-estoppel is based on the allegation that the Defendants should not be allowed to "deny[] the applicability and reasonableness of the baseline procedures and costs set forth in the industry databases henceforth and [should] make full payment for the necessary reasonable costs of repairs made for the benefit of Defendants' insureds and claimants."  (Am. Compl. ¶ 145; *see also id* ¶ 143 ("Defendants have relied upon and asserted the validity/authority of the databases, supra, when it has been to their respective advantage" but allegedly refuse to follow databases in other instances).)  However, Plaintiffs have not identified any inconsistency between State Farm's use of the databases and any specific provision of State Farm's agreements with Plaintiffs or alleged that State Farm's or other Defendants' purported refusal to follow industry databases across-the-board is unlawful or that State Farm or any other Defendant is profiting under its direct repair program while also seeking to have its own contractual obligations declared invalid.  Thus, even if true, Plaintiffs' claim that State Farm and the other Defendants do not accept every feature of the databases is not the kind of inconsistency to which the doctrine of quasi-estoppel applies.  Plaintiffs' quasi-estoppel "claim" lacks merit as a matter of law and should be dismissed.

**VI.    PLAINTIFFS' CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS SHOULD BE DISMISSED.**

Plaintiffs' claim for tortious interference with business relations (Count Four) also fails as a matter of law.  The elements of tortious interference with business relations are: "(1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff."

*Med. Sav. Ins. Co. v. HCA, Inc.*, 2005 WL 1528666, at *9 (M.D. Fla. June 24, 2005), *aff'd*, 186 F. App'x 919 (11th Cir. 2006).  Such a claim "generally requires 'a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.'"  *Id.* (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994)).  It is not sufficient to allege that the defendant "interfered with a relationship between the plaintiff and the public at large."  *Sarkis v. Pafford Oil Co.*, 697 So. 2d 524, 526-27 (Fla. 1st DCA 1997).  Rather, there must be interference with a business relationship with "identifiable customers."  *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821, 821 (Fla. 1996) (per curiam).

In the Amended Complaint, Plaintiffs still do not allege any identifiable customers, but continue to claim interference through alleged misrepresentations purportedly made by Defendants to "members of the public."  (Am. Compl. ¶ 147.)  Nowhere do Plaintiffs identify any specific instance of any purported misrepresentation by any of the Defendants regarding any of the Plaintiffs.  Nor do Plaintiffs identify any actual customer or even potential customer that any Plaintiff lost because of the purported misrepresentations.  Rather, under the cover of group pleading, Plaintiffs allege generally that Defendants have "steered and attempted to steer customers away from the Plaintiffs' respective businesses through their repeated campaign of misrepresentation of facts, failure to verify facts damaging or tending to cause damage to the Plaintiffs [sic] business reputations before conveying the same to members of the public, and, inter alia, implications of poor quality work, poor quality efficiency, poor business ethics and practices, and unreliability."  (*Id.*) Thus, Plaintiffs have not pled that any "actual and identifiable understanding or agreement" with any identifiable

customer was not completed.  As this Court previously held, such generalized, conclusory group pleading is insufficient to state a claim.  ([110] ¶ 4.)

Moreover, Plaintiffs have failed to meet their burden of alleging an unjustified and intentional interference.  Under Florida law, "[f]or the interference to be unjustified, the interfering defendant must be a stranger to the business relationship, and a defendant is not a stranger where it had any beneficial or economic interest in the relationship." *United Credit Recovery, LLC v. Bexten*, 2012 WL 3854536 at *5 (M.D. Fla. Sept. 5, 2012).  Indeed, the Eleventh Circuit upheld on precisely this ground the dismissal as a matter of Florida law of a virtually identical tortious interference claim asserted against State Farm by Gunder's Auto Center (a Plaintiff in this case).  The court stated that "[b]ecause State Farm is obligated to indemnify its insureds for repair work done on its insureds' cars, State Farm is no stranger to the business relationship between Gunder's and customers who are insured by State Farm." *Gunder's Auto Center*, 422 F. App'x at 822.  The court found "that State Farm had a protectible interest in the relationship between Gunder's and State Farm insureds." *Id.*; *see also Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 2005 WL 4826893 (Miss. Ch. Ct. Mar. 22, 2005) (rejecting tortious interference claim; insurance company, "[h]aving insured against accidents involving property damage and being under certain legal obligations as a result, both to its insureds and its claimants . . . is necessarily involved in repair activities," and "[p]rotecting its interests under these circumstances is not unlawful."); *Christmon v. Allstate Ins. Co.*, 82 F. Supp. 2d 612, 615-16 (S.D. Miss. 2000) (rejecting tortious interference claim; lawful purposes of insurer's repair program "include[d] streamlining the claims process and obtaining discounts for insureds, each of which benefit

[the] insureds"). Thus, Plaintiffs' conclusory allegations of malicious intent (Am. Compl. ¶ 149) are insufficient to state a tortious interference claim. *See Twombly*, 550 U.S. at 555.

## VII.   PLAINTIFFS' CLAIM FOR CONVERSION SHOULD BE DISMISSED.

Plaintiffs' conversion claim  (Count Five) is based on the allegations that "Defendants have refused to make payment and/or full payment" to Plaintiffs and "are therefore wrongfully in possession of monies" that should have been paid to Plaintiffs.  (Am. Compl. ¶¶ 150, 152.)   However, Florida law "is clear that the mere obligation to pay money will not be enforced by an action for conversion." *Indus. Park Dev. Corp. v. Am. Express Bank, FSB*, 960 F. Supp. 2d 1363, 1366 (M.D. Fla. 2013) (citing cases).   Accordingly, Plaintiffs' conversion claim should be dismissed as a matter of law because Plaintiffs allege nothing more than a failure by Defendants to pay money supposedly owed to Plaintiffs.

## VIII.   PLAINTIFFS' ANTITRUST CLAIMS SHOULD BE DISMISSED.

### A.    The Amended Complaint Fails to Allege an Antitrust Conspiracy.

Plaintiffs' Amended Complaint utterly fails to address, much less overcome, the deficiencies in Plaintiffs' antitrust claims that were identified in State Farm's previously filed motion for judgment on the pleadings.  Counts Six and Seven of the Amended Complaint allege that Defendants violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by conspiring to fix prices and to engage in a group boycott of Plaintiffs' businesses.  A plaintiff alleging an antitrust conspiracy must adequately plead that the defendants "(1) entered into 'a contract, combination or conspiracy,' which was (2) 'in restraint of trade or commerce,' and (3) that [the plaintiff] was damaged by the violation." *Moecker v. Honeywell Int'l, Inc.*, 144 F. Supp. 2d 1291, 1300 (M.D. Fla. 2001) (citation omitted).  Plaintiffs' amended Sherman Act claims

founder on the first requirement.

Plaintiffs allege that Defendants imposed maximum price limitations for automobile parts and services, adopted similar reimbursement policies and practices, and attempted to steer customers away from shops that refused to adhere to Defendants' price limitations.  The "'crucial question,'" however, is "whether the challenged anticompetitive conduct 'stem[s] from independent decision or from an agreement, tacit or express.'"  *Twombly*, 550 U.S. at 553 (alteration in original) (citation omitted); *see also Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 448 (2009) ("As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing."); *Quality Auto Body*, 660 F.2d at 1205 ("Section 1 of the Sherman Act does not preclude a party from unilaterally determining the parties with whom it will deal and the terms on which it will transact business.").  To prove an agreement, "a plaintiff must demonstrate 'a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement.'"  *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 569 (11th Cir. 1998) (citation omitted).  Adequately pleading an agreement requires "'allegations plausibly suggesting (not merely consistent with) [a conspiracy or] agreement'" and possessing "'enough heft to show that the pleader is entitled to relief.'"  *Jacobs*, 626 F.3d at 1332-33 (quoting *Twombly*, 550 U.S. at 557).  Allegations "that are 'consistent with conspiracy, but just as much in line with . . . rational and competitive business strategy' are insufficient."  *In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1308 (S.D. Fla. 2010) (quoting *Twombly*, 550 U.S. at 554).  Accordingly, Plaintiffs bear "the burden to present allegations showing why it is more plausible that [Defendants]—assuming

they are rational actors acting in their economic self-interest—would enter into an illegal

price-fixing agreement" when they could have reached the same result through "purely

rational profit-maximizing behavior."  *Jacobs*, 626 F.3d at 1342.

At the pleading stage, "'formulaic recitations' of a conspiracy claim" are insufficient,

and "'a conclusory allegation of agreement at some unidentified point does not supply facts

adequate to show illegality.'"  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1294 (11th

Cir. 2010) (quoting *Twombly*, 550 U.S. at 557).  The Amended Complaint fails to meet the

standards set by the Supreme Court and the Eleventh Circuit for pleading conspiracy.

### 1.   Consciously Parallel Business Conduct Is a Legally Insufficient Basis for a Claim of Conspiracy.

Plaintiffs allege that each Defendant's conduct was either undertaken pursuant to an

agreement or consciously parallel to the conduct of the other Defendants.[3]  Plaintiffs do not

allege or attempt to allege an express agreement among Defendants.  Rather, they explicitly

rely on purported conscious parallelism as a basis for their allegation of conspiracy or

conspiracies.  In fact, Plaintiffs have fallen short of alleging even actual parallel conduct on

the part of the Defendants.[4]  Even if Plaintiffs had alleged actual parallel conduct, conscious

---

[3]  *See, e.g.*, Am. Compl. ¶ 101 ("The remaining Defendants, intentionally and by agreement and/or conscious parallel behavior, specifically advised the Plaintiffs they will pay no more than State Farm pays for labor."); *id.* ¶ 123 ("all Defendants have agreed to and/or consciously parallel the parts compensation ceilings established by State Farm solely for their own profit").

[4]  Despite the Amended Complaint's vague and conclusory invocations of parallel conduct, it does not identify a single example of uniform conduct among the Defendants with respect to the parts and services provided by Plaintiffs or a single set of transactions in which the Defendants adhered to a common price for a specific part or service.  Instead, the Amended Complaint lists a series of practices and policies purportedly contained within the direct repair program agreements of some Defendants.  (*See, e.g.*, Am. Compl. ¶¶ 68, 104.)  But other than alleging that such agreements ordinarily "contain[] a general statement that the body shop will charge the respective insurance company no more for any particular repair than is the going rate in the market area" (*id.* ¶ 77), the Amended Complaint does not allege that the agreements are identical or contain identical policies with regard to reimbursement for repairs or the types of parts that body shops must use.

parallelism has universally been held insufficient to satisfy the conspiracy element of § 1. *Twombly*, 550 U.S. at 553-54; *see also Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1298-99 (11th Cir. 2003) ("[I]t is important to distinguish at the outset between collusive price fixing, i.e., a 'meeting of the minds,' to collusively control prices, which is prohibited under the Sherman and Clayton Acts, and 'conscious parallelism,' which is not."). The Amended Complaint also relies on repeated allegations that Defendants "agreed" to engage in joint conduct (*e.g.*, Am. Compl. ¶¶ 101, 123, 164), and that Defendants' conduct was undertaken "in concert" (*id.* ¶ 103), or pursuant to an "agreement" or "concert of action" (*id.* ¶¶ 101, 154, 157). Such conclusory recitations of the elements of the claim are not presumed true at the pleading stage. *Am. Dental Ass'n*, 605 F.3d at 1294. Plaintiffs' failure to set forth specific factual allegations plausibly establishing an antitrust conspiracy requires dismissal of their antitrust claims as a matter of law.

### 2. The Amended Complaint Completely Fails to Allege Any Facts to Support an Inference that Any Group of Defendants Conspired.

*Twombly* makes clear that, "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." 550 U.S. at 556-57. Rather, allegations of parallel conduct must be "placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Id.* at 557.

The Amended Complaint does not set forth any factual context suggesting that State Farm *agreed* with the other Defendants (or that the other Defendants agreed with each other) to take common steps to drive down prices, adopt State Farm's price limitations, or employ

mechanisms and boycotts to ensure Plaintiffs' compliance with those limitations.[5]   Indeed,

Plaintiffs' core allegation is simply the self-defeating generalization that after State Farm, the

alleged market leader, "unilaterally" adopted a price structure for labor rates, the other

Defendants asked Plaintiffs to give them the same prices given to State Farm.  Following a

price leader, however, does not suffice to prove the existence of an agreement.  *See, e.g.*, *In*

*re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 910 (6th Cir. 2009).

Indeed, Plaintiffs have failed utterly to plead facts that would render it plausible to

infer a conspiracy under these circumstances in light of the competing inference that it was in

the rational, independent business interest of State Farm to demand lower prices and of other

insurers to request that a body shop not charge them more than the shop already had agreed

to charge State Farm.  *See Twombly*, 550 U.S. at 554 (allegations that are "consistent with

conspiracy, but just as much in line with . . . rational and competitive business strategy" do

not suffice); *Am. Dental Ass'n*, 605 F.3d at 1295 (where alleged parallel conduct is not

"inconsistent with the independent pursuit of [defendants'] own economic self-interest," that

conduct "is equally indicative of rational independent action as it is concerted, illegitimate

conduct" and cannot support a conspiracy claim).

The Amended Complaint's inadequacy is all the more evident when considered

alongside the sheer scope and complexity of the alleged statewide conspiracy, involving tens

of thousands of auto repairs each year, each with its own combination of parts and services.

Plaintiffs allege that 40 insurance companies agreed to fix reimbursement prices throughout

---

[5]   *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) ("merely charging, adopting or following the fees set by a Consortium is insufficient as a matter of law to constitute a violation of Section 1 of the Sherman Act"); *Quality Auto Body*, 660 F.2d at 1200 (antitrust conspiracy could not be inferred from defendants' "adherence to a 'common formula' for calculating damage estimates" for automobile repairs).

Florida, as well as to implement policies "refus[ing] to compensate the shops for replacement parts," requiring "used and/or recycled parts rather than new parts," "requiring [that] discounts and/or concessions be provided," establishing "de facto compulsory utilization of parts procurement programs," "refusing to make full payment for procedures and materials," "stacking" separate parts agreements with other discounts, and boycotting noncompliant shops by "steering" customers away from them.  (Am. Compl. ¶¶ 104, 107, 121, 124-28.)

This alleged vast conspiracy among so many competitors would have been incredibly difficult to create and maintain and is inherently implausible, given the lack of any factual allegations describing a mechanism for creating and enforcing the agreement.  In *In re Elevator Antitrust Litigation*, 502 F.3d 47 (2d Cir. 2007), the Second Circuit affirmed dismissal of a similar conspiracy claim alleging that the defendants conspired to fix the price of elevator parts and repair services by holding meetings to discuss pricing and market divisions, collusively requiring customers to enter into long-term maintenance contracts, and using similar contractual language and pricing.  *Id.* at 50-51 & n.5.  The court held that the plaintiffs' allegations, which were "in entirely general terms without any specification of any particular activities by any particular defendant . . . which one could postulate without knowing any facts whatever," did not plausibly plead a conspiracy.  *Id.* at 50-51.

Like the plaintiffs in *In re Elevator Antitrust Litigation*, the body shop Plaintiffs in this case have failed to plead any facts to support their conspiracy contentions.  Their conclusory allegations that 40 insurance companies coordinated their prices and policies with respect to tens of thousands of unique aspects of automobile repair transactions do not even approach – much less cross – the line between possible and plausible.  *Cf. Dowdy & Dowdy*

*P'ship v. Arbitron Inc.*, 2010 WL 3942755, at *4 (S.D. Miss. Oct. 6, 2010) (rejecting conspiracy claim based on "broad allegations of favorable pricing terms" where plaintiff provided no specific details of the prices set for each service); *Am. Surgical Assistants, Inc. v. Great W. Healthcare of Tex., Inc.*, 2010 WL 565283, at *6 (S.D. Tex. Feb. 17, 2010) ("[A] factual predicate for conspiracy must be set out that consists of more than allegations that several companies[,] all of whom were engaged in the same kind of insurance claims business, each went to a common source to obtain data on the usual, customary, and reasonable charges for certain services provided by health care providers.").

In addition to failing to provide details regarding the supposed agreement or any "specific time, place, or person involved in the alleged conspiracies," *see Twombly*, 550 U.S. at 565 n.10, Plaintiffs do not offer any "plus factors" that might make it plausible to infer a conspiracy from the alleged parallel conduct.  *See Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 227-30 (3d Cir. 2011) (identifying factual allegations that would help render conspiracy plausible, such as a common motive to enter a conspiracy, actions against economic self-interest, and assurances of common action), *cert. denied*, 132 S. Ct. 1861 (2012).  Here, for example, the Amended Complaint does not contain any factual allegations that would show why, absent an agreement, it would be irrational for an insurer to ask body shops to lower their labor rates to what they charge a different insurer.

Indeed, Plaintiffs' only attempt to support an inference of conspiracy is contained in a single paragraph proffering the bare, unspecified allegations that all Defendants made "explicit statements" that they would adhere to State Farm's "unilaterally imposed payment structure," that all Defendants "admitt[ed] the baseline application of the industry database

20

but fail[ed] to conform to that minimum standard," and that there was unspecified "uniformity of action by all Defendants." (Am. Compl. ¶ 158.) Notwithstanding this Court's admonition that Plaintiffs are required to allege specific conduct by specific Defendants, Plaintiffs fail to relate even a single such "explicit statement" by any particular Defendant. In any event, these allegations merely restate Plaintiffs' vague claim of parallel conduct and are not evidence of a conspiracy. The supposed parallel conduct here is not indicative of anything other than unilateral action. Plaintiffs' allegations suggest nothing more than that other unidentified insurers stated their intention to follow a pricing structure set independently by State Farm. Similarly, the Complaint's companion allegation that Defendants failed to follow a purported industry pricing baseline falls short of adding factual context to support a claim that Defendants did anything other than make their own unilateral pricing decisions. *See Am. Dental Ass'n*, 605 F.3d at 1294-95 ("allegations of parallel conduct, accompanied by nothing more than a bare assertion of a conspiracy, do not plausibly suggest a conspiracy").

In *Twombly*, the Supreme Court recognized that "[i]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive." 550 U.S. at 546. To prevent prolonged and costly discovery in unmeritorious antitrust cases, the Court limited the range of inferences that can be drawn at the pleading stage from bare allegations of parallel conduct and required courts to scrutinize the complaint before allowing conspiracy claims to proceed. *See id.* at 559-60 ("it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of

discovery in cases with no "'reasonably founded hope that the [discovery] process will reveal relevant evidence'" to support a § 1 claim" (alteration in original) (citations omitted)).

The concerns identified by the Supreme Court in *Twombly* are fully relevant here. Plaintiffs' attempts to allege parallel conduct consist of sweeping, general statements about what all Defendant insurers have done in tens of thousands of insurance transactions involving widely varying repair issues and myriad configurations of parts and services. Discovery regarding the alleged conspiracy would require an enormous expenditure of time and money and involve the examination of voluminous communications, documents, and data related to tens of thousands of transactions. *See In re Elevator Antitrust Litig.*, 502 F.3d at 50 n.4 (discussing "potentially enormous cost of fact discovery"). This Court should not permit massive discovery on the basis of Plaintiffs' patently inadequate allegations, particularly given that Plaintiffs concede that they may be chasing nothing more than conscious parallelism. *See id.* at 50 ("averments of agreements made at some unidentified place and time" insufficient); *Dowdy & Dowdy P'ship*, 2010 WL 3942755, at *3 (dismissing antitrust claims; complaint did not "offer a single fact to suggest that the Defendants ever agreed to restrain trade, communicated regarding the restraint of trade, or shared a common intent to restrain trade" and did "not reveal when, where, or how the conspiracy was supposedly formed"). Plaintiffs' amended antitrust conspiracy claims should be dismissed.

### B.   The Complaint's Boycott Allegations Are Insufficient as a Matter of Law.

Count Seven should be dismissed for the independent reason that Defendants' alleged conduct does not constitute a boycott. A group boycott under the antitrust laws requires proof of a concerted refusal to deal. *See Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d

1555, 1568 (11th Cir. 1991) (a "group boycott" "describes a situation where two or more parties have agreed that each of them will 'refus[e] to deal with a particular customer or customers'" (alteration in original) (citation omitted)); *see also Quality Auto Body*, 660 F.2d at 1206. Here, there is no legally cognizable allegation of concerted action (see Point VIII.A *supra*). Far from alleging that all Defendants refused to deal with it, no Plaintiff alleges that even one Defendant cut off business from it or refused to reimburse insureds who patronized it. Again, with no factual support, Plaintiffs allege only that Defendants "steer[ed]" customers from certain body shops by suggesting to those customers that better or less expensive service could be procured elsewhere. (*See* Am. Compl. ¶ 163.)

In essence, Plaintiffs complain not that Defendants withheld or barred patronage, but rather that Defendants encouraged their own customers to seek automobile repair services from less expensive providers (that is, those providers that agreed to the prices Defendants requested). Such conduct is not cognizable as a "group boycott" under the Sherman Act.[6]

Moreover, the Complaint does not provide any factual allegations that explain the operation of the purported boycott or its impact on any Plaintiff or on competition. "'[T]he purpose of the [Sherman] Act is not to protect businesses from the working of the market; it

---

[6]   *See Quality Auto Body*, 660 F.2d at 1206 (even if two insurers agreed to refuse to pay more than competitive price for automobile repairs, that agreement did not constitute a boycott); *Custom Auto Body, Inc. v. Aetna Cas. & Sur. Co.*, 1983 WL 1873, at *19 (D.R.I. Aug. 3, 1983) (plaintiff auto body shop "at all times has been free to compete for the business of the defendant and its insureds by offering lower prices or higher quality services"); *Nationwide Mut. Ins. Co. v. Auto. Serv. Councils of Del., Inc.*, 1981 WL 2053, at *2-4 (D. Del. Apr. 10, 1981) (discouraging insureds from using body shops "by telling them that their prices were too high, and by notifying the owners that Nationwide would not guarantee full reimbursement" did not constitute refusal to deal:  there was "no suggestion of an outright refusal of Nationwide to deal with any repair shop," rather Nationwide had "simply refused to accede to what it considers to be defendants' excessive prices"). Plaintiffs cannot cure the deficiencies of their boycott claim by invoking the term "coercion."  (Am. Compl. ¶ 103.)  None of the alleged conduct comes close to coercion.  *See Nationwide Mut.*, 1981 WL 2053, at *3 ("driving a hard bargain . . . hardly constitutes a form of 'coercion' cognizable under the antitrust laws").

is to protect the public from the failure of the market.'" *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1069 (11th Cir. 2004) (alterations in original) (quoting *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 458 (1993)).  Accordingly, "an antitrust plaintiff must show harm to competition in general, rather than merely damage to an individual competitor."  *Id.*  Here, the Amended Complaint asserts in vague, general terms that the 40 Defendants "steered" customers away from the 22 Plaintiffs but fails to make a single specific allegation about the actions of any Defendant toward any Plaintiff or about even a single instance of a Plaintiff losing business as a result of the alleged conduct.  No Plaintiff alleges that it refused to meet a Defendant's price demand and was boycotted as a result.  No Plaintiff alleges that its removal from the preferred provider list of one Defendant resulted in any other Defendants removing the shop from their preferred provider lists.

There is no way to determine from the Amended Complaint's allegations – or from Plaintiffs' attempt to cure the deficiencies identified by this Court through rote repetition of the name of every Defendant – which Plaintiffs have allegedly been subjected to what action or conduct, or at whose hands they allegedly suffered economic injury, nor do Plaintiffs specify what "substantial damages" any Plaintiff has incurred (Am. Compl. ¶ 169) as a result of the alleged boycott.  Plaintiffs' allegations are insufficient to support a plausible claim of boycott under the pleading standards set forth by the Supreme Court and Eleventh Circuit.

### C.    Plaintiffs Have Not Stated a Claim of Vertical Conspiracy.

Although the Amended Complaint's antitrust allegations appear to be focused on a purported conspiracy among the Defendant insurers, Count Six refers to "a *vertical* conspiracy or combination to impose maximum price limits upon Plaintiffs for their products

and services."  (Am. Compl. ¶ 154 (emphasis added).)   Agreements are characterized as vertical when they involve businesses operating at different levels of markets, such as manufacturers and distributors.  To the extent Plaintiffs are attempting to state a claim for a vertical restraint of trade, they fail as a matter of law.  First, there are no allegations of a vertical conspiracy that satisfy *Twombly*'s standards.  Plaintiffs do not identify purported downstream conspirators, much less allege conduct supportive of a conspiracy claim.  Second, vertical conspiracy claims must be examined under the rule of reason of antitrust liability.  *Jacobs*, 626 F.3d at 1334-36; *see also Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007); *Seagood Trading Corp.*, 924 F.2d at 1569.  Under the rule of reason, Plaintiffs must allege that the challenged conduct has an adverse impact on competition in relevant geographic and product markets.  *Jacobs*, 626 F.3d at 1336.  Plaintiffs have not even attempted to allege any facts supporting these essential elements.

## IX.   CONCLUSION

The Court should dismiss all of Plaintiffs' claims against State Farm with prejudice.

Dated: July 14, 2014                                   Respectfully submitted,

                                                       */s/ Johanna Wills Clark (FBN 196400)*

Michael P. Kenny (admitted pro hac vice)     Johanna W. Clark (FBN 196400)
Elizabeth Helmer (admitted pro hac vice)     Joshua D. Moore (FBN 41680)
Alston & Bird LLP                            Carlton Fields Jorden Burt, PA
One Atlantic Center                          CNL Center at City Commons
1201 West Peachtree Street                   450 S. Orange Avenue, Suite 500
Atlanta, GA 30309                            Orlando, Florida 32801-3370
T: (404) 881-7000                            T: (407) 244-8257
F: (404) 881-7777                            F: (407) 648-9099
mike.kenny@alston.com                        jclark@cfjblaw.com
elizabeth.helmer@alston.com                  jmoore@cfjblaw.com

*Attorneys for Defendant State Farm
Mutual Automobile Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that on the 14th day of July, 2014, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice of elec-

tronic filing to all counsel of record.

By:    */s/ Johanna W. Clark*
Johanna W. Clark
FL Bar No. 196400
Joshua D. Moore
FL Bar No. 41680
Carlton Fields Jorden Burt, P.A.
CNL Center at City Commons
450 S. Orange Avenue
Suite 500
Orlando, Florida 32801-3370
Tel: 407.849.0300
Fax: 407.648.9099
E-mail: jclark@cfjblaw.com (primary)
E-mail: jmoore@cfjblaw.com (primary)
E-mail: dasmith@cfjblaw.com (secondary)
E-mail: orlecf@cfdom.net (secondary)