IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

A&E AUTO BODY, INC.;
AMERICAN PAINT & BODY, INC.;
AUTO & COACH WORKS OF CENTRAL FL, INC.;
AUTO BODY CONCEPTS, INC.;
COLLISION CONCEPTS OF DELRAY, LLC;
ELITE EURO CARS COLLISION SERVICES, INC.;
EXPRESS PAINT & BODY;
GUNDER'S AUTO CENTER, INC.;
JUSTIC COLLISION, LLC;
LONG WHOESALE CONSULTANTS;
MARSHALLS BODY MASTERS;
OLD DIXIE PAINT AND BODY, LLC;
ORLANDO AUTO BODY, INC.;
QUALITY COLLISION REPAIR, INC.;
REGAL PONTIAC, INC.;
SPS BUSINESS INVESTMENTS, INC.;
STEWARDT AGENCY, INC.
d/b/a EARL STEWART TOYOTA OF NORTH PALM BEACH;
STEWART AUTO REPAIR, INC.;
STEWART COLLISION GROUP, LLC
d/b/a BERNIE'S BODY SHOP;

    Plaintiffs,                                                     **CASE NO:**    6:14-CV-00310

v.

21ST CENTURY CENTENNIAL INSURANCE COMPANY
d/b/a FARMERS INSURANCE GROUP;
21ST CENTURY NORTH AMERICAN INSURANCE COMPANY;
ACCEPTANCE INDEMNITY INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY;
ALLSTATE INSURANCE COMPANY;
BRISTOL WEST INSURANCE COMPANY;
DIRECT GENERAL INSURANCE COMPANY;
ECOMPASS INDEMNITY COMPANY;
ESURANCE PROPERTY & CASUALTY INSURANCE COMPANY
a/k/a ESURANCE INSURANCE COMPANY;
FIRST ACCEPTANCE INSURANCE COMPANY, INC.;
FLORIDA FARM BUREAU GENERAL INSURANCE COMPANY
d/b/a FLORIDA FARM BUREAU INSURANCE COMPANIES;
FOREMOST INSURANCE COMPANY;
GEICO GENERAL INSURANCE COMPANY;

HARTFORD ACCIDENT AND INDEMNITY COMPANY;
HARTFORD UNDERWRITERS INSURANCE COMPANY;
HORACE MANN INSURANCE COMPANY;
INFINITY AUTO INSURANCE COMPANY;
LIBERTY MUTUAL INSURANCE COMPANY;
MERCURY INSURANCE COMPANY OF FLORIDA;
MGA INSURANCE COMPANY INC.
d/b/a GAINSCO AUTO INSURANCE;
NATIONAL GENERAL INSURANCE ONLINE, INC.;
NATIONWIDE INSURANCE COMPANY OF FLORIDA;
NATIONWIDE MUTUAL INSURANCE COMPANY;
OCEAN HARBOR CASUALTY INSURANCE COMPANY;
OLD REPUBLIC INSURANCE COMPANY;
OLD REPUBLIC INSURANCE COMPANY
d/b/a GALLAGHER BASSETT SERVICES, INC.;
PROGRESSIVE CASUALTY INSURANCE COMPANY;
SAFECO INSURANCE COMPANY OF AMERICA;
SECURITY NATIONAL INSURANCE COMPANY
d/b/a FARMERS INSURANCE GROUP;
SENTRY INSURANCE A MUTUAL COMPANY;
STATE AUTOMOBILE MUTUAL INSURANCE COMPANY;
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY;
THE CINCINNATI INSURANCE COMPANY;
THE TRAVELERS INDEMNITY COMPANY;
USAA CASUALTY INSURANCE COMPANY
d/b/a UNITED SERVICES AUTOMOBILE ASSOCIATION;
USAA CASUALTY INSURANCE COMPANY;
WESTFIELD INSURANCE COMPANY;
WINDHAVEN INSURANCE COMPANY;
ZURICH AMERICAN INSURANCE COMPANY;

        Defendants.
_____/

## DEFENDANT ACCEPTANCE INDEMNITY INSURANCE COMPANY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

COMES NOW, Defendant, ACCEPTANCE INDEMNITY INSURANCE COMPANY (hereinafter "Acceptance"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully moves this Honorable Court to dismiss Plaintiffs' First Amended Complaint, Docket No. 167 (hereinafter "the Complaint"), for failure to state a claim upon which relief can be granted, and states in support as follows:

01256718

## INTRODUCTION

Plaintiffs are nineteen auto body repair shops, and Defendants are thirty-nine insurance companies issuing automobile policies in Florida. Plaintiffs allege that State Farm Mutual Automobile Insurance Company (herein after "State Farm") has used its considerable market share to force Plaintiffs to accept inadequate compensation for the repairs, labor, and materials Plaintiffs expend when servicing State Farm's customers. Plaintiffs further allege that Acceptance, and the remaining defendants, have illegally conspired to adhere to the rates determined by State Farm. Plaintiffs assert that these actions violate both Florida common law and § 1 of the Sherman Act, 15 U.S.C. § 1.

Plaintiffs' claims for quantum meruit, unjust enrichment, and conversion fail because Plaintiffs cannot seek equitable relief for Acceptance's alleged violations of statutory law. These also fail because they seek to imply a contract where an express contract already exists. Additionally, Plaintiffs' claim for conversion also fails because it does not relate to a specific and readily identifiable sum of money. Plaintiffs are seeking general damages based upon the alleged conspiracy, and a claim for conversion cannot be used to enforce an obligation to pay a monetary debt.

Plaintiffs' claim for quasi-estoppel fails because the allegations, if true, do not amount to illegal conduct. Plaintiffs allege that Acceptance should be estopped from denying the definitive nature of certain databases because Acceptance sometimes relies upon the databases when negotiating with Plaintiffs. These allegations, even if true, fail to state a cause of action for anything.

Plaintiffs' claim for tortious inference with business relations fails because the allegations of the Complaint, if true, show that Acceptance was not a stranger to the relationship. Plaintiffs

01256718

cannot pursue a cause of action against Acceptance based upon Acceptance's involvement in its own transactions.

Plaintiffs' statutory claims fail because they do not allege sufficient factual allegations which, if true, would show that Acceptance had entered into an illegal agreement with the other defendants. All of Plaintiffs' factual allegations involve State Farm individually, and the remaining allegations consist of unsupported legal conclusions. Plaintiffs' allegations only show that Acceptance, as a member of the automobile insurance industry, engages in behavior that is consistent with the behavior of other similarly situated market participants. Furthermore, Plaintiffs only allege that Acceptance has discouraged its insureds from dealing with Plaintiffs. These allegations are insufficient to state a cause of action for boycott, especially when Plaintiffs allege that Defendants are responsible for the majority of Plaintiffs' business.

## MEMORANDUM OF LAW

### I. STANDARDS GOVERNING A MOTION TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION.

When ruling on a Rule 12(b)(6) motion, "the court must view the allegations of the complaint in the light most favorable to the plaintiff." Id. (citing Scheuer v. Rhodes, 416 U.S. 232 (1947)). "In order to dismiss a claim under Rule 12(b)(6), the district court must find that the plaintiff can prove no set of fact which would entitle him to relief." Sofarelli v. Pinellas Cnty., 931 F.2d 718, 721 (11th Cir. 1991) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "The complaint must contain enough facts to make a claim for relief plausible on its face; a party must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Resnick v. AvMed, Inc., 693 F.3d 1317, 1324-25 (11th Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

01256718

## II. PLAINTIFFS' CLAIM FOR QUANTUM MERUIT SHOULD BE DISMISSED

The Complaint alleges that Plaintiffs "have performed valuable services and expended material resources with the reasonable expectation of payment/compensation for those services and materials." (Compl. ¶ 134). The nature of these services were repairs to vehicles owned by individuals insured by Defendants. (Compl. ¶ 134).

"Under Florida law, '[t]o satisfy the elements of quantum meruit, a plaintiff must . . . show that the plaintiff provided, and that the defendant assented to and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it.'" Babineau v. Fed. Exp. Corp., 576 F.3d 1183, 1194 (11th Cir. 2009) (alterations in original) (quoting W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc., 732 So. 2d 297, 305 (Fla. Dist. Ct. App. 1999)).

Plaintiffs allege that they performed work on vehicles insured by Acceptance and Acceptance paid them for the cost of these repairs. These allegations show that an express agreement existed between the parties. Pezold Air Charters v. Phoenix Corp., 192 F.R.D. 721, 725 (M.D. Fla. 2000) (listing the elements of a contract under Florida law). "[A] plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists." Ocean Communications, Inc. v. Bubeck, 956 So. 2d 1222, 1225 (Fla. Dist. Ct. App. 2007) (citing Kovtan v. Frederiksen, 449 So. 2d 1, 1 (Fla. Dist. Ct. App. 1984)). Because Plaintiffs allege that they have entered into agreements with Acceptance and received consideration for their work, they are barred from seeking additional compensation based upon a theory rooted in equity.

Plaintiffs are also alleging more than the simple underpayment of an agreement. They are alleging that Acceptance improperly colluded with other insurers to artificially depress the price of repairs, labor, and materials provided by Plaintiffs. (Compl. ¶ 103). Thus, the alleged wrong is not Acceptance's refusal to pay the price that Plaintiffs believe their services were worth, but Acceptance's alleged participation in a conspiracy to systematically deprive Plaintiffs of what their services were worth.

Counts Six and Seven of the Complaint allege that Acceptance's actions violated §1 of the Sherman Act, 15 U.S.C. § 1. A claim for quantum meruit is a claim for equitable relief, and a plaintiff cannot seek equitable relief when there is an adequate remedy at law. Bule v. Garda CL Southeast, Inc., 2014 WL 3501546 at *3 (S.D. Fla. July 14, 2014) ("Courts have addressed the concept of 'adequate remedy at law' in a variety of contexts and have held that the availability of monetary damages via an alternative claim demonstrates that adequate remedies at law exist.") (citing Martinez v. Weyerhauser Mortg. Co., 959 F.Supp. 1511 (S.D. Fla. 1996)). If Plaintiffs are able to properly allege and prove their allegations of a conspiracy in violation of the Sherman Act, then they will be entitled to damages. Early v. Bristol Mem'l Hosp., 508 F.Supp. 35, 37 (E.D. Tenn. 1980). ("If the defendants have in fact violated the Sherman Act, as is claimed by Dr. Early, then he is entitled to recover . . . three-fold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee. . . . This would appear to constitute an adequate remedy at law." (quoting 15 U.S.C. § 15)); see also American Honda Motor Co, Inc. v. Motorcycle Information Network, Inc., 390 F.Supp. 2d 1170, 1178 (M.D. Fla. 2005) ("The Defendants' quasi contract claim is predicated on the same set of allegations supporting their claims under FUTSA and FDUTPA. Accordingly, because an adequate remedy exists at law, the

Defendants have not stated a claim upon which relief may be granted for breach of contract implied in law (quasi contract, quantum meruit, or unjust enrichment).")

For the above-stated reasons, Plaintiffs' claim for quantum meruit should be dismissed with prejudice.

### III. PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT SHOULD BE DISMISSED

The Complaint alleges that each individual Plaintiff has done business with each individual Defendant over the course of several years. Complaint at ¶ 66. Plaintiffs repair automobiles insured by Defendants. (Compl. ¶¶ 64-66). Defendants, as automobile insurers, comprise the "vast majority of the Plaintiffs' business." (Compl. ¶ 76). Defendants have used their considerable influence to "improperly and illegally control and depress automobile damage repair costs to the detriment of the Plaintiffs and the substantial profit of the Defendants." (Compl. ¶ 67). Defendants have paid Plaintiffs for their services, but the Complaint alleges that the "market value" established by Defendants is artificially suppressed due to Defendants' wrongful conduct. (Compl. ¶¶103-04).

In Florida, a claim for unjust enrichment has three elements: (1) "the plaintiff has conferred a benefit on the defendant, who has knowledge thereof;" (2) "the defendant has voluntarily accepted and retained the benefit conferred;" and (3) "the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." Tooltrend, Inc. v. CMT Untensili, SRL, 198 F.3d 802, 805 (11th Cir. 1999).

The allegations of the Complaint, taken as true, show that an express agreement existed between Plaintiffs and Acceptance. Plaintiffs repaired vehicles; Plaintiffs and Acceptance negotiated; and Acceptance paid Plaintiffs for their services. Be it oral or written, these

allegations establish that an agreement was entered into between the parties. Pezold Air Charters, 192 F.R.D. at 725.

Plaintiffs cannot pursue a cause of action against Acceptance for unjust enrichment when the crux of the cause of action is the subject of an express agreement between the parties. Resnick v. AvMed, Inc., 693 F.3d 1317, 1332 (11th Cir. 2012) ("The complaint also fails to state a claim of unjust enrichment under Florida Law. 'Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.'") (quoting Diamond S Dev. Corp. v. Mercantile Bank, 989 So. 2d 696, 697 (Fla. Dist. Ct. App. 2008))); see also Valida, Inc. v. PDVSA Servs., Inc., 424 Fed. Appx. 862, 873 (11th Cir. 2011) ("[W]e find no error in the district court's decision to dismiss Bariven's counterclaims for unjust enrichment in Counts III and IV on the basis that these claims fail on the showing of an express contract.") Because Plaintiffs are seeking restitution for Defendants underpayment of monies controlled by agreements between the parties, Count II fails to state a cause of action upon which relief can be granted.

Plaintiffs allege that Acceptance has been unjustly enriched by a conspiracy entered into by Defendants to deflate the costs of repairs, labor, and materials. (Compl. ¶ 100-01) (The net effect of this tactic is to allow State Farm to manipulate the "market rate" and artificially suppress the labor rate for the relevant geographic area. . . . The remaining Defendants, intentionally and by agreement and/or conscious parallel behavior, specifically advised the Plaintiffs they will pay no more than State Farm pays for labor."). Plaintiffs seek the difference between the "market rate" that Acceptance has paid and the amount that they allege Acceptance would have been required to pay but for its illegal activity. Plaintiffs' theory is that if Acceptance were allowed to keep the difference, then it would be unjustly enriched.

01256718

Plaintiffs cannot pursue a claim for unjust enrichment for a harm allegedly caused by an illegal conspiracy. See Guyana Tel. & Tel. Co., Ltd. v. Melbourne Intern. Communications, Ltd., 329 F.3d 1241, 1249 n.3 (11th Cir. 2003) ("Here, because GT&T's right to restitution arises from the wrong of the tort committed by the conspiracy, this is a case of wrongful enrichment rather than unjust enrichment: the breach of a primary tort duty case gave rise to a secondary right to restitution for the benefit obtained through commission of the wrong."); accord State of Fla., Office of Atty. Gen., Dept. of Legal Affairs v. Tenet Healthcare Corp., 420 F.Supp.2d 1288, 1309 (S.D. Fla. 2005) ("Here, the Hospital Plaintiffs predicate their unjust enrichment claim on the wrongful conduct of Tenet in allegedly submitting inflated and improper costs. . . . recovery, if any, arises from the wrong of the alleged tort, which, if proven, might entitle them to damages, rather than unjust enrichment.").

Plaintiffs' right of recovery, if any, is based upon Defendants violation of § 1 of the Sherman Act, 15 U.S.C. § 1. See Mecker v. Honeywell Intern., Inc., 144 F.Supp.2d 1291, 1300 (M.D. Fla. 2001) ("Section one of the Sherman Act literally prohibits every contract, combination, or conspiracy in restraint of trade. . . .") (citing Standard Oil Co. v. United States, 221 U.S. 1 (1911))). While the Complaint suffers from additional pleading deficiencies regarding the sufficiency of facts alleged, at its core, the Complaint is seeking relief for Defendants' allegedly unlawful trade practices. Accordingly, Count II of the Complaint should be dismissed for failure to state a cause of action upon which relief can be granted. Titon v. Playboy Entertainment Grp., Inc., 2007 WL 80858 at *3 (M.D. Fla. Jan. 8, 2007) ("Plaintiff's right of recovery, if any, for the alleged wrongful conduct of Defendants arises from a violation of statutory law. Since the law of unjust enrichment is concerned solely with enrichments that are

unjust independently of alleged wrongs, Plaintiff's unjust enrichment claims must be dismissed." (citing Tenet, 420 F.Supp. 2d at 1309)).

For the above-stated reasons, Plaintiffs' claim for unjust enrichment should be dismissed with prejudice.

### IV. PLAINTIFFS' CLAIM FOR QUASI-ESTOPPEL SHOULD BE DISMISSED

Count III of the Complaint alleges that Defendants have "repeatedly and intentionally failed to abide by industry standards for auto repairs." (Compl. ¶ 105). The Complaint alleges that Defendants have acknowledged the "accepted position of the estimating databases within the industry, but have nonetheless engaged in a course of conduct of refusing to make full payment for procedures and materials." (Compl. ¶ 107). The Complaint alleges that these databases "are reliable starting points." (Compl. ¶ 106). The Complaint alleges that Defendants accept the databases position within the industry, but refuse "to make full payment for procedures and materials." (Compl. ¶ 107). The Complaint alleges that Defendants "selectively rely upon and assert the definitive nature of these databases when doing so is to their respective financial advantage." (Compl. ¶ 109).

Plaintiffs assert that this is an action for "quasi-estoppel." Quasi-estoppel bars a party from taking inconsistent positions during "the course of litigation or in dealings in pais." Hodkin v. Perry, 88 So. 2d 139, 140 (Fla. 1956) (citing Campbell v. Kauffman Milling Co., 29 So. 435 (Fla. 1900)); see also PACE Indus. Union-Management Pension Fund v. Dannex Mfg. Co., Inc., 394 Fed. Appx. 188, 200 (6th Cir. 2010) ("Quasi estoppel describes a situation in which an individual is not permitted to blow both hot and cold, taking a position inconsistent with prior conduct, if this would injure another, regardless of whether that person has actually relied thereon." (internal quotation marks omitted) (quoting Heuer v. Heuer, 702 A.2d 913, 918 (N.J.

01256718

1998))); <u>In re Old Cutters, Inc.</u>, 488 B.R. 130, 148-49 (Bankr. D. Idaho 2012) ("[Q]uasi-estoppel applies where it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced or of which he accepted a benefit." (internal quotations omitted) (quoting <u>Rinehart v. Fed. Nat'l Mortg. Assocs., et al. (In re Rinehart)</u>, 2012 WL 3018291 at *8 (Bankr. D. Idaho July 24, 2012))). It bars the adoption of mutually exclusive positions when it is convenient. E.g. <u>Hodkin</u>, 88 So. 2d at 139-40 (plaintiff could not vote for by-law, support its enforcement against other similarly situated persons, and then adopt contrary position when it was applied against him); <u>Campbell v. Kauffman Milling Co.</u>, 29 So. 435, 439 (Fla. 1900) (party could not seek monetary damages in one action and specific performance in another action when both were based upon the same harm). In Florida, the term has fallen out of favor, and is typically referred to as the "election of remedies."

The Complaint does not allege that Acceptance has taken any inconsistent positions during the course of its dealings with Plaintiffs. The Complaint does not allege that Acceptance informed Plaintiffs that the databases would be used to definitively set a price for repairs, labor, and materials. The Complaint only alleges that, when negotiating with Plaintiffs, Acceptance will sometimes use the databases to support its position that a price should be lower. The Complaint lacks any allegations that Plaintiffs are required to accept this assertion, as well as any allegations that they are barred from relying upon the databases when arguing that Acceptance's price does not accurately reflect the market rate. There is nothing unlawful about the fact that Acceptance gives databases more weight when they support its position. Accordingly, Plaintiffs' claim for quasi-estoppel should be dismissed with prejudice.

V. **PLAINTIFFS' CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS SHOULD BE DISMISSED**

Count IV of the Complaint alleges that Defendants have "engaged in malicious actions and a course of conduct designed to interfere with and injure the Plaintiffs' business relations and prospective business relations" by steering away customers from Plaintiffs' businesses. (Compl. ¶ 147). The Complaint also alleges that "[t]he vast majority of the Plaintiffs' business is generated by customers for whom the Defendants are responsible to pay repair costs." (Compl. ¶ 76).

These very allegations have already been held insufficient to constitute tortious interference with a business relationship. Gunder's Auto Center v. State Farm Ins., 617 F.Supp. 2d 1222 (M.D. Fla. 2009), aff'd 422 Fed. Appx. 819 (11th Cir. 2011). In Gunder's, the plaintiff was an automobile repair shop and the defendant was State Farm. Id. at 1223. The repair shop alleged that State Farm had steered its potential customers away by informing its insureds that the repair shop overcharged customers, performed substandard repairs, and failed to repair vehicles in a timely fashion. Id. Based upon these allegations, the repair shop sought relief and damages for State Farm's interference with a business relationship. Id. State Farm moved to dismiss the count for tortious interference, and the court granted its motion:

> State Farm argues for dismissal of Count II because the interfering defendant must be a stranger to the business relationship. The complaint alleges that State Farm obtained knowledge of the plaintiff's business relationship when one of the plaintiff's customer [sic] submitted a claim to State Farm. Even construed favorably to the plaintiff, the complaint alleges that State Farm interfered only with the plaintiff's customers who submitted claims to State Farm. Because State Farm must indemnify the plaintiffs [sic] customer for the repair performed by the plaintiff, State Farm is an interested party in the business relation between the plaintiff and those customers who are State Farm insureds. Accordingly, Count II fails to state a claim for tortious interference, and the motion . . . to dismiss is **GRANTED** with respect to Count II.

Id. at 1224-25. (internal citations and quotation marks omitted).

There is no meaningful distinction between Plaintiffs' claim for tortious interference in the instant case and the claim dismissed on the merits in Gunder's. Accordingly, Plaintiffs' claim for tortious interference with business relations should be dismissed with prejudice.

## VI. PLAINTIFFS' CLAIM FOR CONVERSION SHOULD BE DISMISSED

Count Five of the Complaint is a claim for conversion. (Compl. ¶¶ 150-52). The Complaint alleges that "Plaintiffs have performed necessary work and expended appropriate labor and materials for which Defendants have refused to make payment and\or full payment." Complaint at ¶ 150. The Complaint further alleges that Defendants are "wrongfully in possession of monies which should have been expended to pay repair bills of their policyholders and claimants and which rightfully belong to Plaintiffs as a result of Plaintiffs performing necessary, reasonable and customary repairs to vehicles." (Compl. ¶ 152).

"The essential element of conversion is wrongful deprivation of property to a person entitled to possession." Charter Air Center, Inc. v. Miller, 348 So. 2d 614, 616 (Fla. Dist. Ct. App. 1977) (citing Star Fruit Co. v. Eagle Lake Growers, Inc., 33 So. 2d 858 (Fla. 1948)). In order to state a claim for conversion, Plaintiffs must allege that Acceptance wrongfully deprived them of specific and readily identifiable monies:

> There is nothing in the nature of money as personal property which makes it an improper subject of conversion so long as it consists of specific money capable of identification. To be a proper subject of conversion each coin or bill need not be earmarked, but there must be an obligation to keep intact or deliver the specific money in question so that such money can be identified. Money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposition, or where the wrongful possession of such property is obtained. An example is where a specific sum of money is to be held in constructive trust until the occurrence of a specified event.

Belford Trucking Co. v. Zagar, 243 So. 2d 646, 648 (Fla. Dist. Ct. App. 1970).

01256718

The Complaint does not allege that Acceptance has deprived Plaintiffs of any specific amount of money related to any specific transaction. Instead, it alleges that Acceptance has participated in a system that has systematically forced repair shops to accept inadequate payments from insurers. This involves every transaction ever entered into between Plaintiffs and Acceptance. Plaintiffs are attempting to state a claim for conversion based solely upon the general damages they have allegedly suffered as a result of Acceptance's participation in a conspiracy. Plaintiffs are not seeking a readily identifiable sum of money that Acceptance has wrongfully deprived Plaintiffs of, but general damages for Acceptance's alleged underpayment for repairs.

[A] mere obligation to pay money, generally, may not be enforced by a conversion action.'" Adv. Surgical Tech., Inc. v. Automated Instruments, Inc., 777 F.2d 1504, 1507 (11th Cir. 1985) (quoting Douglas v. Braman Porsche Audi, Inc., 451 So. 2d 1038, 1039 (Fla. Dist. Ct. App. 1984)); Belford Trucking Co., 243 So. 2d at 649 ("In essence, plaintiff sought not damages for conversion of a specific, identifiable, stated sum of United States currency, but to enforce an obligation to pay money."); Indus. Park Dev. Corp. v. American Exp. Bank, FSB, 960 F.Supp. 2d 1363, 1366-67 (S.D. Fla. 2013) ("In order for money to be an appropriate subject for a conversion claim, there must be an obligation for the receiver to keep intact or deliver the specific money at issue."). Because Plaintiffs seek general damages for a multitude of wrongful acts, Count Five of the Complaint fails to properly allege a cause of action for conversion.

Additionally, the Complaint specifically states that the cause of action for conversion is based upon monies owed to Plaintiffs for the underpayment of bills Plaintiffs issued to Acceptance's customers. A plaintiff cannot substitute a claim for conversion for a breach of contract claim. Gasparini v. Pordomingo, 972 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2008) ("It is

01256718

well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft . . . the civil theft or conversion must go beyond, and be independent from, a failure to comply with the terms of a contract." (citations omitted)).

For the above-stated reasons, Plaintiffs' claim for conversion should be dismissed with prejudice.

### VII. PLAINTIFFS' CLAIM FOR VIOLATIONS OF THE SHERMAN ACT—PRICE-FIXING SHOULD BE DISMISSED

When alleging a violation of § 1 of the Sherman Act, 15 U.S.C. § 1, the plaintiff must allege sufficient facts showing that each defendant has entered into an illegal agreement. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). Allegations that defendants are acting in concert, unsupported by facts showing that an agreement has been made, are insufficient to establish a violation of §1:

> A statement of parallel conduct, **even conduct consciously undertaken**, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of "entitle[ment] to relief."

Id (alteration in original) (quoting DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 56 (1st Cir. 1999)).

A plaintiff cannot circumvent this rule by merely alleging that an agreement has been entered into. Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009) ("[T]he plaintiffs' assertion of an unlawful agreement was a ' "legal conclusion" ' and, as such, was not entitled to the assumption of truth." (quoting Twombly, 550 U.S. at 555)). Beyond alleging that an agreement exists, a

01256718

plaintiff must allege facts that, taken as true, would show that the defendants' behavior was not independent. Id.

In the instant matter, the crux of Plaintiffs' complaint is that State Farm has arbitrarily determined a "market rate" while the other defendants refuse to pay more than State Farm's "market rate." (Compl. ¶ 101) ("The remaining Defendants, intentionally and by agreement and/or conscious parallel behavior, specifically advised the Plaintiffs they will pay no more than State Farm pays for labor."). The Complaint does not contain any factual allegations showing that Defendants entered into an agreement with each other, only allegations that each defendant has individually informed Plaintiffs that they will pay no more than State Farm. Id. Taken as true, this would show that Defendants have engaged in parallel conduct. It would not, however, show that Defendants had agreed amongst themselves to set a roof upon the price they will accept for Plaintiffs' labor and services. Compare In re Delta/AirTran Baggage Fee Antitrust Litigation, 733 F.Supp. 2d 1348, 1361-62 (N.D. Ga. 2010) (denying motion to dismiss when plaintiffs alleged two major airlines used public earnings calls in order to reach an agreed-upon price for "first-bag fees") with In re Florida Cement and Concrete Antitrust Litigation, 746 F.Supp.2d 1291, 1310 (S.D. Fla. 2010) (granting motion to dismiss when plaintiffs' complaint only alleged that defendants adjusted their prices in order to follow the market leader).

Plaintiffs fail to allege a single act by Acceptance showing that it had entered into an agreement with another defendant in order to artificially suppress the cost of repairs. Plaintiffs merely allege that Acceptance pays the "market rate" for services. Plaintiffs do not allege that Acceptance dictates the market rate, nor do they allege that Acceptance has any power in determining the market rate. Refusing to pay higher prices for the same services does not constitute a violation of the Sherman Act:

01256718

> The fact that both companies occasionally write estimates at the same rate does not require a contrary result. After all, both defendants are attempting to assess prevailing market conditions, and it would not be surprising for each company on occasion to independently reach identical results. Even if we were to assume, however, that Allstate and State Farm somehow adhered to the same formula for calculating repair costs (nothing else being shown), there would be insufficient evidence here to establish the existence of concerted action or an antitrust conspiracy.

Quality Auto Body, Inc. v. Allstate Ins. Co., 660 F.2d 1195, 1200-01 (7th Cir. 1981).

Plaintiffs allege that State Farm is the market leader in Florida, issuing nearly one out of every five automobile insurance policies. With this amount of influence, State Farm has the capital to "call the tune." The Sherman Act is not violated when competitors look to the market leader and adjust their prices accordingly:

> Even if one assumes that similar prices on the lists do not simply reflect ordinary forces of competition at work among firms selling virtually identical products, the price lists still show no more than what defendants concede: that each firm, acting individually, copied the price list of the industry leader. A firm in a concentrated industry typically has reason to decide (individually) to copy an industry leader. After all, a higher-than-leader's price might lead a customer to buy elsewhere, while a lower-than-leader's price might simply lead competitors to match the lower price, reducing profits for all. One does not need an agreement to bring about this kind of follow-the-leader effect in a concentrated industry.

Clamp-All Corp. v. Cast Iron Soil Pipe Institute, 851 F.2d 478, 484 (1st Cir. 1988) (citing Areeda & D. Turner, Antitrust Law ¶¶ 1432-33 (1978)).

Accordingly, Plaintiffs' claims for price fixing in violation of § 1 of the Sherman Act should be dismissed for failure to state a cause of action upon which relief can be granted.

## VIII. PLAINTIFFS' CLAIM FOR VIOLATIONS OF THE SHERMAN ACT—BOYCOTT SHOULD BE DISMISSED

Count VII of the Complaint is a § 1 claim alleging a group boycott by Acceptance and the other defendants. (Compl. ¶¶ 162-69). Plaintiffs allege that Defendants have engaged in a boycott by steering customers away from Plaintiffs' businesses. (Compl. ¶ 163). Plaintiffs do not

allege that Defendants have actively barred customers from doing business with Plaintiffs, only that Defendants have used misinformation to discourage customers from doing business with Plaintiffs. (Compl. at ¶ 163).

"A group boycott under § 1 involves the 'pressuring [of] a party with whom one has a dispute by withholding, or enlisting others to withhold, patronage or services from the target.'" Aquatherm Indus., Inc. v. Florida Power & Light Co., 145 F.3d 1258, 1263 (11th Cir. 1998) (quoting St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531 (1978)). In order to properly plead a cause of action for group boycott under § 1, a plaintiff must allege that the defendants actually barred others from doing business with the plaintiff. Id.

An illegal boycott does not exist when customers are discouraged, but not actively barred, from doing business with another party. Id. ("[T]here is no allegation or evidence that FPL refused to allow participating contractors to buy or sell solar pool heaters. The act of offering 'enticements' to contractors falls considerably short of 'withholding, or enlisting others to withhold, patronage or services . . . .'" (quoting St. Paul Fire & Marine, 438 U.S. at 541)); Custom Auto Body, Inc. v. Aetna Cas and Sur. Co., 1983 WL 1873 at *19 (D. R.I. August 3, 1983) ("[P]laintiff remains free to compete with all other body shops on the same basis in attracting business of Aetna and its insureds. Individual insureds likely remain free to deal with plaintiff's shop by personally paying the additional amount charged by plaintiff. The restrictions on freedom to trade usually associated with group boycotts are thus wholly absent in this case."); Chick's Auto Body v. State Farm Mut. Auto. Ins. CO., 401 A.2d 722, 730 (N.J. 1979) ("The apparent contention here is that the difference between the insurance company's estimates and the prices charged by plaintiffs must be borne by the insureds, who, in order to avoid paying additional money, are diverted to those shops which will work at the prevailing rate. Therefore,

plaintiffs argue, defendants' conduct indirectly results in an unlawful boycott of their shops. However, such an argument has been expressly rejected as a matter of law." (citations omitted)).

Plaintiffs' claim for boycott also fails because it contains the same deficiencies as their claim for price fixing; Plaintiffs make no allegations which, if true, would show concerted action by Defendants. Absent any factual allegations showing that Defendants conspired to keep customers from using Plaintiffs' services, Plaintiffs have failed to state a cause of action for boycott under the Sherman Act. Workman v. State Farm Mut. Auto. Ins. Co., 520 F.Supp. 610, 623 (N.D. Cal. 1981) ([T]he lynchpin of an actionable group boycott under the antitrust laws is concerted action.").

Furthermore, Plaintiffs specifically allege that the lion's share of their business comes from Defendants' insureds. (Compl. ¶ 76). ("The vast majority of the Plaintiffs' business is generated by customers for whom the Defendants are responsible to pay repair costs. The insurance-paying customers account for between seventy and ninety-five percent of each shop's revenue."). If Plaintiffs are receiving the vast majority of their business from Defendants' insureds, then Defendants are not boycotting Plaintiffs. See Quality Auto Body, Inc. v. Allstate Ins. Co., 660 F.2d 1195, 1206 (7th Cir. 1981) ("We can find nothing . . . to support a claim amounting to a concerted refusal to deal. The uncontroverted facts establish that neither Allstate nor State Farm has ever refused to deal with Quality. On the contrary, a large portion of Quality's business is generated by defendants' policyholders and claimants.").

The Complaint does not allege that Defendants' insureds are barred from doing business with Plaintiffs; the Complaint contains no factual allegations showing that Defendants colluded to bar their insureds from doing business with Plaintiffs; and the Complaint alleges that Defendants receive a substantial amount of business from Defendants' insureds. For all of these

reasons, the Complaint fails to state a cause of action for boycott under the Sherman Act and should be dismissed with prejudice.

## CONCLUSION

Plaintiffs' Complaint fails to state a cause of action upon which relief can be granted. Plaintiffs impermissibly attempt to seek equitable relief for statutory claims, and, even if there were no statutory claims, their allegations are insufficient to satisfy the elements of their alleged causes of action. Furthermore, Plaintiffs' claims brought pursuant to § 1 of the Sherman Act, 15 U.S.C. § 1, fail because Plaintiffs only allege parallel conduct; Plaintiffs fail to allege any illegal agreement; and Plaintiffs allege that Acceptance is currently supplying them with a large amount of business. Accordingly, Acceptance has not engaged in any actions which would violate § 1 of the Sherman Act, 15 U.S.C. § 1, and this Court should grant Acceptance's Motion to Dismiss and find that Plaintiffs' Complaint is deficient as a matter of law.

Filed this 28th day of July, 2014.

/s/ Glen A. McClary
GLEN A. MCCLARY
Florida Bar No. 961477
BOYD & JENERETTE, P.A.
201 N. Hogan Street, Suite 400
Jacksonville, Florida 32202
904-353-6241
904-353-2863 (facsimile)
*Counsel for Acceptance Indemnity Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of July, 2014, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic filing generated by CM/ECF or in some other authorized matter for those counsel who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Glen A. McClary
ATTORNEY

01256718