**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION**

| | |
|---|---|
| A & E AUTO BODY, INC., *et al.*, | * |
| | * |
| PLAINTIFFS, | * |
| | * MDL Docket No. 2557 |
| v. | * |
| | * Case No. 14-cv-310-GAP-TBS |
| 21ST CENTURY CENTENNIAL | * |
| INSURANCE COMPANY, *et al.*, | * DISPOSITIVE MOTION |
| | * |
| DEFENDANTS. | * |

**MOVING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED
COMPLAINT WITH INCORPORATED MEMORANDUM IN SUPPORT**

## MOTION TO DISMISS

Defendants Hartford Accident and Indemnity Company; Hartford Underwriters Insurance Company; Direct General Insurance Company; Horace Mann Insurance Company; Mercury Insurance Company of Florida; National General Insurance Online, Inc.; Nationwide Mutual Insurance Company; Nationwide Insurance Company of Florida; Sentry Insurance a Mutual Company; Westfield Insurance Company; Windhaven Insurance Company; and Zurich American Insurance Company (collectively, "Moving Defendants"), bring this motion to dismiss the Second Amended Complaint ("SAC").

On February 21, 2014, Plaintiffs filed their original Complaint broadly alleging that all Defendants committed the same acts against all Plaintiffs. That Complaint was dismissed due to its failure to comply with basic pleading requirements including specifying who did what to whom. The Amended Complaint failed to correct those pleading deficiencies and was likewise dismissed.[1] The meager specificity of the Second Amended Complaint only serves to demonstrate that the individual Plaintiffs do not have claims against the Moving Defendants. The Second Amended Complaint fails to satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure; and it fails to allege a plausible cause of action under Rule 12(b)(6) for any of the Four Counts of the Second Amended Complaint.

---

[1] The Moving Defendants hereby incorporate by reference the arguments made in the various motions to dismiss the Amended Complaint. These briefs are Doc. 191, 192, 201, 204, 209-212, 215, 216, 235, 243, 249, 254, 270, 273, and 285-88. Moving Defendants also incorporate the arguments asserted in the Motions to Dismiss the Second Amended Complaint filed by all other Defendants.

In sum, Plaintiffs were given two full and fair opportunities after the original Complaint to cure these fundamental and fatal pleading deficiencies as to all Defendants, and they failed to do so.  Accordingly, the Moving Defendants respectfully request that the Second Amended Complaint be dismissed with prejudice.

## MEMORANDUM IN SUPPORT

This is the third Complaint filed in this year-old case. The first complaint (Doc. 1) was dismissed because it suffered from a "host of problems," including that, "with limited exceptions, the allegations of wrongdoing are attributed, collectively, to every Defendant and alleged to have been perpetrated upon every Plaintiff." (Doc. 110). This Court allowed Plaintiffs to re-plead on or before June 27, 2014.

Plaintiffs filed an Amended Complaint on June 28, 2014, which was substantively identical to the original Complaint, merely listing all Defendants by name instead of simply using the term "all Defendants." (Doc. 167). This Court dismissed the Amended Complaint. (Doc. 291, amended on January 22, 2015 (Doc. 293)). The Court held that the prior deficiencies of the Complaint remained, and additionally explained why each of the individual causes of action were not supported by the general allegations in the Amended Complaint. Recognizing that the term "Defendants" did not refer to all Defendants, the Court included this specific instruction in its Order: "The Plaintiffs should insure that their references to 'the Defendants' are, in fact, intended to encompass every single Defendant." Id. at 6. The Court allowed Plaintiffs to re-plead on or before February 10, 2015.

On February 11, 2015, Plaintiffs filed their Second Amended Complaint (Doc. 296). In the first two complaints, by broadly alleging that all Defendants committed the exact same acts against all Plaintiffs, Plaintiffs tried to conceal that they did not actually have facts to support the claims asserted by each of twenty (20) separate Plaintiffs against each of thirty-nine (39) separate Defendants. Now, without the

camouflage of generalized pleadings, it is apparent that Plaintiffs do not have – and never did have – specific factual allegations to support their claims against each of the Defendants.

While <u>some</u> of the twenty (20) Plaintiffs have added <u>some</u> factual allegations regarding <u>some</u> of the thirty-nine (39) Defendants, the Plaintiffs have failed to provide such factual allegations as to <u>all</u> Plaintiffs and <u>all</u> Defendants.  Furthermore, to the extent the Second Amended Complaint contains additional allegations, they are wholly immaterial.  As to the Moving Defendants, the Second Amended Complaint has not merely failed to correct the pleading deficiencies which caused the dismissal of the previous two complaints, the addition of some isolated facts shines a spotlight on the truth that Plaintiffs have no basis for their broad allegations by all Plaintiffs against all Defendants, or even one Plaintiff against any one of the Moving Defendants.  Therefore, the Second Amended Complaint should be dismissed with prejudice against the Moving Defendants.

The problems with the Second Amended Complaint fall into the following primary categories:

> 1.  The Second Amended Complaint fails to include any specific substantive allegations as to the Moving Defendants;
>
> 2.  The few additional price and "posted" rate allegations concerning some of the Moving Defendants do not show any agreement, much less an unlawful one;
>
> 3.  The allegations regarding membership in trade organizations are not evidence of any purported conspiracy; and

> 4.  The few divergent factual allegations in the Second Amended Complaint show that the Defendants are not acting uniformly or pursuant to any anticompetitive agreement.

The complete absence of any substantive allegations as to some Defendants, as well as the scant and immaterial allegations directed at other Defendants, require that the Second Amended Complaint be dismissed with prejudice as to the Moving Defendants.

## I.     THE SECOND AMENDED COMPLAINT IS NOT SUFFICIENTLY SPECIFIC AS TO THE MOVING DEFENDANTS

There are absolutely no allegations against the Moving Defendants regarding the State Law Claims of Tortious Interference or Quantum Meruit.  Even if shotgun pleadings and group labels were allowed – which they are not – there are no factual allegations to support these claims against any of the Moving Defendants.  Therefore, the State Law claims must be dismissed with prejudice.

Likewise, for the federal antitrust claims, there are no allegations supporting a claim of an agreement to fix prices or an agreement to boycott suppliers as to the Moving Defendants.  The following Moving Defendants are alleged to have done nothing more than to pay the same labor rate to four identified body shops during 2013:  The Hartford, Horace Mann, Mercury, National General, Nationwide, Sentry,[2] and Westfield.  SAC ¶¶ 171; 176-78 (Doc. 296).  Other Moving Defendants are alleged to have taken only one or two additional inconsequential acts: Nationwide

---

[2] The Second Amended Complaint erroneously identifies Sentry as part of the "Farmers" group of companies.  SAC ¶¶ 211, 407.  Since no such corporate relationship exists, the Farmers group allegations are irrelevant to Sentry, and this error casts further doubt on all generalized allegations as to the purported conduct of any Defendant.  SAC ¶¶ 126, 211-14, 248-49, 334, 353, 407.

(Id. ¶ 185) (plaintiffs were told they are the only shops trying to raise their rates) and (Id. ¶ 218) (only recently began paying for feather, prime and block); and Horace Mann (Id. ¶ 302) (delays in sending appraisers where liability is clear). Two of the Moving Defendants have no price allegations and are alleged only to have done the following: Direct General demands pictures of each stage of repairs (Id. ¶ 120) and Windhaven refuses to pay for denib and finesse (Id. ¶ 220). There are no allegations of any actions taken by Zurich directed at any Plaintiff. Therefore, the Sherman Act Claims against the Moving Defendants should be dismissed with prejudice.

A.  The State Law Claims for Tortious Interference with Business Relations and Quantum Meruit Must Be Dismissed.

Simply stated, there are no allegations in the Second Amended Complaint to support Plaintiffs' state law claims against any of the Moving Defendants. Although some other Defendants are singled out in a series of customer vignette allegations (SAC ¶¶ 266-91) (Doc. 296), there are no such allegations concerning the Moving Defendants. There is no mention of any of the Moving Defendants in Count Three (Tortious Interference) or Count Four (Quantum Meruit). Nor are there any shotgun allegations in other parts of the Second Amended Complaint that even arguably relate to these Counts. The lack of allegations, along with the substantive arguments made in the prior briefing described above (see note 1, supra), dictates dismissal of Counts Three and Four with prejudice as to the Moving Defendants.

B.  The Antitrust Claims Count I (Price Fixing) and Count II (Boycott)
<u>Are Insufficiently Pled As to the Moving Defendants.</u>

To state a claim under Section 1 of the Sherman Act, a plaintiff must allege:

(1) an agreement between two or more parties (2) that unreasonably restrains trade.

<u>Levine v. Cent. Fla. Med. Affiliates, Inc.</u>, 72 F.3d 1538, 1545 (11th Cir. 1996).  <u>See</u>

<u>also</u> <u>Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.</u>, 946 F. Supp. 2d

1321, 1328-29 (S.D. Fl. May 9, 2013) ("Both § 1 and § 2 conspiracy claims 'require

the same threshold showing – the existence of an agreement to restrain trade.'")

(quoting <u>Todorov v. DCH Healthcare Authority</u>, 921 F.2d 1438, 1460, n. 35 (11th

Cir.1991)).

With respect to both Sherman Act claims (price fixing and boycott), the

Second Amended Complaint contains absolutely no allegation as to any of the

Moving Defendants entering into any agreement to fix prices or to boycott suppliers.

That was a fatal defect in the prior complaints, and it has not been corrected.  <u>See</u>

Order at 17 (Doc. 293) (stating that Plaintiffs' allegations "fall far short" of alleging

enough factual matter, taken as true, to suggest that an agreement was made).

Further, undermining any suggestion of agreed-upon parallel action, the Second

Amended Complaint does not allege that the Moving Defendants:  1) engaged in

improper "steering;" 2) made disparaging remarks about any shop; 3) refused to deal

with any shop; or 4) changed their price in concert with that of any other Defendant.

Indeed, the few allegations directed at other Defendants make it clear that there are

no such allegations regarding the Moving Defendants.  <u>See e.g.</u>, SAC ¶¶ 218, 224,

261-291, 321-347 (Doc. 296).  The maxim of statutory construction "expressio unius

est exclusio alterius" is compelling in its logic here – the addition of some facts as to certain Defendants by certain Plaintiffs only serves to highlight the failure to plead such facts as to the Moving Defendants. <u>See, e.g.</u>, <u>Henry v. Lipford</u>, No. 5:12–cv–34–RS–GRJ, 2013 WL 1799009, at *2 (N.D. Fla. Mar. 22, 2013) (on Second Amended Complaint, dismissing claims against two defendants due to failure to state specific facts as to those defendants, but allowing one claim to go forward as to third defendant), <u>report and recommendation adopted</u>, 2013 WL 1799033 (N.D. Fla. Apr. 29, 2013). To be clear, the Moving Defendants in no way suggest that the few scattered allegations leveled against those other Defendants are sufficient to support a cause of action against any of them.[3] The absence of such allegations as to the Moving Defendants, however, exposes the absolute failure of the amended pleading as to the Moving Defendants.

The only factual allegations added in the Second Amended Complaint regarding the Moving Defendants are legally irrelevant and are wholly insufficient to save this repeatedly-dismissed complaint. The Second Amended Complaint alleges that <u>some</u>, but not all, of these Moving Defendants have these attributes:

- Some, but not all, are alleged to have certain market share percentages in Florida in 2012 (SAC ¶¶ 76,77) (Doc. 296);

- Some, but not all, used DRP programs at some point, which are "not in and of themselves a problem" (<u>Id.</u> ¶¶ 126, 130) (but there are no allegations of any improper steering as to these Defendants);

---

[3] The allegations against State Farm, GEICO, Progressive, Farmers, Infinity, USAA, Allstate, Travelers and Florida Farm Bureau shall be addressed by those Defendants separately.

- Some, but not all, paid $42 per hour for body labor to four (4) shops in 2013 (Id. ¶¶ 171-73, 176-78);

- Different Moving Defendants used one of three different estimating repair databases (Id. ¶¶ 197-200); and

- Some, but not all, Moving Defendants are members of "at least one of three major insurance industry trade associations" (Id. ¶¶ 352-76).

These vague allegations do nothing to nudge Plaintiffs' antitrust claims across the line to state a plausible claim against the Moving Defendants. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). For example, simply having a DRP program is not unlawful; and there are no allegations of improper steering or refusal to deal as to the Moving Defendants. Likewise, alleging that some, but not all, Moving Defendants paid $42 per hour to four shops in 2013 is not evidence of an antitrust agreement. And there is no allegation of any of the Moving Defendants agreeing to a refusal to deal. Therefore, the Sherman Act claims against the Moving Defendants should be dismissed with prejudice.

II.     THE SECOND AMENDED COMPLAINT'S ALLEGATIONS FAIL TO SHOW ANY UNLAWFUL AGREEMENT

Aside from the lack of specificity, even the facts plaintiffs do allege have no relevance to their claims. The pricing allegations do not show any anti-competitive agreement; their "posted" rate allegations are meaningless; their allegations regarding membership in various trade organizations are irrelevant; and their remaining disparate allegations affirmatively demonstrate there is no agreement among the defendants. Plaintiffs' claims should be dismissed.

A.    The Price Allegations Do Not Show Any Anti-Competitive Agreement.

The price allegations of the Second Amended Complaint leveled against selected Defendants are wholly inadequate to infer any type of agreement among the Defendants.  The Sherman Act prohibits an agreement among competitors to fix prices in a relevant market.  The Sherman Act does not prohibit competitors from independently paying the same market price to suppliers.

Here, the Second Amended Complaint alleges that twenty-two (22) out of thirty-nine (39) Defendants paid a labor rate of $42 per hour as to four (4) body shops in Palm Harbor in 2013.  SAC ¶ 168-71 (Doc. 296).  The Second Amended Complaint also alleges that some – but not all – Defendants paid $42 per hour for labor in 2013 to four body shops in Central Florida.  Only nine (9) of the Moving Defendants are identified as having paid $42 per hour.  See id. ¶¶ 171, 176-78.  The Second Amended Complaint does not allege that all Defendants paid $42 per hour to all twenty (20) Plaintiff shops – or to all shops throughout Florida.  Indeed, there are no allegations regarding the prices charged or received by seventeen (17) of the twenty (20) named Plaintiffs.  The allegations regarding payments made to four shops (three named Plaintiffs plus Ideal Auto), at some point in 2013, do nothing to show any type of agreement to fix prices.

Even if Plaintiffs alleged the same price for all shops in some relevant geographic market – which they have not – that would still not show or plausibly suggest an agreement.  Rather, healthy competition would result in price convergence.  See In re Graphics Processing Antitrust Litig., 527 F. Supp. 2d 1011,

1022 (N.D. Cal. 2007) ("We must remember that competitive market forces will tend to drive the prices of like goods to the same level, so like prices on like products are not, standing alone, sufficient to implicate price-fixing."). <u>See also</u> <u>Quality Auto Body, Inc. v. Allstate Ins. Co.</u>, 660 F.2d 1195, 1205 (7th Cir. 1981) ("the practice of the insurance companies to calculate the reimbursement for its insured based upon the lowest prevailing price in the market place (and to insure the integrity of that estimate by having an open list of competing shops which will generally accept it) is the very essence of competition.") (<u>quoting</u> <u>Chick's Auto Body v. State Farm Mutual Auto. Ins. Co.</u>, 168 N.J. Super. 68, 87 (1979)). This Court has already stated "[i]t is not illegal for a party to decide it is unwilling to pay a higher hourly rate than its competitors have to pay, and the fact that a number of the Defendants made statements to that effect does not tip the scales toward illegality." Order at 18 (Doc. 293).

Nor is it surprising that these insurance companies, who are in the market buying repair services on a daily basis, would have a very good idea of the prices at which various shops are willing to perform work. Beyond their daily negotiations, the insurers have knowledge of various rates accepted by shops through their own DRP relationships: "The vast majority of major insurers created DRPs over the years . . . ." SAC ¶ 126 (Doc. 296). The Second Amended Complaint also discloses that Plaintiff Stewart was a DRP shop for both State Farm and Progressive for portions of 2013-14. <u>Id.</u> ¶¶ 317-18. Likewise, A&E was a DRP shop for GEICO, State Farm, and Liberty Mutual for all or a portion of 2013-14. <u>Id.</u> ¶¶ 336. And Express was a

GEICO DRP shop for the first few months of 2013.  Id. ¶ 313.  Accordingly, it makes sense that these carriers, as well as "the vast majority of major insurers [which had] created DRP's"  (Id. ¶ 126), would know what rates these shops were accepting in 2013.  None of this supports a plausible inference of collusion or agreement.

While Plaintiffs allege generally that Defendants paid the same $42 per hour rate, Plaintiffs also allege that State Farm and GEICO (and some unnamed, "other Defendant insurers") raised their rates to $44 per hour.  Id. ¶ 182.  Again, there are no specific allegations regarding any of the Moving Defendants.  Vague and generalized group allegations that "[t]he Defendants all raise their 'market rates' within days of State Farm" (Id. ¶ 416) are contrary to this Court's Orders demanding that such allegations be made with specificity.  See Orders dated June 11, 2014 (Doc. 110) and January 22, 2015 (Doc. 293).[4]  Indeed, this broad, generalized allegation is undercut by the allegation that:  "Other [unnamed] Defendant insurers [but not "all"] decided the market rate was $44 per hour within the following thirty days."  SAC ¶ 182 (Doc. 296).

Nor would a price change show collusion if competitors were forced to raise the price they must pay for services in order to keep up with competition. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1311 (11th Cir. 2003) (rejecting as

---

[4] Further, improperly lumping together all "Defendants", which this Court has twice told Plaintiffs is improper and grounds for dismissal, remains a pervasive issue in this Second Amended Complaint. As a continuing example, in paragraph 189 of the Second Amended Complaint Plaintiffs broadly assert that, "[t]he Defendant insurers have over the course of years exerted their combined market share power to refuse payment or full payment for repair processes and procedures required to return vehicles to pre-accident condition."  That generalized allegation against all Defendants rests on the factually unsupported inference that the Defendants have agreed to use their "combined market share power."  Without factual allegations showing an agreement, the antitrust claims fail.

a plus factor competitors following price increases, as it was in the economic interests of the competitors to do so).  Moreover, the insurers, which are in the market on a daily basis, would not need to collude to learn of a competitor's price movement.  They would quickly learn about it from their own negotiations in the market.  Indeed, it would be the body shops that received higher rates from State Farm and GEICO that would loudly trumpet such price information to all other insurance companies and demand the same, higher rate.

     B.     <u>Four "Posted" Rates are Irrelevant.</u>

Out of this entire 448-paragraph complaint, the twenty (20) named Plaintiffs provide the posted rate of only four (4) identified body shops: 1) Premier Paint and Body in Fort Walton Beach, $44 per hour (SAC ¶ 176) (Doc. 296); 2) Express Paint and Body in Lakeland, $48 per hour (<u>Id.</u> ¶ 179); 3) C&C Automotive in Cocoa Beach, $46 per hour (<u>Id.</u> ¶ 178); and 4) non-party Ideal Auto in Palm Harbor, $48 - $52 per hour (<u>Id.</u> ¶ 168).  There are no allegations regarding any rates posted for any other Plaintiff or for any other body shop throughout all of Florida.[5]

The Second Amended Complaint never explains why the "posted rate" is relevant or meaningful.  In fact, it is not.  A body shop's posted rate is as meaningless as the "sticker price" in a car dealer's showroom.  While that might be the price at which the seller would like to sell, it is not the actual, negotiated sale price at which sales are made.  And that is the only price that has relevance and meaning.  <u>See</u> <u>Quality Auto Body</u>, 660 F.2d at 1204 ("the insurer's refusal to pay

---

[5] The Second Amended Complaint does allege that two of three, unnamed body shops in Palm Harbor had posted rates of $44 per hour. SAC ¶168.  There is no allegation regarding Plaintiff North Bay Auto, which is alleged to be doing business in Palm Harbor, Florida.  <u>Id.</u> ¶ 26.

more than the prevailing competitive rate is not illegal.").  Moreover, the Complaint says nothing about what other competing shops were <u>actually</u> <u>charging</u> at the time. Why would any insurer pay $44 per hour for labor if these four shops, as well as other shops would do the same job for $42 per hour?  Likewise, why would any buyer agree to pay Ideal Auto $52 per hour to fix a European car when Plaintiff Premier Paint posts a price of $44 per hour for all cars – and actually does the work for $42 per hour?  Indeed, each time a body shop agrees to take on a new job at $42 per hour – regardless of its "posted rate" – that body shop is, in effect, setting the actual market price.[6]

### C.  Mere Opportunities to Conspire Do Not Demonstrate Any Alleged <u>Agreement.</u>

Plaintiffs allege that there have been numerous "opportunities for Defendants to conspire", citing trade association memberships for some of the Moving Defendants.  <u>See</u> SAC ¶¶ 352-76 (Doc. 296).  These bare allegations, however, are insufficient to demonstrate any alleged agreement among the Defendants:

---

[6] Nor has the Second Amended Complaint placed these isolated prices in the context of any meaningful and consistent geographic market from which to infer any agreement.  At times, the Second Amended Complaint refers to a market for the entire State of Florida (SAC ¶¶ 75, 79, 80) (Doc. 296); various "metropolitan areas as well as discrete areas of a given state, such as Florida." (<u>Id.</u> ¶ 174); "across the entire central portion of the State" (<u>Id.</u> ¶ 175-79); "across vast geographic areas of the State of Florida" (<u>Id.</u> ¶ 414); and the city limits of Palm Harbor, Florida. (<u>Id.</u> ¶¶ 168-71) Yet, by choosing to allege only the rates paid to a handful of selected body shops in Palm Harbor, Fort Walton Beach, Lakeland, and Cocoa Beach, the Plaintiffs would have this Court infer a massive price-fixing scheme.  <u>See</u> <u>Thompson v. Metropolitan Multi-List, Inc.</u>, 934 F.2d 1566, 1573 (11th Cir. 1991) (stating that the Supreme Court has explained that the concept of a geographic market is essentially an economic concept in which the courts should examine 'supplier-customer relations' and that 'The goal is to determine how economic actors function in terms of where buyers seek supplies and sellers seek purchasers.'").  Here, not only do Plaintiffs fail to identify the various competitors who compete for sales in any particular market, Plaintiffs fail to allege anything beyond the prices "posted" by only four identified body shops.

> The class posits that PM, RJR, B&W and Lorillard enjoyed numerous opportunities to conspire, and that this supports their collusion claim. We unambiguously held in Todorov, however, that "the mere opportunity to conspire among antitrust defendants does not, standing alone, permit the inference of conspiracy." 921 F.2d at 1456 (citing Bolt v. Halifax Hosp. Med. Ctr., 891 F.2d 810, 827 (11th Cir.1990), overruled in part on other grounds by City of Columbia v. Omni Outdoor Adver., 499 U.S. 365, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991)). Indeed, the opportunity to fix prices without any showing that appellees actually conspired does not tend to exclude the possibility that they did not avail themselves of such opportunity or, conversely, that they actually did conspire. Appellants may not rely on this proposition to support their allegations in this case.

Williamson Oil, 346 F.3d at 1319. These allegations regarding diverse trade association memberships do nothing to show an agreement.

> D. The Disparate Allegations of the Second Amended Complaint Militate Against an Agreement.

Plaintiffs' overall allegations show differences rather than any agreement to act uniformly. For example, not all carriers use the same estimating databases; some use CCC, some use Mitchell, and others use ADP/Audatex. See SAC ¶¶ 197-200 (Doc. 296). Only twenty-two (22) out of the thirty-nine (39) defendants paid $42 per hour as a labor rate to four (4) body shops in Palm Harbor in 2013 (and, as argued above, paying the same rate does not substantiate Plaintiffs' claims). Out of thirty nine (39) Defendants, the Second Amended Complaint identifies only twenty (20) companies that have DRP shops. Id. ¶ 126. "Not all DRP's are poor repair facilities, not even most. Most are honorable, hardworking and professional collision repairers." Id. ¶ 129. Some Defendants are alleged to have engaged in isolated

instances of "steering" (Id. ¶¶ 261-320), but there are no such allegations as to

others. So too, Plaintiffs allege that some Defendants made false or disparaging

statements (Id. ¶¶ 261-92), but there is no such allegation regarding other

Defendants. Some (State Farm and GEICO) raised prices (Id. ¶ 182), while no

others are specifically identified as having done so.

The specific allegations leveled against a few Defendants underscore the fact

that not all Defendants are taking uniform action. For example, Direct General and

Allstate, alone, are alleged to demand photos at stages of repair. Id. ¶¶ 120, 122.

There is no allegation that any other insurer does the same. Some insurers – but

not others – are alleged to have told Plaintiffs that they are "the only shop" seeing a

price increase. Id. ¶ 185. Only the Farmers Defendants are alleged to use "NuGen

IT" software for inspections. Id. ¶ 211. Yet the Second Amended Complaint says

nothing about other insurers doing the same. According to the Second Amended

Complaint, "Defendants State Farm, Progressive and USAA . . . refused to pay" for

feather, block and prime procedure; but "GEICO and Nationwide" are alleged to be

"paying for this procedure . . . ." . Id. ¶¶ 218-19. The Second Amended Complaint

says nothing about the other insurers paying, or not paying, for feather, block, and

prime procedures. So too, the Second Amended Complaint alleges that some

insurers pay for denib and finesse, while others do not. Id. ¶¶ 220. These

numerous alleged differences between the Defendants cut against any inference of

agreement. It is fundamental that the variations alleged by Plaintiffs undermine their

assertion of collusion. See, e.g., In re Baby Food Antitrust Litig., 166 F.3d 112, 132

(3d Cir. 1999) (affirming summary judgment where the facts "refute rather than support" plaintiffs' allegations of parallel conduct). <u>See also</u> <u>In re Beef Indus. Antitrust Litig.</u>, 907 F.2d 510, 514 (5th Cir. 1990) ("When an antitrust plaintiff relies on circumstantial evidence of conscious parallelism to prove a § 1 claim, he must first demonstrate that the defendants' actions were parallel. The cattlemen have not done this.") (citations omitted); <u>Aviation Specialties, Inc. v. United Technologies Corp.</u>, 568 F.2d 1186, 1192 (5th Cir. 1978) (plaintiff "brought forth no evidence of parallel behavior suggesting an unlawful agreement.").

III.    THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

Plaintiffs have no right to file yet another Complaint. "The district court . . . need not 'allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." <u>Corsello v. Lincare, Inc.</u>, 428 F.3d 1008, 1014 (11th Cir. 2005). Here, all three of these rationales for dismissal with prejudice are met.

First, this is already the third iteration of the Complaint in less than a year, and this Court has already provided clear instructions to the Plaintiffs as to how to cure their pleading deficiencies. They have ignored, or cannot comply with, this Court's direction. Second, allowing a further amendment to this Complaint would unduly prejudice the Moving Defendants, as they have been forced to incur the expenses of defending this litigation for over a year without seeing any specific,

substantive factual allegation against them. Finally, any amendment as to the Moving Defendants would clearly be futile, as Plaintiffs obviously have no specific allegations against the Moving Defendants, or else they would have included them in the Second Amended Complaint. Indeed, Plaintiffs previous allegations of all Defendants performing the exact same acts as to all Plaintiffs, have now been shown to have been baseless. Thus, the Second Amended Complaint should be dismissed as to the Moving Defendants with prejudice. See, e.g., Aquatherm Industries, Inc. v. Florida Power & Light Co., 145 F.3d 1258, 1264 (11th Cir. 1998) (affirming dismissal with prejudice because "we conclude Aquatherm can prove no set of facts in support of its claims which would entitle it to relief under the federal antitrust laws "); In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig., No. 3:12–cv–3515–B, 2014 WL 5460450, at *6 (Oct. 27, 2014 N.D. Tex.) (denying leave to amend because "[l]ike before, an obvious alternative narrative of innocent, business-driven behavior is, at minimum, equally likely to explain the OTA Defendants' parallel activities re-cast in the [second amended complaint]."); Ivanovic v. Overseas Mgmt. Co., No. 11-80726-CIV, 2011 WL 5508824, at *4 (S.D.Fla., Nov. 09, 2011) ("As Plaintiff fails to . . . satisfy basic federal pleading standards, the Amended Complaint must be dismissed as to all eight moving Defendants for failure to state a claim. Such dismissal should be with prejudice because Plaintiff has already once been granted an opportunity to amend and it is apparent that any further amendment would be futile.").

## CONCLUSION

For the reasons set forth herein it is requested that this Court issue an Order dismissing the Second Amended Complaint herein against Moving Defendants with prejudice and granting Moving Defendants such other and further relief as this Court deems just and proper.

Dated March 4, 2015                    Respectfully submitted,

By: /s/ Thomas G. Rohback             /s/ E.K. Cottrell

J. Suzanne M. Lehner                  E.K. Cottrell (Fla. Bar No: 0013579)
Florida Bar No.: 002368               EMAIL: ecottrell@sgrlaw.com
QUINTAIROS, PRIETO,                   SMITH, GAMBRELL & RUSSELL, LLP
WOOD & BOYER P.A.                     50 N. Laura Street, Suite 2600
4905 West Laurel Street               Jacksonville, FL 32202
Tampa, Florida 33607                  Telephone: (904) 598-6100
Telephone: (813) 286-8818             Facsimile: (904) 598-6300
Facsimile:  (813) 286-9998            Attorneys for Defendant, Sentry Insurance A
Suzanne.lehner@qpwblaw.com            Mutual Company

Thomas G. Rohback
(*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
Phone: (860) 275-8100
Facsimile: (860) 275-8101
trohback@axinn.com

Attorneys for Defendants Hartford
Accident and Indemnity Company and
Hartford Underwriters Insurance
Company

/s/ Michael H. Carpenter              /s/ John J. Haggerty
Michael H. Carpenter                  John J. Haggerty, Esq.
Michael N. Beekhuizen                 Fox Rothschild, LLP
Peter T. Snow                         2700 Kelly Road, Suite 300

Carpenter Lipps & Leland LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
(614) 365-4100 telephone
(614) 365-9145 facsimile
carpenter@carpenterlipps.com
beekhuizen@carpenterlipps.com
snow@carpenterlipps.com

Mark J. Botti
Squire Patton Boggs (US) LLP
1200 19th Street, N.W., Suite 300
Washington, District of Columbia 20036
(202) 626-6600 telephone
(202) 626-6780 facsimile
mark.botti@squirepb.com

Andrew R. Kruppa, Florida Bar No.
63958
Kimberly J. Donovan, Florida Bar No.
16496
Squire Patton Boggs (US) LLP
200 South Biscayne Boulevard,
Suite 4700
Miami, Florida 33131
(305) 577-7000 telephone
(305) 577-7001 facsimile
andrew.kruppa@squirepb.com
kimberly.donovan@squirepb.com

Attorneys for Defendants Nationwide
Mutual Insurance Company and
Nationwide Insurance Company of
Florida

Warrington, PA 18976
Telephone: (215) 345-7500
Facsimile: (215) 345-7507
jhaggerty@foxrothschild.com

Attorneys for Defendant Westfield Insurance
Company

/s/ Seth A. Schmeeckle
Seth A. Schmeeckle, Trial Counsel
Louisiana Bar No. 27076
Lugenbuhl, Wheaton, Peck, Rankin
& Hubbard, A Law Corp.
601 Poydras Street, Suite 2775
New Orleans, LA 70130

 s/ Peter Baumberger
PETER S. BAUMBERGER, ESQ.
Florida Bar No.: 117803
JENNIFER REMY-ESTORINO, ESQ.
Florida Bar No.: 013877
KUBICKI DRAPER, PA
25 West Flagler Street, Penthouse

Telephone: (504) 568-1990
Fax: (504) 310-9195
sschmeeckle@lawla.com

and

Marjorie M. Salazar
Florida Bar No. 0939021
Lugenbuhl, Wheaton, Peck, Rankin
& Hubbard, A Law Corp.
815 Walker St., Suite 1447
Houston, TX 77002
Telephone: (713) 222-1990
Fax: (713) 222-1996
msalazar@lawla.com

ATTORNEYS FOR DEFENDANTS
HORACE MANN INSURANCE
COMPANY

Miami, Florida 33130
Direct Line: (305) 982-6713
Facsimile No.: (305) 374-7846
PSB@kubickidraper.com
JR@kubickidraper.com
PSB-KD@kubickidraper.com

Attorneys for Direct General Insurance
Company & Windhaven Insurance
Company

/s/ Rosemary Wilder
Rosemary B. Wilder
Fla. Bar No. 442615
rwilder@marlowadler.com
tchowloon@marlowadler.com
/s/ Karl Sturge
Karl E. Sturge
Fla. Bar No. 911526
ksturge@marlowadler.com
acuevas@marlowadler.com
Attorneys for Defendant, Nat'l General
Ins. Online, Inc.
MARLOW ADLER ABRAMS NEWMAN
& LEWIS
4000 Ponce de Leon Blvd., Suite 570
Coral Gables, FL 33146
(305) 446-0500 Telephone
(305) 446-3667 Facsimile

/s/ Thomas W. Curvin
Thomas W. Curvin (Ga. Bar No. 202740)
Amelia Toy Rudolph (Fla. Bar No. 0057015)
Patricia A. Gorham (Fla. Bar No. 0049861)
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, Georgia 30309-3996
404.853.8000 (T)
404.853.8806 (F)
tom.curvin@sutherland.com
amelia.rudolph@sutherland.com
patricia.gorham@sutherland.com

Attorneys for Defendant
Zurich American Insurance Company

BUTLER PAPPAS WEIHMULLER KATZ
CRAIG LLP

/s/ Kathy J. Maus

KATHY J. MAUS, ESQ.
Florida Bar No.: 0896330
kmaus@butlerpappas.com
JULIUS F. PARKER III, ESQ.
Florida Bar No.: 0160857
jparker@butlerpappas.com
Secondary:
eservice@butlerpappas.com
3600 Maclay Blvd., Suite 101
Tallahassee, Florida 32312
Telephone:   (850) 894-4111
Facsimile:    (850) 894-4999
Attorneys For:
MERCURY INSURANCE COMPANY OF
FLORIDA

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of March, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

/s/ Thomas G. Rohback
Thomas G. Rohback
(*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
Phone: (860) 275-8100
Facsimile: (860) 275-8101
trohback@axinn.com