# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

---

A & E AUTO BODY, INC., *et al.*,

                Plaintiffs,

v.

21ST CENTURY CENTENNIAL INSURANCE
COMPANY, *et al.*,

                Defendants.

**Case No. 6:14-MD-02557-GAP-TBS**

**RE: No. 6:14-CV-00310-GAP-TBS**

DISPOSITIVE MOTION

---

## <u>GEICO GENERAL INSURANCE COMPANY'S<br>MOTION AND SUPPORTING MEMORANDUM TO DISMISS<br>SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Over a year ago,[1] Plaintiffs filed their initial Complaint alleging essentially the same causes of action they continue to assert against various auto insurance companies, including GEICO General Insurance Company ("GEICO"). They have spent that year trying, in vain, to demonstrate that their allegations support valid claims. Despite this Court outlining the fundamental defects in their pleadings twice, and despite having had a full year to remedy these obvious defects, Plaintiffs' Second Amended Complaint ("SAC") still fails to make allegations against GEICO that are anywhere close to sufficient to state a valid legal claim. *See* June 11, 2014 Order ("June 2014 Order") (Doc. 110); January 22, 2015 Order ("January 2015 Order") (Doc. 293); Fed. R. Civ. P. ("Rule") 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*"); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("*Iqbal*"). Specifically, Plaintiffs have not addressed the following deficiencies:

1. ***Plaintiffs, on their third try, do not plead plausible facts about GEICO that support their allegations.*** Plaintiffs have demonstrated, three separate times, they cannot support their claims with sufficient factual allegations *against GEICO* to meet the standards outlined by the U.S. Supreme Court in *Twombly* and *Iqbal*.

2. ***Plaintiffs continue to ignore this Court's direction that they must plead plausible allegations that support each of their claims against GEICO (rather than against the "Defendants").***[2] Plaintiffs again leave it to GEICO and this Court to wade through 80 pages of rambling and often group-pled allegations to attempt to decipher what GEICO is alleged to have done and which factual allegations are intended to support which claims by which Plaintiff, in direct violation of Rules 8(a) and 9(b), and this Court's Orders.[3]

---

[1] Plaintiffs filed their initial Complaint on February 24, 2014 (Doc. 1), First Amended Complaint on June 28, 2014 (Doc. 167), and Second Amended Complaint on February 11, 2015 (Doc. 296).

[2] To highlight the confusing nature of the SAC, it refers to at least two "Plaintiffs" that are not named plaintiffs in this action and never have been. "Plaintiff Ideal Auto Body" or "Plaintiff Ideal Auto" is not in the caption or the listing of "Parties" at the beginning of the SAC, but somehow appears in paragraphs 84, 108, 116, 168, 170, 186, 187, 224, 237, 247, 276, 302. "Plaintiff Premier Paint and Body" appears for the first and only time in Paragraph 176.

[3] Plaintiffs, for example, failed to abide by this Court's Order that they identify which Plaintiffs have DRP relationships with which Defendants, instead asserting this issue is now irrelevant despite their 60-plus references to such agreements. Plaintiffs also again attached the 1963 Consent Decree to the SAC even though this Court expressly held that "none of the parties in this case were parties to the 1963 case, and the Court does not find the 1963 consent decree to have any relevance to the instant case." January 2015 Order at 4, n.6; *accord Mosley v. GEICO Ins. Co.*, Cause No. 3:13CV161-LG-JCG, 2014 WL 7882149, at *2, n.2 (S.D. Miss. Dec. 16, 2014) ("[P]laintiffs have not demonstrated how they would have standing to enforce the Consent Decree, or that

-1-

3. **Plaintiffs do <u>not</u> and <u>cannot</u> allege facts sufficient to demonstrate the existence of an agreement, let alone a conspiracy, or that GEICO was a party to any agreement in support of their antitrust claims.**

    a. *Plaintiffs continue to rely on alleged parallel conduct that "fails to bespeak unlawful agreement."* In dismissing the FAC, this Court held that the conduct alleged in the SAC in support of Plaintiffs' antitrust claims tends to prove that GEICO is acting out of its own economic self-interest rather than because of an agreement to fix prices with competitors.

    b. *Plaintiffs added allegations that disprove their claims, rather than demonstrating parallel behavior or an agreement and conspiracy.* The SAC confirms that Defendants (including GEICO) have their own unique systems for estimating, each arising from and motivated by their own economic self-interest, promoting competition.

    c. *Plaintiffs fail to plead a conspiracy to participate in a group boycott.* Plaintiffs also have not alleged that GEICO has agreed to any type of group boycott of, or concerted refusal to deal with, Plaintiffs, instead continuing to allege that GEICO actually deals with Plaintiffs.

4. **Plaintiffs fail to allege facts tending to prove any of the required substantive elements of their antitrust claims.** The rule of reason applies to Plaintiffs' antitrust claims, but, in addition to conspiracy and joining the conspiracy, Plaintiffs fail to allege, at a minimum, the following substantive rule of reason elements: product/service market, geographic market, market power, barriers to entry, anticompetitive effects, how anticompetitive effects outweigh procompetitive benefits and injury from anticompetitive effects.

5. **Plaintiffs fail to allege facts demonstrating any interference with an "actual and identifiable understanding or agreement" or "improper methods" as required to support their tortious interference claims.** Plaintiffs have not alleged facts sufficient to demonstrate tortious interference, likely because none exist.

6. **Plaintiffs fail to allege facts tending to prove they have conferred a benefit on Defendants or that they had a reasonable expectation of payment that would support a quantum meruit claim.** Plaintiffs still do not allege they conferred a benefit on GEICO; the SAC merely rephrases the allegations in the FAC. Plaintiffs also continue to fail to allege they had a reasonable expectation of payment from GEICO when they knew what GEICO was willing to pay and performed work anyway, defeating their *quantum meruit* claim.

Plaintiffs' failure to fix these clear deficiencies in their pleadings a full year after the

Initial Complaint was filed, and after two dismissal orders entered by this Court, mandates

---

any of the defendants were parties to that litigation or are otherwise bound by the Consent Decree. Moreover, the Consent Decree was entered by the United States District Court for the Southern District of New York, and this Court would not have jurisdiction to enforce it.").

dismissal again—this time with prejudice. This case is a waste of this Court's valuable time and resources, particularly since Plaintiffs' own counsel admits they anticipated the deficiencies in their Complaint leading to dismissal.[4] Plaintiffs amply demonstrate that they cannot allege facts against GEICO that would support a claim, and their SAC should be dismissed again, this time with prejudice.

This Motion is supported by the Memorandum below.

## I. PLAINTIFFS FAIL TO ALLEGE PLAUSIBLE FACTS IN SUPPORT OF THEIR CLAIMS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level." January 2015 Order at 7 (citing *Twombly*, 550 U.S. at 555). A complaint is insufficient if it offers "only labels and conclusions." *Iqbal*, 556 U.S. at 678. The Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Id*. Here, Plaintiffs' SAC should be dismissed with prejudice because the claims are supported by nothing more than labels, conclusory statements, threadbare recitals of the elements of the causes of action and facts that do not state a plausible claim for relief or come anywhere near to raising a right to relief above the speculative level.

## II. GROUP REFERENCES TO "DEFENDANTS" AND "PLAINTIFFS" ARE IMPROPER

Plaintiffs may not plead in the "common" or "group;" rather, Plaintiffs must adequately connect specific defendants to the acts they are alleged to have committed. *See*

---

[4] *See* Stacey Phillips, *Antitrust Multidistrict Litigation in FL Motions Granted in Part and Denied in Part*, Autobody News (January 23, 2015), http://autobodynews.com/2014-07-31-03-39-53/industry-news/item/9474-updateonantitrustmultidistrictlitigationinfl.html ("John Eaves . . . the lead lawyer . . . said this was not a surprise. 'We anticipated [the dismissal],' said Eaves. 'This is what was done the first time we filed a complaint in Florida. My interpretation is that [Judge Presnell] wanted a lot more of the actual facts and details in the complaint… instead of something so general.'").

June 2014 Order at ¶ 4 (holding some of Plaintiffs' claims required individualized allegations); *Pierson v. Orlando Reg'l Healthcare Sys., Inc.,* 619 F. Supp. 2d 1260, 1271-74 (M.D. Fla. 2009) *aff'd,* 451 F. App'x 862 (11th Cir. 2012) (holding that the lumping together or "[t]he grouping of Defendants . . . does not afford these Defendants fair notice of the basis for the claims against them," particularly in situations where the role of each Defendant in the conduct at issue is not described). When a plaintiff fails to make specific allegations about a defendant the claims are not plausible and fail as a matter of law. *Id.* at 1273; *see also Synergy Real Estate of SW Florida, Inc. v. Premier Prop. Mgmt. of SW Florida, LLC*, No. 2:11-CV-707- FTM-29, 2012 WL 4009534, at *2 (M.D. Fla. Sept. 12, 2012) (holding that "indiscriminately lumping 'defendants' together" fails to comply with Rule 8). While the SAC includes some specific allegations as to GEICO, it remains replete with generalized allegations about the "Defendants" and "Plaintiffs" collectively. Plaintiffs fail to correct this fatal deficiency.

Plaintiffs allege, for example, "Plaintiff body shops have done business at various times over the course of years with the Defendants' policyholders and claimants by providing to these policyholders and claimants motor vehicle collision repair services." SAC ¶ 69. Whether each Plaintiff has ever done any business with any of GEICO's policyholders and claimants is not alleged in the SAC. Similarly, the SAC's discussion of DRPs fails to identify which Plaintiffs have DRP agreements with which Defendants, *see*, *e.g.*, ¶ 129, but instead discusses what "many" or "some" insurers do, and provides limited specific alleged examples, attributing the alleged conduct of one Defendant to all Defendants. *See* SAC ¶¶ 125-136. Plaintiffs continue to attempt to mask the gaping holes in their theories of liability with the term "Defendants."

## III. PLAINTIFFS' PURPORTED FEDERAL ANTITRUST CLAIMS DO NOT ALLEGE A PLAUSIBLE CONSPIRACY – OR ANY CONSPIRACY – INVOLVING GEICO

### A. Plaintiffs Do Not Allege Any Facts That Plausibly Suggest Any Agreement To Conspire To Achieve An Unlawful Objective

In addition to alleging a conspiracy, to fulfill their pleading requirement regarding the alleged conspiracy, Plaintiffs must allege facts showing that:

1. GEICO knew about the alleged conspiracy and its unlawful objective;

2. GEICO intended to join the alleged conspiracy; and

3. GEICO acted in a manner that was interdependent with – not independent of – the other Defendants in that GEICO's conspiratorial benefits depended on the success of the overall conspiracy.

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Communications, Inc.,* 376 F.3d 1065, 1078 (11th Cir. 2004) (stating elements of conspiracy).

Just like the FAC, Plaintiffs' SAC does not allege any plausible facts tending to prove a conspiracy existed or that GEICO knew about, intended to join or acted in a manner interdependent with an unlawful conspiracy. *See* January 2015 Order at 17 ("To start with, aside from conclusory allegations that it exists, the Plaintiffs offer no details at all in the Amended Complaint about the alleged agreement, such as how the Defendants entered into it, or when."). Plaintiffs were directed by this Court, as instructed by the Supreme Court in *Twombly*, to allege facts tending to prove "the challenged anticompetitive conduct 'stem[s] from . . . an agreement, tacit or express'" with competitors and not from independent decisions. January 2015 Order at 16 (quoting *Twombly*, 550 U.S. at 553). "To prove an agreement to restrain trade, a plaintiff must demonstrate a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement. To adequately plead that such an agreement exists requires allegations plausibly suggesting – not merely consistent with – agreement." January 2015 Order at 20 (internal citation omitted); *see also Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984) (ruling that pleading a Section 1 claim requires plaintiff to establish agreement between two or more persons to restrain trade – unilateral or independent conduct is not actionable); *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (where claim is implausible and makes no economic sense, more persuasive evidence than otherwise necessary is required).

Plaintiffs' allegations that GEICO joined any purported conspiracy are also inadequate. First, there are no allegations that GEICO knew of the purported conspiracy's general scope or purpose; Plaintiffs fail to allege GEICO ever discussed or heard about the purported conspiracy. *See* SAC ¶¶ 363, 408, 411, 413-18 (alleging Defendants generally engaged in the putative conspiracy, but *not* alleging facts tending to prove GEICO knowingly or intentionally joined the purported unlawful conspiracy, or acted interdependently with the purported coconspirators). Second, Plaintiffs allege no facts tending to prove GEICO's purported intent to advance the unlawful purpose of the purported conspiracy. *See id.*; January 2015 Order at 20. Third, Plaintiffs do not allege GEICO and any of the Defendants took a single interdependent act for a common purpose. January 2015 Order at 20. As with the FAC, the only fair reading of Plaintiffs' SAC is that GEICO did nothing whatsoever, or, if it acted, GEICO acted entirely independent of the other Defendants. *See id.* at 18-20. In sum, Plaintiffs' allegations of a conspiracy are conclusory at best, and any allegations that GEICO knowingly and intentionally joined a conspiracy are nonexistent.

Plaintiffs' SAC continues to rely on allegations of parallel conduct that this Court has already rejected. January 2015 Order at 17 ("[S]tating a claim under § 1 of the Sherman Act requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made."); *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1361 (10th Cir. 1989) (failure to "identify the alleged conspirators, when or how they functioned, or the nature and extent of [the defendant's] participation in the alleged conspiracy" warranted dismissal of complaint for failure to "state a claim of horizontal price-fixing"). And Plaintiffs concede that their allegations rest on alleged "***parallel actions*** [] and/or explicit agreement . . .

."[5]  SAC ¶ 411 (emphasis added).  The SAC fails to allege GEICO acted in response to anything other than perfectly lawful motivations.

### B.   Plaintiffs Do Not Allege Plausible Facts That Support "Plus Factors" From Which This Court Could Infer An Agreement

To support their antitrust claims, Plaintiffs' allegations of conscious parallelism "must be placed in a context that raises a suggestion of a preceding agreement . . . ." *Twombly*, 550 U.S. at 557; January 2015 Order at 17.   For this Court to infer the existence of an agreement in violation of §1, Plaintiffs must allege plausible facts to support the existence of meaningful "plus factors."  *See* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1433(e) (2d ed. 2000) ("plus factors" refer to "the additional facts or factors required to be proved as a prerequisite to finding that parallel action amounts to a conspiracy"); *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1301 (11th Cir. 2003) (stating that the plus factors "remove [ ] evidence from the realm of equipoise and render that evidence more probative of conspiracy than of conscious parallelism").  For a fact to qualify as a "plus factor," the existence of the fact must "tend to exclude the possibility of independent action." *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1456 n.30 (11th Cir. 1991).  To the extent Plaintiffs attempt to rely on the existence of "plus factors," these alleged "facts" tend to prove the parties acted in their own economic self-interest and therefore fail to permit an inference of illegal conspiracy.

Plaintiffs continue to allege some Defendants: (1) change the price they are willing to reimburse their claimants for repairs at similar times; (2) attend some of the same conferences; (3) adhere to similar pricing structures for repairs; (4) uniformly promote the use of non-OEM parts; and (5) boycott non-DRP shops and non-compliant DRP shops.  SAC ¶¶ 167, 182, 352-63, 422-33.  However, this Court has already determined that these same

---

[5] Notwithstanding Plaintiffs' conclusory reference to explicit agreements, they do not allege a single fact tending to prove that GEICO actually reached an agreement with any other Defendant about anything alleged in the SAC.

Defendants, under substantively similar allegations, were acting in a manner perfectly *consistent with independent, procompetitive behavior*. January 2015 Order at 18 ("It is not illegal for a party to decide it is unwilling to pay a higher hourly rate than its competitors have to pay. . . ."); *id.* at 17 n.11 ("The fact that State Farm and unnamed members of the 'insurance industry' meet regularly does not suggest that any Defendant insurance company entered into a price-fixing agreement.").

The Defendants' pricing strategies are not a meaningful "plus factor" because this conduct would absolutely occur outside the context of illegal conspiracies. Healthy competition often results in price convergence. *See In re Graphics Processing Antitrust Litig.*, 527 F. Supp. 2d 1011, 1022 (N.D. Cal. 2007) ("[C]ompetitive market forces will tend to drive the prices of like goods to the same level, so like prices on like products are not, standing alone, sufficient to implicate price-fixing."); *Quality Auto Body, Inc. v. Allstate Ins. Co.*, 660 F.2d 1195, 1205 (7th Cir. 1981) ("[T]he practice of the insurance companies to calculate the reimbursement for its insured based upon the lowest prevailing price in the market place (and to insure the integrity of that estimate by having an open list of competing shops which will generally accept it) is the very essence of competition.").

Viewed independently, GEICO has every reason to pay only the lowest price(s) the market will bear, to refuse to match prices it views as too high, or to pay more for services in order to keep up with competition. *See Williamson Oil*, 346 F.3d at 1311 (rejecting as a plus factor competitors following price increases, as it was in the economic interest of the competitors to do so); *Todorov*, 921 F.2d at 1456 n.30 (where alleged violators *acted in favor of their own independent economic interests*, the meaningful plus factors threshold could not be met).

GEICO's alleged participation in trade associations, the IIHS or CAPA does not constitute "an overt act more consistent with some pre-arrangement for common action than with independently arrived-at decisions." Areeda & Hovenkamp, *Antitrust Law* ¶ 1416, at

103; *see also In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 910 (6th Cir. 2009) ("[A] mere opportunity to conspire does not, standing alone, plausibly suggest an illegal agreement because [defendants'] presence at such trade meetings is more likely explained by their lawful, free-market behavior."). Plaintiffs allege no parallel conduct which allegedly arose out of these meetings, or even that all Defendants attended any such meeting. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 349 (3d Cir. 2010) (affirming dismissal where "neither defendants' membership in the CIAB, nor their common adoption of the trade group's suggestions, plausibly suggest conspiracy"). GEICO's participation in trade associations is perfectly consistent with its own economic interest and procompetitive behavior.

Plaintiffs' assertion that GEICO engaged in an overt act consistent with a pre-arranged agreement by following State Farm's rate increase "in mid-2014" also does not rise to the level of a meaningful plus factor. SAC ¶ 182. The body shops would surely trumpet to other insurers that State Farm (who they allege is the leader) is paying them more so other insurers will pay more too. That GEICO and State Farm both recognized a change in the market rate around the same time is in no way indicative of any conspiracy, and Plaintiffs fail to allege any facts giving rise to a context that might even permit that inference.[6]

      **C.**     **Plaintiffs Fail To Actually Allege Parallel Conduct By The Defendants**

Plaintiffs' SAC actually demonstrates that Defendants estimating practices are not parallel at all. For instance, Plaintiffs' concede Defendants do not all use the same repair-estimating databases. SAC ¶¶ 197-200. Plaintiffs' SAC describes, sometimes in great detail, the Defendants' widely varied process for estimating repairs. *See, e.g., id.* ¶ 201 (alleging Infinity uses independent adjusters); ¶ 211 (alleging Farmers has gone to a desk review process for all repairs); ¶¶ 217-18 (alleging GEICO and Nationwide have begun paying for

---

[6] Likewise, Plaintiffs' allegation that GEICO tells body shops not to raise their rates is also perfectly consistent with GEICO's own independent economic interests. *See Compl.* ¶¶ 185-87; *Todorov*, 921 F.2d at 1456 n.30.

feather, prime and block); ¶¶ 219-20 (alleging Defendants refusing to pay for denib and finesse include State Farm, Progressive, 21st Century, GEICO, Windhaven and Travelers). Far from demonstrating parallel behavior, the substance of Plaintiffs' SAC actually demonstrates that Defendants have their own unique procedures for estimating repairs and that their decisions regarding market rates arise from their own independent, procompetitive economic concerns.

> **D.** **Plaintiffs Do Not Allege Plausible Facts Suggesting An Agreement To Refuse To Deal With Plaintiffs; Rather, They Allege Defendants Continue to Deal With Plaintiffs**

Plaintiffs must allege facts plausibly suggesting Defendants engaged in a concerted refusal to deal with them. January 2015 Order at 21 (finding that "the Amended Complaint does not set forth a 'concerted refusal to deal,'" and that "[t]he Plaintiffs offer even less 'evidence' of an agreement to boycott than they did of an agreement to fix prices"). The factual allegations Plaintiffs added to the SAC, however, demonstrate the opposite – the Defendant insurers, including GEICO are still reimbursing their insureds and claimants for repairs performed by Plaintiffs' shops. *See*, *e.g.*, SAC ¶ 282 (alleging Peggy Morrison took her car to A&E, the shop of her choice); ¶ 284 (alleging third party claimant Daniel Brickner took his vehicle to A&E, the shop of his choice); ¶¶ 315-16 (alleging GEICO continued to reimburse insureds and claimants for repairs performed at Express' shop). The SAC continues to allege that the "Defendants 'steer[] customers away' by badmouthing shops that seek to charge higher prices," but "there is no allegation that any Defendant refused to allow any of its insureds to obtain a repair from such a shop or refused to pay for repairs performed at such a shop." January 2015 Order at 21.

Plaintiffs Express and A&E each allege that they chose to disassociate from GEICO by removing themselves from GEICO's DRP. SAC ¶¶ 313-16, 336.[7] Express alleges this

---

[7] GEICO does not have DRPs as alleged and defined in the SAC. This Motion nevertheless accepts the SAC's DRP allegations as true.

-10-

resulted in a decrease in revenue related to repairs for GEICO insureds and claimants.  SAC ¶ 315.  This result follows Express' request to no longer be listed as "a preferred provider" for GEICO.  *See* SAC ¶ 131 (alleging DRPs are listed as "a preferred provider").  A&E alleges its choice to disassociate resulted in GEICO advising its insureds and claimants not to take their vehicles to A&E.  SAC ¶ 336.  Clearly it is in GEICO's own independent economic interest to advise its insureds and claimants not to take their vehicles to shops that do not want to be associated with GEICO and it says nothing about concerted action.

> ### E. Factual Support For Plaintiffs' Conspiracy Theory Is Non-Existent, Mandating Dismissal

*Twombly* recognized that "it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive."  550 U.S. at 558.  To prevent prolonged and costly discovery in antitrust cases, the Supreme Court limited the range of inferences that can be drawn at the pleading stage from allegations of parallel conduct.  *See id*. at 559-60.  "[I]t is only by taking care to require allegations that reach the level suggesting a conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence to support a § 1 claim."  *Id*. (citations omitted).  GEICO should not be required to defend itself in a long and protracted litigation when Plaintiffs have not even cited a single fact tending to prove a conspiracy or tending to prove that GEICO joined in any alleged conspiracy.  At its core, the only result consistent with the dictates of the rules of procedure and due process is dismissal.

## IV. PLAINTIFFS FAIL TO ALLEGE THE REQUIRED SUBSTANTIVE ELEMENTS OF THEIR ANTITRUST CLAIMS

Plaintiffs' SAC makes **zero** effort to cure the FAC's pleading deficiencies with respect to the elements of the alleged antitrust violation.  For this reason alone, the two antitrust claims should be dismissed with prejudice.

Count One of the SAC is subject to the rule of reason because Plaintiffs do not allege facts tending to prove the alleged conduct is the type of hard core pricing conduct subject to the *per se* illegal test. *See Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006) (explaining the rule of the reason is the presumptive standard); *Cha-Car, Inc. v. Calder Race Course, Inc.*, 752 F.2d 609, 613 (11th Cir. 1985) ("The *per se* doctrine should not be extended to restraints of trade that are of ambiguous effect; any departure from the rule of reason standard must be based upon demonstrable anticompetitive economic effect, rather than formalistic line drawing."). Boycott claims are also subject to the rule of reason when plausible justifications exist, as it does regarding Plaintiffs' Count Two. *Nw. Wholesale Stationers, Inc. v. Pac. Stationary & Printing Co.*, 472 U.S. 284, 295-97 (1985);[8] *Leegin Creative Leather Prods., v. PSKS, Inc.*, 551 U.S. 877, 881-82 (2007); *Am. Needle v. Nat'l Football League*, 560 U.S. 183, 202-04 (2010).[9] Plaintiffs allege no facts justifying a departure from the rule of reason.

In addition to the elements of conspiracy and joining the conspiracy, discussed above, Plaintiffs fail to allege facts in support of the following substantive elements of the rule of reason:

1. A product or service market relevant for antitrust purposes;

2. A geographic market relevant for antitrust purposes;

3. Market power in the relevant product/service and geographic markets;

4. Barriers to entry;

5. Wrongful conduct resulting in anticompetitive effect (*i.e.*, conduct that raises prices above competitive levels, suppresses payments below competitive levels, or suppresses output below competitive levels);

6. The anticompetitive effects outweigh the pro-competitive benefits;

7. Antitrust injury or standing (*i.e.*, plaintiff has suffered injury caused by the anticompetitive conduct); and

---

[8] The Supreme Court applied the rule of reason to a group boycott because it "would seem to be designed to increase economic efficiency and render markets more, rather than less, competitive" by, among other things, reducing costs. 472 U.S. at 295 (internal quotation marks omitted). The same is true here. Plaintiffs allege that the purpose of the alleged group boycott is to reduce costs, by capping the maximum prices paid. SAC ¶¶ 128, 184, 188, 414.

[9] *See also*, *United States v. Am. Exp. Co.*, 21 F. Supp. 3d 187, 194 (E.D.N.Y. 2014) (acknowledging that a boycott in the form of steering can have a procompetitive effect in certain circumstances).

8.　　Damages.

*See, e.g.*, *Image Technical Servs., Inc. v. Eastman Kodak, Inc*., 125 F.3d 1195, 1202 (9th Cir. 1997) ("*Kodak*"); *Levine v. Cent. Florida Med. Affiliates, Inc*., 72 F.3d 1538, 1552-55 (11th Cir. 1996) (stating the rule of reason test more generally); *Lakeland Reg'l Med. Ctr., Inc. v. Astellas US LLC,* No. 8:10-CV-2008-T-33TGW, 2011 WL 3035226, at *9-10 (M.D. Fla. July 25, 2011) (same); *Spanish Broad. Sys. of Fla.,* 376 F.3d at 1071-72 (same).

## A.　　No Plausible Facts Supporting a Product/Service Relevant Market

Plaintiffs must allege plausible facts that tend to prove a relevant product or service market that amounts to the "commodities reasonably interchangeable by consumers for the same purpose." *See*, *e.g.*, *Moecker v. Honeywell Int'l, Inc*., 144 F. Supp. 2d 1291, 1302-03 (M.D. Fla. 2001) (quoting *U.S. v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956)); *Levine*, 72 F.3d at 1552. A relevant market includes all existing firms that would compete in the event of a small but significant, non-transitory price increase. *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 995 (11th Cir. 1993). Whether Plaintiffs intend the alleged product market to be auto collision repair or auto insurance is unclear. *See* SAC ¶¶ 75, 391 (alleging Defendants hold over ninety percent of the auto insurance market and that auto collision repair is an identifiable market). Plaintiffs plead no facts to support that either of their alleged "markets" are a relevant product or service market.

## B.　　No Plausible Facts Supporting a Relevant Geographic Market

Plaintiffs must allege plausible facts tending to prove a relevant geographic market. *Jacobs v. Tempur-Pedic Int'l, Inc*., 626 F.3d 1327, 1336 (11th Cir. 2010). A relevant geographic market is the geographic area of effective competition, including firms that would enter in the event of a price increase. *See, e.g.*, *Standard Oil Co. v. United States*, 337 U.S. 293, 299 n.5 (1949); *Thompson v. Metro. Multi-List, Inc.*, 934 F.2d 1566, 1573 (11th Cir. 1991) (explaining a geographic market is essentially an economic concept in which the courts

should examine supplier-customer relations with the goal of determining "how economic actors function in terms of where buyers seek supplies and sellers seek purchasers").

Plaintiffs' SAC refers to the entire State of Florida, metropolitan areas and "discrete areas" within Florida, "vast geographic areas" of Florida and even the world and Canada without ever explaining why any of these varied areas might be considered a relevant geographic market. *See* SAC ¶¶ 67, 75, 79, 80, 174, 414. Establishing a relevant geographic market is entirely Plaintiffs' burden, and Plaintiffs do not meet this burden. *See*, *e.g.*, *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 626-27 (5th Cir. 2002) (affirming dismissal under Rule 12(b)(6) for failure to plead a plausible relevant geographic market, finding "the economic significance of a geographic area does not depend upon singular elements such as population, income, ***political boundaries***, or geographic extent, but rather upon the relationship between these elements and the characteristics of competition in the relevant product market within a particular area") (emphasis added) (internal quotation marks omitted).

### C. Plaintiffs' Market Share Allegations Are Immaterial under *Twombly and Iqbal*

Under the rule of reason, Plaintiffs must allege that the putatively conspiring Defendants have market power in a properly-alleged relevant market. *See*, *e.g.*, *Levine*, 72 F.3d at 1538, 1551; *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1073. High market share – absent proper market definition – does not tend to prove market power and is inconsequential. Fed. R. Evid. 104(b), 401; *see Cont'l Airlines v. United Airlines*, 277 F.3d 499, 509 (4th Cir. 2002) (absent market power in a relevant market, any purported restraint of trade does not implicate §1 of the Sherman Act). Plaintiffs allege no facts tending to prove market power. Plaintiffs' "market share" allegations relate to the "private passenger auto liability market," and provide no insight into Defendants' alleged market power in the alleged "auto collision repair" market, if that even were an alleged product market. *See* SAC ¶¶ 75-78.

### D.    No Allegations of Barriers to Entry

Plaintiffs' failure to allege barriers to entry in the relevant market is yet another reason Counts One and Two fail. *See, e.g.*, *Levine*, 72 F.3d at 1551, 1555; *Moecker*, 144 F. Supp. 2d at 1308. A barrier to entry is any market feature capable of constraining the normal operation of a relevant market to the extent the relevant market is unlikely to be self-correcting over time. *Kodak*, 125 F.3d at 1208. But, if the purported barrier to entry does not prevent self-correction over time, then the claimant's antitrust claim fails. *Id.* To allege barriers to entry, Plaintiffs must also allege facts tending to prove that new competitors (or existing competitors with excess capacity) seeking to enter the relevant market face high market barriers to entry. *See, e.g.*, *id.* at 1207-08; *Lockheed Martin Corp. v. Boeing Co.*, 390 F. Supp. 2d 1073, 1078, 1079, n.6 (M.D. Fla. 2005).

Plaintiffs' failure to allege barriers to entry is incurable in this instance. Assuming, *arguendo*, the market is the automobile insurance market, Plaintiffs fail to plead barriers to entry because they concede over 50 companies already provide automobile insurance in Florida. SAC ¶¶ 75-76, Ex. 1. Alternatively, assuming the market is the auto repair market, 22,878 motor vehicle repair shops are registered as "active" with the Florida Department of Agriculture and Consumer Services. *See* Florida Department of Agriculture and Consumer Services, *License/ Complaint Lookup*, Motor Vehicle Repair (*last visited* March 4, 2015, 4:27 PM), https://csapp.800helpfla.com/CSPublicApp/BusinessSearch/BusinessSearch.aspx; Fla. Admin. Code Ann. r. 5J-12.002 (requiring all persons who operate a motor vehicle repair shop to obtain a registration certificate from the state). Obviously, if barriers to entry were high, so many companies could not be providing auto insurance and repair services in Florida.

### E.    No Allegation that the Purported Restraints, Even If True, Result in Anticompetitive Effects and that the Anticompetitive Effects Outweigh the Procompetitive Benefits

In Count One, Plaintiffs fail to allege how the particular pricing conduct (*i.e.*, ensuring lower prices) might be anticompetitive. *See, e.g.*, *Aspen Skiing v. Aspen Highlands Skiing*

*Corp.*, 472 U.S. 585, 602 (1985); *Levine*, 72 F.3d at 1551 ("Rule of reason analysis requires the plaintiff to prove [ ] an anticompetitive effect of the defendant's conduct on the relevant market . . . ."). The anticompetitive effects element cannot be met by simply alleging a restraint – particularly when that restraint is merely lower prices. Low prices rarely raise antitrust concerns but, instead, are precisely the type of conduct the antitrust laws are designed to promote. *See, e.g.*, *Matsushita Electric*, 475 U.S. at 594. Low prices typically indicate competition, not the lack of it. *See, e.g.*, *id.* Yet here, as alleged, the purported pricing conduct is efficiency-enhancing and lowers costs used to set premiums charged to consumers. SAC ¶¶ 128, 184, 188, 414.

Indeed, while Plaintiffs conclusorily and implausibly allege that "Defendants' actions have caused a complete eradication of competition within the body shop industry," SAC ¶ 73, there are 22,856 motor vehicle repair shops currently registered as "active" with the Florida Department of Agriculture and Consumer Services. Even if limited to the alleged Plaintiffs and unnamed DRPs, Plaintiffs' "complete eradication of competition" allegation is ludicrous.

In Count Two, Plaintiffs allege a boycott of them – as suppliers, not competitors, of the Defendants. In *Northwest Wholesale Stationers,* the Supreme Court held that a group boycott "does not necessarily imply anticompetitive animus and thereby raise a probability of anticompetitive effect." 472 U.S. at 296. Since that decision, courts closely scrutinize group boycott allegations for the adequacy of anticompetitive effects allegations. The Supreme Court held that rule of reason, as opposed to *per se*, analysis applies to agreements by buyers "to purchase goods and services from one supplier rather than another," even when there is "no legitimate business reason for that purchasing decision." *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998).

The SAC repeatedly alleges a strong ***procompetitive*** benefit – lower prices – and that the purpose of the alleged boycott was to ensure these lower prices. SAC ¶¶ 128, 184, 188, 414. Because Plaintiffs do not allege cognizable anticompetitive effects, Plaintiffs have not

adequately alleged that the procompetitive benefits are outweighed by anticompetitive effects. *Nw. Wholesale Stationers*, 472 U.S. at 295-96.

F.    **Plaintiffs Have Not Adequately Alleged Antitrust Injury**

Plaintiffs must show an "antitrust injury" to have standing to bring a Sherman Act claim.  *See*, *e.g.*, *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 540-43 (1983).  Because the antitrust laws protect competition and not competitors, many injuries – including direct injuries – suffered by plaintiffs are not cognizable under the antitrust laws.  *See*, *e.g.*, *id.; Tucci v. Smoothie King Franchises, Inc.*, 215 F. Supp. 2d 1295, 1299-300 (M.D. Fla. 2002) ("The purpose of the Sherman Antitrust Act is to protect competition, not individual competitors."); *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1413 (7th Cir. 1989) ("The Sherman Act protects competition, not competitors, and does not reach conduct that is only unfair, impolite, or unethical.").  Plaintiffs must allege more than mere conclusory statements that they suffered injuries from the anticompetitive effects of purported restraints, and not simply injuries from Defendants' alleged goal of paying lower prices.  Plaintiffs fail to do so.  *See* SAC ¶¶ 419-20.

V.    **PLAINTIFFS' TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP CLAIM (COUNT THREE) FAILS**

As a threshold matter, Plaintiffs' tortious interference claim must be dismissed under *Twombly/Iqbal* because Plaintiffs do not indicate which of the SAC's 448 paragraphs they claim supports this count.  This claim is therefore implausible on its face and it is impossible for GEICO to know precisely what it is defending against.  *See, e.g.*, January 2015 Order at 4 (reprimanding Plaintiffs for failing to identify the factual allegations that were intended to be incorporated into each count); June 2014 Order.

In its January 2015 Order, this Court held that "no cause of action exists for tortious interference with a business's relationship to the community at large."  January 2015 Order at 14.  In spite of this ruling, except for two instances discussed below, Plaintiffs once again

only allege GEICO interfered with Plaintiffs' relationship to the community at large without identifying any specific interference. *See* SAC ¶ 264 (discussing GEICO's alleged "capture and retention" program); ¶ 279 (discussing JT's Towing); ¶¶ 313-16 (alleging a reduction in revenue from repairs performed on GEICO claimants' vehicles after Express Paint and Body "left GEICO's DRP"); ¶¶ 336-39 (alleging a reduction in revenue from repairs performed on GEICO claimants' vehicles after A&E "removed itself from association with GEICO's DRP"). As to those Plaintiffs that do not allege anything as to GEICO, their claims must be dismissed for the same reasons this Court dismissed their claims in the FAC. *See* January 2015 Order at 14.[10]

Under Florida law, the elements of tortious interference with a business relationship are: (1) "the existence of a business relationship, not necessarily evidenced by an enforceable contract;" (2) knowledge of the relationship by the defendant; (3) "an intentional and unjustified *interference* with the relationship by the defendant;" and (4) damage to the plaintiff because of the breach of the relationship. *Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla. 1985) (emphasis added).

Plaintiff A&E alleges "unsuccessful" steering by GEICO as to two individuals, which cannot plausibly support A&E's tortious interference claim against GEICO because, at a minimum, this unsuccessful steering lacks the elements of interference and damage. *See* SAC ¶ 282 (Ms. Morrison took her vehicle to the shop of her choice, not a GEICO preferred shop); ¶ 284 (Mr. Brickner returned to A&E, not a GEICO preferred shop).

Plaintiff Express' allegations regarding Carissa Stone also fail to plead the elements of Express's tortious interference claim against GEICO. *See* SAC ¶¶ 270-75.[11] Express alleges

---

[10]  These Plaintiffs also do not plead plausible facts tending to prove GEICO (or any Defendant) *knew* of any specific relationship or *intended* to cause the breach or termination of the relationship. *See Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla. 1985). Plaintiffs' conclusory allegation that "[m]alicious intent is shown through the absence of legitimate business purpose" is insufficient, SAC ¶ 437, particularly in light of this Court's Order stating that "Defendants *clearly* had a financial interest in any relationship between their insureds and a repair shop . . . ." January 2015 Order at 13.

[11] The SAC includes two paragraphs labeled 275. GEICO here only refers to the first ¶ 275.

GEICO told Ms. Stone she could not take her car to Express because it was not one of GEICO's preferred shops. *Id.* at ¶ 270. Absent from Express' allegation is any allegation that could be interpreted as an "actual and identifiable understanding or agreement" between Ms. Stone and Express before Ms. Stone spoke with GEICO. *See* January 2015 Order at 14 (holding that Plaintiffs must demonstrate "actual or identifiable understandings or agreement" and dismissing claim because insureds never had any contact with the repair shop that was being disparaged). Quite the opposite, Ms. Stone was alleged to be interested in Express because she had received positive reviews about the shop. SAC ¶ 270. As this Court already held, without any contact with the repair shop, much less an "actual and identifiable understanding or agreement," Express' claim must be dismissed. *See* January 2015 Order at 14.

Express also fails to allege facts to support the conclusion that GEICO's alleged interference (there was none) was not privileged. Express does not allege GEICO made any misrepresentations to Ms. Stone. *See* SAC ¶ 270 (alleging only that GEICO told Ms. Stone she was not allowed to take her car to Express). In its January 2015 order, this Court held Defendants were privileged to interfere with relationships between their insureds and repair shops, so long as they did not utilize improper methods. January 2015 Order at 12-14. All the SAC alleges is that, nearly a year after Express chose not to deal with GEICO anymore when it "left GEICO's DRP effective the end of March, 2013," GEICO would not allow Ms. Stone to take her car to Express. SAC ¶ 313. GEICO was privileged in its dealings with Ms. Stone absent any misrepresentation.[12]

---

[12] To the extent Plaintiffs' tortious interference (or any other) claim is based on any alleged misrepresentations made by GEICO, Plaintiffs must plead this claim with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. Even though tortious interference is not labeled "fraud," if it rested on alleged misrepresentations, it would "sound in fraud" bringing it within the requirements of Rule 9(b). *See Cordell Consultant, Inc. Money Purchase Plan & Trust v. Abbott*, 561 F. App'x 882, 884 (11th Cir. 2014) (citing *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064–65 (11th Cir. 2007) (holding Rule 9(b) applies to claims that "sound in fraud"); *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502 (7th Cir. 2007) (holding that Rule 9(b) applies to a tortious interference claim based on alleged fraudulent conduct).

## VI. PLAINTIFFS' *QUANTUM MERUIT* CLAIM (COUNT FOUR) FAILS

The elements of a claim for *quantum meruit* in Florida are: (1) "plaintiff has conferred a benefit on the defendant;" (2) defendant knows of the benefit; (3) "defendant has accepted or retained the benefit conferred;" and (4) "circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Hull & Company, Inc. v. Thomas*, 834 So.2d 904, 906-07 (Fla. Dist. Ct. App. 2003) (quoting *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So.2d 383, 386 (Fla. Dist. Ct. App. 1997). In dismissing the FAC, this Court stated Plaintiffs' *quantum meruit* claim was insufficient because "Plaintiffs have not conferred a benefit upon the Defendants" and "the only effect of such a repair on the insurance company is the incurring of an obligation to pay for it." January 2015 Order at 9. This Court stressed that "[t]he shop must confer a benefit on the insurance company <u>before</u> the insurance company's retention of any money would be wrongful" and that "the retention itself cannot make the retention wrongful." *Id.* at 9-10.

Plaintiffs' SAC merely rephrases the allegations in their FAC as to this count with ***no additional facts demonstrating how they possibly conferred a benefit on Defendants***, let alone a benefit specifically on GEICO or a benefit ***before*** the Defendants paid for repairs. *See* SAC ¶ 443 ("Plaintiffs have performed valuable services and expended material resources . . . [and] [p]erforming said services and expending material resources benefitted Defendants and Defendant's [sic] insured/claimants for whom Defendants are required to provide payment for repairs."). Plaintiffs' statement that "[w]ith respect to the other Defendants [other than State Farm], they benefit also by insisting on use of aftermarket or salvage parts as a means of reducing claims payments," SAC ¶ 107, is just a restatement of the same idea. Plaintiffs confer no benefit on Defendants when they use aftermarket or salvage parts, as "the only effect of such a repair on the insurance company is the incurring of an obligation to pay for

it." January 2015 Order at 9. Because Plaintiffs merely re-allege the precise argument this Court rejected in its January 2015 Order, it should be dismissed here with prejudice.

This claim should also be dismissed because Plaintiffs do not demonstrate GEICO's alleged enrichment was unjust or inequitable. *Osteen v. Morris*, 481 So.2d 1287, 1289-90 (Fla. Dist. Ct. App. 1986). In a similar case where the plaintiffs alleged "if the defendant[s] have not paid Plaintiff[s] a reasonable amount for services to the insured, then defendant[s] have been unjustly enriched," the court held this alleged non-payment does not amount to unjust enrichment. *Mosley*, 2014 WL 7882149, at *5[13] (internal quotation marks omitted) ("The plaintiffs do not cite any case in which a court has held that an insurance company was unjustly enriched because it failed to pay in full the charges incurred by an insured at a repair shop (or any analogous context), and the Court is not aware of one."). Plaintiffs allege they were told exactly what Defendants would pay before they completed the repairs and decided to perform the work anyway. *See, e.g.*, SAC ¶ 260, ¶ 206, Ex.3. Plaintiffs have pointed to no facts demonstrating that voluntarily agreeing to perform repairs, all the while knowing what Defendants pay for repairs, is anything other than business transactions between the insured and GEICO and the insured and Plaintiffs. Finally, to the extent any Plaintiff contracted with GEICO, it could not maintain a *quantum meruit* claim because its only remedy would be under the agreement. *Osteen*, 481 So.2d at 1289-90 (stating that claim applies in absence of an agreement).

## VII. <u>CONCLUSION</u>

Because Plaintiffs have had ample time and opportunity to properly plead their claims and substantial instruction from this Court on what Plaintiffs must do to fix their claims and have still failed to do so, GEICO requests that Plaintiffs' SAC be dismissed with prejudice, with such further relief as the Court deems proper.

---

[13] The plaintiffs in *Mosley* were represented by the same counsel as Plaintiffs here and at least one plaintiff is also a plaintiff in the Mississippi case.

DATED this 4th day of March, 2015.

SNELL & WILMER L.L.P.

*/s/ Dan W. Goldfine*
Dan W. Goldfine (*admitted pro hac vice*)
Joshua Grabel (*admitted pro hac vice*)
Jamie L. Halavais (*admitted pro hac vice*)
Ian Fischer (*admitted pro hac vice*)
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
Telephone: 602-382-6000
Facsimile:  602-382-6070
Email:  dgoldfine@swlaw.com
        jgrabel@swlaw.com
        jhalavais@swlaw.com
        ifischer@swlaw.com

Counsel for GEICO General Insurance
Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of March, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.


*/s/ Dan W. Goldfine*


21064721.14