IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

A&E AUTO BODY, INC., et. al.,

       Plaintiffs,

vs.

21ST CENTURY CENTENNIAL INSURANCE COMPANY, et. al.,

       Defendants.
_____/

CASE NO: 6:14-CV-00310-GAP-TBS
(MDL Case No. 6:14-md-2557-GAP-TBS)

## **DEFENDANT DIRECT GENERAL INSURANCE COMPANY's MOTION FOR SANCTIONS AGAINST PLAINTIFFS AND/OR THEIR COUNSEL PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Defendant, DIRECT GENERAL INSURANCE COMPANY ("DIRECT GENERAL"), by and through undersigned counsel and pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure ("Federal Rules"), file its Motion for Sanctions against Plaintiffs and/or Its Counsel, pursuant to Rule 11 of the Federal Rules of Civil Procedure and in support state:

### **I. INTRODUCTION**

The Second Amended Complaint fails to correct the pleading deficiencies' which led to the Court's prior two dismissal orders, and the addition of few isolated facts highlight the truth that Plaintiffs have no basis for their allegations against Direct General. Plaintiffs' claims against Direct General are meritless and frivolous. Because of Plaintiffs' repeated unsuccessful filings, Direct General has been forced to defend itself against the meritless and frivolous claims made by Plaintiffs, spending thousands of dollars in attorneys' fees and expenses and wasting valuable resources in the process. Rule 11 sanctions in this matter are appropriate to deter future abusive

litigation and to compensate Direct General for the amounts it has incurred in responding to the instant matter.

## II. RELEVANT FACTS

1. On February 21, 2014, Plaintiffs filed their original Complaint broadly alleging that all Defendants committed the same acts against all Plaintiffs arising out of so-called "direct repair program" (DRP") agreements. (D.E. 1). The original Complaint was dismissed, sua sponte by the Court, due to its failure to comply with basic pleading requirements including specifying who did what to whom. (D.E. 110).[1] This order also required the Plaintiffs to "identify which Plaintiffs have DRP agreements with which (if any) Defendants." *Id.* at ¶3.

2. On June 28, 2014, Plaintiffs filed their Amended Complaint (D.E. 167). The Amended Complaint filed was also dismissed on January 22, 2015, as it failed to correct those pleading deficiencies set forth in the Court's first dismissal order. (D.E. 291 & 293). Specifically, the court dismissed one count of the Amended Complaint with prejudice, and dismissed the remainder of the Amended Complaint without prejudice. *Id.* Moreover, the Court provided a specific instruction in its Order: "The Plaintiff's should insure that their references to 'the Defendants' are, in fact, intended to encompass every single Defendant." *Id.*

3. On February 11, 2015, Plaintiffs filed their Second Amended Complaint, where the only individualized allegations against Direct General are as follows:

---

[1] Among other problems, the Complaint failed to adequately allege the existence of subject matter jurisdiction and incorporated every word, whether relevant or not, into every succeeding count, resulting in a prohibited "shotgun pleading." [Doc. 110 at ¶1-2].

> 31. At all times material hereto, Direct General Insurance Company was and is an Indiana insurance company registered and authorized to do business within the State of Florida.
>
> 76. Market shares of reported respective Defendants are: . . . Direct General 1.56 %
>
> 120. Defendant Direct General will demand pictures of each stage of repairs. This is not required of all repairs but is demanded erratically and without schedule and will threaten to refuse all payment in the absence of photographs.
>
> 198. Mitchell is currently or has been used by Defendants . . . Direct General.
>
> 361. All Defendants except Ocean Harbor, National General, Acceptance, First Acceptance and Windhaven are members of IIHS [The Insurance Institute of Highway Safety], either directly or through membership of their parent corporations. Current members of the board of directors include: . . . Defendant Direct General's president and CEO, John Mullen . . . .

4. Plaintiffs were given two full and fair opportunities after the original complaint to cure these fundamental and fatal pleading deficiencies as to all Defendants, including Direct General, and they failed to do so. Despite the express requirements of the two dismissal orders, the Second Amended Complaint contains no individualized allegations that set forth a cause of action against Direct General.

5. All conditions precedent as set forth in Rule 11(c)(2) have been met, but the party or parties against whom this Motion has been directed failed to withdraw or otherwise correct the offensive pleadings within twenty-one (21) days after service of a duplicate copy of this Motion. *See* 4/17/15 correspondence, attached hereto as Exhibit A.

### III. MEMORANDUM OF LAW

**A. STANDARD/APPLICABLE LAW**

Rule 11 allows a court to impose sanctions on a party who has presented a pleading, motion or other paper to the court without evidentiary support or for "any improper purpose."

*See* Fed. R. Civ. P. Rule 11(b). An improper purpose may be inferred from the filing of frivolous papers. *See In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990). An attorney takes a frivolous position if he fails to make a reasonable inquiry into facts or takes a position unwarranted by existing law or a good faith argument for its modification. *Magnus Elecs., Inc. v. Maxco Corp.*, 871 F. 2d 626, 629 (7th Cir. 1989); *Flip Side Productions, Inc. v. Jam Productions, Ltd.*, 843 F. 2d 1024, 1036 (7th Cir. 1988). Frivolousness is defined as having no factual and legal support in the record. *Ind. Risk Ins. v. M.A.N. Gutehoffnungshute GmbH*, 141 F.3d 1434, 1448 (11th Cir. 1998); *Davis v. Carl*, 906 F. 2d 533, 537 (11th Cir. 1990). A court should inquire whether the claims of the party are objectively frivolous and whether the attorney that signed the pleadings was aware or should have been aware that the pleading was frivolous. *Baker v. Alderman*, 158 F. 3d 516, 524 (11th Cir. 1998).

The standard is an objective one: whether a reasonable party would have acted in a particular way. *See Chambers v. NASCO Inc.*, 501 U.S. 32, 47 (1991). "The reasonableness of the conduct involved is to be viewed at the time counsel or the party signed the document alleged to be the basis of the Rule 11 sanction." *Sussman v. Salem, Saxon and Nielsen, P.A.*, 150 F.R.D. 209, 213 (M.D. Fla. 1993). The purpose of Rule 11 sanctions is to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001); *see also, Sussman*, 150 F.R.D at 213 ("this Court recognizes Rule 11's objectives, which include: (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management"). A trial court has broad discretion to choose the nature and the amount of the sanction to achieve the deterrent purposes of Rule 11. *DiPaolo v. Moran*, 407 F. 3d 140, 146 (3d Cir. 2005).

In the Eleventh Circuit, "three (3) types of conduct warrant Rule 11 sanctions: (1) when a party files a pleading that has no reasonable factual basis; (2) when a party files a pleading that is based on legal theory that has no reasonable chance of success and that cannot be advanced as reasonable argument to change existing law; and (3) when a party files a pleading in bad faith or for improper purpose." *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993) (citations omitted). Rule 11 sanctions are ***mandatory*** when a signed paper is submitted to the court under the aforementioned conditions. *See Schramek v. Jones*, 161 F.R.D. 119, 120 (M.D. Fla. 1995) (emphasis added).

Additionally, courts have sanctioned plaintiffs for failing to comply with prior court orders. *See Petrano v. Old Republic Nat. Title Ins. Co.*, 2013 WL 1325030 (N.D. Fla. 2013) (granting a Rule 11 Motion for Sanctions for failure to plead in conformity with Rule 8); *see also Brackett v. Wells Fargo Bank, N.A.*, 2010 WL 3928568 (M.D. Fla. 2010) (finding that the Plaintiff failed to comply with Rule 8 and cautioned Plaintiffs to "take care to insure that their actions satisfy the requirements of Rule 11.").

### B. **RULE 11 SANCTIONS ARE PROPER BECAUSE PLAINTIFFS HAVE FILED A FRIVOLOUS COMPLAINT, WITH NO FACTUAL BASIS TO SUPPORT THEIR CLAIMS AGAINST DIRECT GENERAL, AND HAVE FAILED TO COMPLY WITH THIS COURT'S ORDERS.**

In the instant case, the allegations in Plaintiffs' Second Amended Complaint are simply frivolous, absent of any factual or legal inquiry as to Direct General. Nowhere in the Second Amended Complaint do Plaintiffs even specifically allege that Direct General had/has a Direct Repair Program, though Plaintiffs concede it is irrelevant. Simply put, the Plaintiffs' Second Amended Complaint is entirely without merit or sufficient factual support and lacks any

cognizable claim against this Defendant, and Rule 11 sanctions are warranted for the filing of the complaint which does not remedy the defects set forth in the court's prior dismissal orders.

### 1. State Law Claims

As argued in the Moving Defendants' Motion to Dismiss (D.E. 302), there are no factual allegations against Direct General to support Plaintiffs' state law claims for Tortious Interference with Business Relations (Count III) and Quantum Meruit (Count IV). There is no specific allegation or even specific mention of this Defendant in either Count III for Tortious Interference or Count IV for Quantum Meruit.

Plaintiffs' third attempt to plead a quantum meruit claim is just as legally and factually insufficient as the same claims alleged in the prior complaints which were dismissed by the court. Under Florida law, to prove a cause of action for quantum meruit, Plaintiffs must show that they provided Direct General a benefit in the form of goods or services wherein a reasonable person would expect payment for the goods and services provided and that Direct General assented to and received those goods and services. *Babineau v. Federal Exp. Corp.*, 576 F. 3d 1183, 1194 (11th Cir 2009). Plaintiffs have not, and simply cannot in good faith, allege that they have conferred any benefit to Direct General. Under the guise of group pleading, Plaintiffs allege that the repairs Plaintiffs performed "benefited Defendants and Defendant's insured/claimants for whom Defendants are required to provide payment for repairs." (SAC ¶443). However, Plaintiffs provide no support for this assertion, and as the Court stated in its previous dismissal order, the repairs of insureds' vehicles at issue "obviously provided a benefit to the owners of the vehicles. But so far as the . . . Complaint discloses, the only effect of such a repair on the insurance company is the incurring of an obligation to pay for it." (D.E. 293 at 9). In other words, Plaintiffs fail to allege that any good or service was provided to Direct General, but broadly to policyholders

and claimants of Defendants in general. Any benefit conferred by Plaintiffs was to policyholders and claimants, not to Direct General. As the Court recognized, that is hardly a benefit to the insurers. *Id.* Moreover, even to the extent that an obligation to pay could be construed as a "benefit," it is "certainly not something that has been conferred ... by the repair shop." *Id.* at 10.

As for the Tortious Interference claim, Plaintiffs do not state a claim for any purported specific instance of tortious interference by Direct General. To assert a cause of action for tortious interference with business relations, Plaintiffs must establish: (1) the existence of a business relationship under which Plaintiffs have legal rights; (2) knowledge of the relationship on the part of Direct General; (3) intentional and unjustified interference with the relationship by Direct General; and (4) damage to the Plaintiffs resulting from the intentional and unjustified interference. *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). While Plaintiffs attempt to provide specific examples of interference, none of the 13 identified insureds or claimants referenced in the Second Amended Complaint pertain to an instance directly with Direct General. *See* SAC ¶¶270-291. Moreover, Plaintiffs do not establish the existence of specific relationships with individuals or entities to which Direct General has specifically interfered, rather broadly alleging interference with general business relationships with the public or Plaintiffs potential customer base. The court has already stated that "no cause of action exists for tortious interference with a business's relationship to the community at large." (D.E. 293 at 14). No specific business interference is alleged as to Direct General.

### 2. Sherman Act

To state a claim under Section 1 of the Sherman Act, a plaintiff must allege: (1) an agreement between two or more parties (2) that unreasonably restrains trade. *Levine v. Cent. Fla. Med. Affiliates. Inc.*, 72 F.3d 1538, 1545 (11th Cir. 1996); *see Duty Free Americas, Inc. v. Estee*

*Lauder Companies. Inc.*, 946 F. Supp. 2d 1321, 1328-29 (S.D. Fla. May 9, 2013) ("Both § 1 and § 2 conspiracy claims 'require the same threshold showing- the existence of an agreement to restrain trade.'") (quoting *Todorov v. DCH Healthcare Authority*, 921 F.2d 1438, 1460, n. 35 (11th Cir.1991)).

With respect to both Sherman Act claims (price fixing and boycott), the Second Amended Complaint contains absolutely no allegation as to Direct General entering into any agreement to fix prices or to boycott suppliers. Direct General is only alleged to have demanded picutres of each stage of repairs, which falls short of any allegation of price fixing. SAC ¶¶120. That was a fatal defect in the prior complaints, and it has not been corrected. *See* D.E. 293 at 17 (stating that Plaintiffs' allegations "fall far short" of alleging enough factual matter, taken as true, to suggest that an agreement was made). Further, undermining any suggestion of agreed-upon parallel action, the Second Amended Complaint does not allege that Direct General: 1) engaged in improper "steering;" 2) made disparaging remarks about any shop; 3) refused to deal with any shop; or 4) changed its price in concert with that of any other Defendant. Indeed, the few allegations directed at other Defendants make it clear that there are no such allegations regarding Direct General. *See e.g.*, SAC ¶¶218, 224, 261-291,321-347 (D.E. 296).

The absence of allegations as to Direct General exposes the absolute failure of the Second Amended Complaint as to Direct General. *See Henry v. Lipford*, No. 5:12-cv-34-RS-GRJ, 2013 WL 1799009, at *2 (N.D. Fla. Mar. 22, 2013) (on Second Amended Complaint, dismissing claims against two defendants due to failure to state specific facts as to those defendants, but allowing one claim to go forward as to third defendant). The Second Amended Complaint makes only four scant allegations specific to Direct General, which are that it had a market share percentage of 1.56% in 2012, it allegedly demands pictures of each stage of repairs, it uses the

Mitchell database for estimating repairs, and it is a member of the IIHS. There are absolutely no allegations directly against Direct General of improper steering or refusal to deal.

Moreover, even the facts Plaintiffs do allege have no relevance to their claims. The pricing allegations do not show any anti-competitive agreement; their "posted" rate allegations are meaningless; their allegations regarding membership in various trade organizations are irrelevant; and any remaining allegations fail to demonstrate any agreement among the Defendants.

As evidenced by the lack of Plaintiffs' ability to meet the specify requirements in pleading the purported causes of action for violations under the Sherman Act, Plaintiffs knew or should have known that their allegations are baseless and unsupported by existing law.

## CONCLUSION

Since the allegations in the Second Amended Complaint are frivolous and without evidentiary basis as to Direct General, Plaintiffs and their counsel should be sanctioned.

WHEREFORE, DIRECT GENERAL INSURANCE COMPANY requests this Court grant its Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure and order payment of DIRECT GENERAL's reasonable attorney's fees and costs directly resulting from this frivolous action and any other remedy that this Court deems just and proper.

DATED: September 28, 2015.

Respectfully submitted,

*s/ Jennifer Remy-Estorino*
PETER S. BAUMBERGER, ESQ.
Florida Bar No.: 117803
JENNIFER REMY-ESTORINO, ESQ.
Florida Bar No.: 013877
KUBICKI DRAPER, PA

25 West Flagler Street, Penthouse
Miami, Florida 33130
Direct Line: (305) 982-6713
Facsimile No.: (305) 374-7846
PSB@kubickidraper.com
JR@kubickidraper.com
PSB-KD@kubickidraper.com
*Attorneys for Direct General Insurance Company &*
*Windhaven Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify on September 28, 2015, I electronically filed the forgoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

*Jennifer Remy-Estorino*
PETER S. BAUMBERGER, ESQ.
Florida Bar No.: 117803
JENNIFER REMY-ESTORINO, ESQ.
Florida Bar No.: 013877
KUBICKI DRAPER, PA
25 West Flagler Street, Penthouse
Miami, Florida 33130
Main Line: (305) 374-1212
Direct Line: (305) 982-6713
Facsimile No.: (305) 374-7846
PSB@kubickidraper.com
PSB-KD@kubickidraper.com
JR@kubickidraper.com
*Attorneys for Direct General Insurance Company &*
*Windhaven Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of September, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF System.

                                                s/ Jennifer Remy-Estorino
                                               JENNIFER REMY-ESTORINO, ESQ.